Jeff D. Friedman (173886)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
jefff@hbsslaw.com

Steve W. Berman (*pro hac vice forthcoming*)
Jerrod C. Patterson (*pro hac vice forthcoming*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
jerrodp@hbsslaw.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KIM AHERN, NIKOLAS FRENZEL, and JUSTIN EVANS, on behalf of themselves and all others similarly situated, | No. 5:18-cv-7196 |
| Plaintiffs, | CLASS ACTION COMPLAINT |
| v. | |
| APPLE INC., A CALIFORNIA CORPORATION, | **JURY TRIAL DEMANDED** |
| Defendant. | |



**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................ 1

II. JURISDICTION ......................................................................................................... 2

III. VENUE ..................................................................................................................... 2

IV. PARTIES .................................................................................................................. 3

    A. The Plaintiffs ................................................................................................ 3

        1. Kim Ahern ......................................................................................... 3

        2. Nikolas Frenzel ................................................................................. 5

        3. Justin Evans ...................................................................................... 5

    B. The Defendant .............................................................................................. 6

V. FACTUAL ALLEGATIONS ....................................................................................... 6

    A. Apple's Computers are defective because they do not filter out dust and residue. ................................................................................................... 6

    B. Apple promotes its Computers based on their reliability, durability, and longevity because Apple knows these qualities are material to a reasonable consumer. ...................................................................................................... 15

    C. Apple failed to satisfy its warranty obligations. .......................................... 16

VI. CLASS ALLEGATIONS ........................................................................................... 17

VII. VIOLATIONS ALLEGED ........................................................................................ 20

COUNT I  VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*) ....................................................... 20

COUNT II  VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE § 1750, *ET SEQ.*) ................................................................... 22

COUNT III  VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE § 17500, *ET SEQ.*) ....................................................... 26

COUNT IV  BREACH OF CONTRACT (BASED ON CALIFORNIA LAW) ................. 27

COUNT V  FRAUDULENT CONCEALMENT (BASED ON CALIFORNIA LAW) ..... 28

COUNT VI  VIOLATIONS OF 15 U.S.C. § 2301, *ET SEQ.* THE MAGNUSON-MOSS WARRANTY ACT ........................................................................................................ 30

PRAYER FOR RELIEF ................................................................................................. 31

JURY DEMAND ............................................................................................................ 32



# I.    INTRODUCTION

1.      Apple is the most valuable company in the world because customers trust Apple to manufacture and deliver state-of-the-art technology products.  Customers are willing to spend a premium price for these products based on Apple's reputation for quality and longevity.

2.      But Apple's computers, including its iMac desktops and MacBook laptops ("Computers"), contain a critical defect that has led to at least two deficiencies in the performance of the Computers (the "Filter Defect").  The components in Apple's Computers generate a great deal of heat during use, and Apple installed fans and vents to cool them down.  But Apple did not install any filters for the vents.  As a result of this Filter Defect, the fans suck in dirt and debris that get stuck behind the screen, causing a permanent dark smudging to appear in the corners of the screens.  If brought in for repair outside the warranty period (or if Apple refused to honor the warranty), Apple told customers that they must pay upwards of $600 to replace the entire screen.  In reality, there is a simple and cheap fix for many of the Computers:  the screen can be removed by a suction cup, and then cleaned with a soft rag.  Despite the existence of this inexpensive fix, Apple continues to charge non-warranty customers $600 to replace the entire screen.

3.      The second deficiency caused by the Filter Defect is the harmful effect of the dust on the "motherboard" of the computer, which houses the various electronic components of the computer.  The accumulated dust on the motherboard causes it to overheat, which slows down the processing speed of the computer, and ultimately causes it to crash.  The problem of accumulation of dust is well-known in the technology community, yet Apple did not take the simple step of inserting a filter to prevent it.

4.      The Filter Defect is particularly troubling because Apple promotes itself as making technology products that set the standard in the industry.  Apple advertises its products as having undergone "rigorous testing methods that simulated customers' experiences with their devices."[1]  It promises that, "[o]n a Mac, everything is designed to work just the way you expect it to,"[2] and that

---

[1] *See* https://www.apple.com/environment/resources/.

[2] *See* https://www.apple.com/imac/macos/.


HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

the Retina display screens in particular are the "the most advanced, most brilliant desktop display[s] we've ever built."[3]  These representations are false and misleading, for the reasons detailed below.

5.     Plaintiffs Kim Ahern, Nikolas Frenzel, and Justin Evans accordingly brings this class action on behalf of themselves and the putative class for the following relief:

  a. Monetary compensation for the premium class members paid for the screens, which did not perform as advertised and have decreased the value of the Computers;

  b. Monetary compensation for class members who have already spent several hundred dollars in out-of-pocket costs to replace the screens after Apple refused to pay for the fix;

  c. Monetary compensation for class members who have sold their Computers at a loss because of the dark, smudgy spots on their Computers;

  d. Monetary compensation for class members who have already spent several hundred dollars in out-of-pocket costs to replace the motherboards because their Computers either substantially slowed down or crashed; and

  e. Monetary compensation for class members who have sold their Computers at a loss because of the sluggish performance of the motherboard.

## II.     JURISDICTION

6.     This Court has subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed classes consist of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and Plaintiffs Ahern, Frenzel, and Evans, residents of Arizona, Colorado, and Wisconsin, respectively, are citizens of a state different from the defendant, which is a California corporation.

## III.     VENUE

7.     Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district. Furthermore, Apple's principal place of business is in this judicial district, and it is believed, and therefore alleged, that a substantial amount of the conduct of which Plaintiffs complain occurred in

---

[3] *See* https://www.apple.com/imac/.



HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1   this judicial district.  Further, Apple has marketed, advertised, and sold affected Computers within

2   this judicial district.

3      8. <u>Intradistrict Assignment</u>: Pursuant to Civil L.R. 3-2(c), the San Jose division of this

4   Court is the proper division for filing because Apple's headquarters are located in Cupertino,

5   California.

6   **IV.** **PARTIES**

7   **A.** **The Plaintiffs**

8      **1.** **Kim Ahern**

9      9. Kim Ahern is a resident of Phoenix, Arizona, and she works as a photographer.  She

10   primarily photographs families and babies, including foster children.  On June 25, 2015, she

11   purchased her iMac 27" 5K Retina in Chandler, Arizona for approximately $2,700.  She purchased

12   her computer because Apple is a "known commodity"—it offers high quality and reliability.  In

13   anticipation of being able to use the computer for the next several years, she purchased a fully

14   upgraded model.  She specifically purchased it to use for touching up photos as part of her

15   photography business, and she relied on Apple's representations that the 5K Retina screen was

16   particularly sharp and vivid.  If not for this need for a vivid display, she would have purchased a non-

17   Apple laptop for much cheaper.

18      10. About nine months after her purchase, she began to notice dark smudges on the

19   bottom corners of her screen.  She initially thought that the smudges were on the outside of the

20   screen (not inside the computer), so she used a microfiber cloth to try to rub out the smudges.  But

21   rubbing a cloth on the screen did not remove the smudges.

22      11. The smudges on her screen began to affect her work, in two respects.  First, she spent

23   considerable time trying to remove what she believed were smudges on the photos, which in fact

24   were smudges caused by the Filter Defect.  Second, after realizing this, she then assumed that

25   smudges she saw in photographs were caused by the Filter Defect, but in fact the photos had

26   smudges that needed to be removed.  On one occasion, she took pictures of a foster baby that had

27   smudges at the bottom, which she did not remove because she thought it was caused by the Filter

28   Defect.  The client later asked her about the smudges on the photos that ran along the bottom of the

CLASS ACTION COMPLAINT
Case No.: 5:18-cv-7196
010778-11 1079273 V1

- 3 -



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

picture.  To avoid this problem, she often had to send photos to a PC in order to determine if the smudges were on the photo or caused by the Filter Defect.

12.     When she discovered the smudges on her screen, Ms. Ahern called Apple Support, who told her to use spray cleaner on the screen.  When that did not work, she began to Google the issue, and discovered a host of people who had the same issue and were discussing it on various online forums, including Apple's own website.

13.     As the smudging problem continued to worsen, she called Apple in September 2018 to report the issue.  She initially was told by customer service that they had not heard of this problem.  As she persisted in describing the problem, however, her call was elevated to a manager. The manager initially told her that he was not aware of the issue, and Ms. Ahern responded that a Google search would reveal several postings about the issue.  In a subsequent conversation, he said that he understood the issue and saw that it is a common problem, and would elevate it further to determine whether Apple could replace the computer.  He later told her that a return was not authorized.

14.     Next, Ms. Ahern took the computer to a "Genius Bar" in Chandler, Arizona.[4]  At the Genius Bar, Apple representatives told her that they would have to replace the whole screen, which would cost over $600 (including taxes).  Ms. Ahern told one Apple representative about the Filter Defect, and he responded, "you can't believe everything you read on the internet."  Ms. Ahern ultimately decided not to pay to fix the screen (the person who was to perform the fix acknowledged that he has seen this problem before).

15.     Had Plaintiff been informed about the Filter Defect, which causes the display to develop smudge marks in the bottom corners of the screens, Plaintiff would not have purchased her computer, or would have paid substantially less for it.

---

[4] A "Genius Bar" is part of the Apple store that is reserved for fixing and repairing Apple products.

CLASS ACTION COMPLAINT                           - 4 -
Case No.: 5:18-cv-7196
010778-11 1079273 V1



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

**2. Nikolas Frenzel**

16.     Plaintiff Nikolas Frenzel is a resident of Castle Rock, Colorado.  On April 30, 2018, he purchased his iMac 27" 5K Retina in Denver, Colorado for approximately $1,900.  In early September, 2018, he noticed dark smudge marks in the bottom right- and left-hand corners of his screen.  He uses his computer as part of his business, which is a phone repair shop.  In order to fix his computer, he took it into a computer repair shop, where he paid approximately $600 to replace the screen.

17.     Had Mr. Frenzel been informed about the Filter Defect, which causes the display to develop smudge marks in the bottom corners of the screens, he would not have purchased his computer, or would have paid substantially less for it.

**3. Justin Evans**

18.     Plaintiff Justin Evans is currently a resident of New Berlin, Wisconsin.  On approximately March 1, 2011, he purchased his iMac 27" in Albuquerque, New Mexico.  Soon thereafter, he began to notice dark smudges in the corner of the screens.  In 2013, he brought it in for service under the AppleCare program (which extends customers' warranty by two years) and had the screen replaced.  But the dark smudges reappeared even after replacing the screen, and he had to have his screen replaced two more times—in approximately 2014 and 2015, and on each occasion replacing the screen did not permanently fix the Filter Defect because the smudges would return soon after replacement.  He paid approximately $450-$650 each for the last two replacements.  In 2017, Mr. Evans also had to have his motherboard replaced because of the dust that was sucked into the machine by Apple's fans, causing his computer to slow down and overheat.  He paid approximately $900 to replace his motherboard.

19.     Had Mr. Evans been informed about the Filter Defect, which causes the display to develop smudge marks in the bottom corners of the screens, and which causes dust to get trapped on the motherboard, causing it to eventually crash and need replacement, he would not have purchased his computer, or would have paid substantially less for it.



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

**B.      The Defendant**

20.      Apple, the designer, manufacturer, and vendor of the Computers, is a California corporation.  It maintains its headquarters and principal place of business in Cupertino, California.  Upon information and belief, Apple made all decisions and actions referenced herein at or near its corporate headquarters in Cupertino, California, or elsewhere in the state of California.

21.      Apple transacts substantial business throughout California, including the design of the Computers.  One of the most prominent developers of the Computers, Jonathan Ive, is featured prominently in YouTube ads for the Computers.[5]  Upon information and belief, Mr. Ive and his colleagues design and develop prototypes of the Computers in California.[6]  In sum, it is believed and alleged that substantially all of the conduct giving rise to the claims brought by Plaintiffs occurred in or emanated from California.

## V.      FACTUAL ALLEGATIONS

**A.      Apple's Computers are defective because they do not filter out dust and residue.**

22.      The inner workings of a computer made by Apple generate substantial heat, and computer manufacturers generally install fans inside the computer to cool down the components.  The thin monitors that Apple adopted are particularly susceptible to overheating, because there is less room in the computer for air to flow.  The working components of the iMac computer are housed inside the monitor; there is no stand-alone tower as with most PCs.  A typical iMac computer looks like this:

---

[5] *See, e.g.*, "Apple – Designed by Apple in California," available at https://www.youtube.com/watch?v=CEW4D_CERkE.

[6] *See id.*

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1
2
3
4
5
6
7
8
9
10
11
12



27-inch iMac

23.    To keep the air circulating, Apple (and other manufacturers) install vents in the computer to bring in cooler air, and to push the hot air out.  But Apple skips a crucial step:  it does not install filters in the vents to filter out particulate matter that is in the air, which means that dust and debris accumulates inside the computer.

24.    This has at least two serious consequences for Apple owners.  First, the dust begins to adhere to the back of the screen, which results in dark, smudgy marks in the bottom corners of the screens.  Second, the dust accumulates on the "motherboard," or what Apple calls the logic board. As an online article explained, "[t]he motherboard houses the vital electronic circuits that keep the desktop computer working.  It has several fans to keep the temperature cool, because a cool environment is correlated to the computer's efficiency.  It is also here that the computer's microprocessor, the random access memory (RAM), the video card, the sound card, the LAN card, among other removable parts, are housed."[7]  This dust can damage the computer:  "When dust picks up moisture, the sensitive parts may short-circuit and are damaged in the process.  The fan can get clogged with dirt and cause friction at the sides of the housing.  If left unattended, the fan will

_____

    [7] *See* "Maintaining your Computer's Motherboard," July 2, 2018, available at
https://punchng.com/maintaining-your-computers-motherboard/.



eventually stop and your computer will heat up then suddenly crash when a very high temperature is reached."[8]

25.     Upon information and belief, Apple knew that not installing filters on the Computers would have negative consequences for Computer owners, but decided not to install them, either for aesthetic or monetary reasons.  On Apple's own website, Computer owners have been complaining about the dark, smudgy marks on their displays for *years*, which often appeared just after their one-year warranty expired.  Below is a sample of comments (copied verbatim, including spelling and grammatical mistakes) on *Apple's own website* about the problem:

- On January 24, 2016, user "Gyurza" complained about some "weird dark spots" on the bottom-left portion of the display.  "Gyurza" tried to clean it with a soft cloth, but discovered that the spots were behind the glass.  "Gyurza's" warranty had expired two months prior to discovering the dark spots.  When "Gyurza" took his/her computer to Apple Store, he/she was told that the store could not do anything about it.  "Gyurza" noted that the fee of $500 "is a bit too much for me when I spend at least 3200.00 for it less than 14 months ago."[9]  "Gyurza" posted the following picture on the website to illustrate the smudges in the bottom left-hand portion of the screen (illustration added):

---

[8] *Id.*

[9] *See* https://discussions.apple.com/thread/7435219.



1
2
3
4
5
6
7
8
9
10



11   • On March 7, 2016, "OrangeOlive," after noting the same problem, stated that he/she
12      "went to the local Apple store and they said it is a defective housing and that screen
13      needs to be replaced.  Most likely it is dust/smoke that is getting in through the fan
14      and then seeping out a small space and getting caught behind the glass."  *Id.*

15   • On June 19, 2016, "Debi.Mishra" responded and said "I have same issue in my 15
16      inch Mac Book Pro.  I am out of warranty now[.]"  *Id.*

17   • On November 12, 2016, "xlan_7" responded with the same problem, and noted "[t]his
18      is pretty bad.  my IMac is less than 13 months old."  *Id.*  He/she then posted the
19      following pictures:

20
21
22
23
24
25
26
27
28

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16   • On November 16, 2016, "maceatw" responded by stating "I have the exact same

17      issue," and included the following pictures (*id.*):

18
19
20
21
22
23
24
25
26
27
28

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

- On February 4, 2017, "Urvakanner" responded "I have an iMac (Retina 5K, 27-inch, Late 2014) and have the same problem," with the following picture:[10]

---

[10] *See* https://discussions.apple.com/thread/7435219.  Photo has been cropped and rotated.

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19
20
21
22
23
24
25
26
27

- On October 23, 2017, "rhnarora84" responded and said "Same issue here.  I have an iMac 5K 27 inch late 2015 model.  After 13 months of my purchase, I observed grey smudges at bottom right corners of my screen, and they are visible if I open a light colored window.  It's a bad luck as this machine is not in warranty anymore.  Apple should consider this issue seriously as this should not happen with a machine which is many times costlier as compared to other brands's desktops in the market.  A consumer buys an Apple product because of the trust on its quality, not just because of its brand name." *Id.*

28



- On December 29, 2017, "Jeepgirltx" responded with the following post:  "GOOD LUCK!! its happened to 3 of my imacs - including the late 2013 with " new " housing. Apple does NOTHING to fix this- mine seems to show up weeks after Applecare expires- I paid 2300.00 for a POS and they want 600.00 to replace the lcd ( the only solution ) but its not a permanent one- same issues occurs after a few months. COMPLETE DISGUST with Apple." *Id.*

- On February 18, 2018, "SkyeCruise" stated:  "The defect seems to be apparent in all slim models since 2014. In the models before that, the screen could be easily removed and cleaned on the inside."[11]

- On May 30, 2017, on another thread, "Garrick" stated as follows:  "I had the same issue as this thread with the smudges/dust under the 5k 'sealed' glass. It was out of warranty, so the cost (SoCal) was $628.77 ($510.23 for the screen, $79 labor, + tax) for a replacement screen direct from Apple store. ***The techs at Apple store here said they had seen the a few times before but guessed that most people didn't want to lug in the iMac or spend the $ to get it fixed***."[12]

- On January 2, 2018, "Garrick" again posted that, "[a]fter just 6 months after the last Apple repair, the iMac 5k Retina has had smudges under the screen again. . . . . Naturally, this is just past the 90 day warranty that apple provided on the $630 repair last time. In other words, if I want to fix it again and Apple want[13] extend the courtesy on the repair, I'm looking at $1200 to fix the screen twice within a year."[14]

- On March 10, 2017, "Alex Shum" stated the following:  "Yes, the issue is still here, nice and dusty, on my Retina iMac 2014 (first generation of Retina iMac). It worked fine for 2 years (not to mention very blurry facetime camera), and now I am noticing really nasty dust marks in both lower corners of the screen. I must add that ***I've***

---

[11] *See* https://discussions.apple.com/thread/7435219?page=2.

[12] *See* https://discussions.apple.com/thread/6859047?page=2 (emphasis added).

[13] Probably "won't."

[14] *See* https://discussions.apple.com/thread/8222105.

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

*observed this dust issue on all iMacs that I owned, and it has been not less than 4 generations*. One would think the issue should be gone when they adopted totally un-repairable glued-sealed screen assembly, but the dust manages to get inside just as well. Why is it not possible for Apple to seal the screen so that is it 100% air-tight, is beyond me. Total shame."[15]

26.     This running discussion of the Filter Defect on Apple's own website was undoubtedly noted and tracked by Apple, because Apple closely monitors the submissions.  In its "Apple Support Communities Use Agreement" (which governs the "discussions.apple" website), Apple states that "Apple retains the right, but not the responsibility, to edit or remove any Submission," and that Apple "will have no liability whatsoever for editing, removing, or continuing to permit the display of any Submission whatsoever."[16]  Under the header "Apple involvement," it states "Apple may respond to questions but does not formally provide technical support on the Site."[17]  The website also states that, if "you provide any ideas, suggestions, or recommendations on this site regarding Apple's products, technologies or services ("Feedback"), Apple may use such Feedback and incorporate it in Apple products, technologies, and services without paying royalties and without any other obligations or restrictions."[18]  It also states, "Post constructive comments and questions. Unless otherwise noted, your Submission should either be a technical support question or a technical support answer. Constructive feedback about product features is welcome as well. If your Submission contains the phrase 'Im [sic] sorry for the rant, but…' you are likely in violation of this policy."[19] It also contains a standard warning against posting any offensive or illegal conduct, and states that violators will be removed.[20]

---

[15] *See* https://discussions.apple.com/thread/7307044 (emphasis added).

[16] *See* https://discussions.apple.com/docs/DOC-5952.

[17] *See id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

HB HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

27.     Although Apple routinely charges customers $600 or more to replace their screens (as reflected in the comments above), in truth a temporary fix is very simple and could be performed at a substantially reduced cost for many of the Computers.  IMac screens are held in place by small, powerful magnets.[21]  Apple could simply use suction cups to remove the glass panel on many of them, and use a vacuum or a cloth to clean the screen.[22]  Instead, Apple tells customers that they must replace the entire screen, at a cost exceeding $600, apparently in order to increase Apple's profits at the expense of the customer.

**B.     Apple promotes its Computers based on their reliability, durability, and longevity because Apple knows these qualities are material to a reasonable consumer.**

28.     As some of the commentators quoted above noted, Apple is known worldwide for the quality of its products.  And Apple promotes and advertises its products on this basis.  As its website currently states: "iMac has always been the ultimate in form and function: An all-in-one computer that puts everything — display, processor, graphics, storage, memory, and more — inside one simple, stylish enclosure. The new iMac includes the most advanced, most brilliant desktop display we've ever built, and it's filled with all-new technologies that take power and performance to a whole new level."[23]  It also states that "On a Mac, everything is designed to work just the way you expect it to — from operating it with simple, intuitive gestures to asking Siri to find a file to having your apps automatically update themselves. Whatever you set out to do on a Mac, there's much less to learn and that much more to accomplish."[24]

29.     Apple also promotes its products based on their longevity.  On its website, Apple proclaims that a "durable device is a greener device.  When products can be used longer, fewer resources need to be extracted from the early to make new ones.  So we assess all our products in our Reliability Testing Lab, using rigorous testing methods that simulated customers' experiences with their devices. . . . All new materials, including recycled materials, are tested extensively to make sure

---

[21] *See* Apple iMac Glass Removal:  Cleaning Behind the Glass, *available at* https://www.youtube.com/watch?v=CEW4D_CERkE.

[22] *See id.*

[23] *See* https://www.apple.com/imac/.

[24] *See* https://www.apple.com/imac/macos/.

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

they meet our performance and durability standards."[25] Apple also asserts that it "designs for durability, so our products are better for the customer and for the environment."[26]

30.     Jonathan Ive, Apple's Chief Design Officer, has a YouTube commercial in which he states, "the new MacBook Pro contains the fundamental qualities of an ultraportable device with uncompromising performance. . . . The new MacBook Pro achieves a design that optimizes both performance and portability.  It marks a milestone in the evolution of the Mac."[27]

**C.    Apple failed to satisfy its warranty obligations.**

31.     In addition to misrepresenting the quality and durability of the Computers, and omitting critical facts about the Filter Defect, Apple failed to satisfy its warranty obligations.

32.     Plaintiffs purchased Computers that were covered by an express limited warranty, and Apple repaired the Computers pursuant to Apple's "Repair Terms and Conditions."[28]  The Computers are covered by a one-year limited warranty,[29] and Computer owners have the option to purchase two additional years of warranty through the "AppleCare+" program.[30]  Although the warranty has changed slightly several times over the years, the warranty's material terms relevant to this action are uniform and therefore subject to uniform standards, principles, and applications for purchasers throughout the United States.

33.     The warranty covers defects in "materials and workmanship" and provides that Apple will, at its option, either (1) repair the product, (2) replace the product with the same model, or (3) exchange the product for a refund of the purchase price.[31]  The warranty on replacement parts is the remainder of the original warranty period or 90 days, whichever is greater.  *See id.*

---

[25] *See* https://www.apple.com/environment/resources/.

[26] *See* https://www.apple.com/environment/.

[27] *See* "The New MacBook Pro – Design, Performance and Features – Apple (published on Oct. 27, 2016), available at https://www.youtube.com/watch?v=WVPRkcczXCY.

[28] *See* Apple Repair Terms and Conditions, available at https://www.apple.com/legal/sales-support/terms/repair/.

[29] *See* Apple One (1) Year Limited Warranty ("Warranty"), available at https://www.apple.com/legal/warranty/products/embedded-mac-warranty-us.html.

[30] *See* https://www.apple.com/support/products/mac.html.

[31] *See* Warranty.

CLASS ACTION COMPLAINT
Case No.: 5:18-cv-7196
010778-11 1079273 V1

- 16 -



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

34.     Because the Computers contain model-wide defects, the replacement parts or replacement Computers have the same defects as those that are newly purchased, causing the same two deficiencies to occur in every Computer.

35.     Apple knew, or should have known, that the Computers are irreparably defective and highly likely to fail.  As a result, Apple did not—and cannot—deliver Computers to Plaintiffs and Class members that conform to its express and implied warranties.  Apple is therefore liable for breach of express warranty.

36.     Sending defective parts and Computers as warranty replacements, knowing that they are highly likely to fail again, is also unfair and unconscionable.

37.     Moreover, Apple breached the implied warranty of merchantability because all Computers contained a latent Filter Defect that rendered them unsuitable for their ordinary purposes, and fell below the quality generally accepted in the Computer market.

## VI.     CLASS ALLEGATIONS

38.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), on behalf of themselves and the following proposed Class:

> All persons or entities who own or owned a MacBook, a MacBook Pro, a MacBook Air, an iMac, or an iMac Pro.

39.     Excluded from the proposed class are Apple, its employees, officers, directors, legal representatives, heirs, successors, subsidiaries and affiliates, and the judicial officers and their immediate family members and associated court staff assigned to this case, as well as all persons who make a timely election to be excluded from the proposes classes.

40.     Certification of Plaintiffs' claims for classwide treatment is appropriate because Plaintiffs can prove the elements of their claims on a classwide basis using the same evidence they would use to prove those elements in individual actions alleging the same claims.

41.     This action meets all applicable standards of Fed. R. Civ. P. 23 for class certification, in that Plaintiffs can demonstrate the elements delineated below.

CLASS ACTION COMPLAINT
Case No.: 5:18-cv-7196
010778-11 1079273 V1

- 17 -

HB   HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

42.     <u>Numerosity</u>.  The members of the proposed Class are so numerous and geographically dispersed that individual joinder of all proposed class members is impracticable.  *See* Fed. R. Civ. P. 23(a)(1).  While Plaintiff believes that there are millions of members of the proposed class, the precise number of Class members is unknown to them, but may be ascertained from Apple's books and records.  Class members may be notified of the pendency of this action by recognized, court-approved notice dissemination methods, which may include U.S. mail, e-mail, internet postings, and/or published notice.

43.     <u>Commonality and Predominance</u>.  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members.  *See* Fed. R. Civ. P. 23(a)(2) and (b)(3).  These include, without limitation:

- Whether Apple engaged in the conduct alleged in this complaint;

- Whether Apple designed, advertised, marketed, distributed, sold, or otherwise placed Apple Computers into the stream of commerce in the United States;

- Whether Apple advised owners of Apple Computers (including Plaintiffs and putative Class members) about the Filter Defect when it sold the Computers;

- Whether the Filter Defect is a product design defect;

- When Apple learned about the Filter Defect, and what it did in response;

- Whether the Filter Defect causes smudges on the Computers' screens;

- Whether the Filter Defect causes the motherboard to overheat, slow down, and eventually crash;

- Whether Apple marketed the Computers' display as clear and the best in the industry;

- Whether Apple promoted the Computers based on their longevity and reliability;

- Whether Apple's conduct, including, but not limited to, its alleged deceptive conduct, violates California's consumer protection laws or other laws as asserted herein;

- Whether Plaintiffs and members of the proposed Class are entitled to damages, as well as punitive, exemplary, or multiple damages, due to Apple's conduct as alleged in this complaint, and if so, in what amounts; and

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

- Whether Plaintiffs and other putative Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief as requested in this complaint.

44.     <u>Typicality</u>.  Plaintiffs' claims are typical of the putative class members' claims because, among other things, all such Class members were comparably injured through Apple's wrongful conduct as described above.  *See* Fed. R. Civ. P. 23(a)(3).

45.     <u>Adequacy</u>.  Plaintiffs are adequate proposed class representatives because their interests do not conflict with the interests of the other members of the proposed Class they seek to represent; because they have retained counsel competent and experienced in complex class action litigation; and because they intend to prosecute this action vigorously.  The interests of the proposed class will be fairly and adequately protected by Plaintiffs and their counsel.  *See* Fed. R. Civ. P. 23(a)(4).

46.     <u>Declaratory and Injunctive Relief</u>.  Apple has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the proposed Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the proposed Class as a whole.  *See* Fed. R. Civ. P. 23(b)(2).

47.     <u>Superiority</u>.  A class is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiffs and putative Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Apple, so it would be impracticable for members of the proposed Classes to individually seek redress for Apple's wrongful conduct.  Even if Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and it increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.  *See* Fed. R. Civ. P. 23(b)(3).



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

## VII.   VIOLATIONS ALLEGED

## COUNT I

### VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*)

48.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

49.   California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

50.   Apple's conduct, as described herein, was and is in violation of the UCL. Apple's conduct violates the UCL in at least the following ways:

i.   By failing to disclose that the Computers have the Filter Defect;

ii.   By failing to disclose that the Filter Defect causes dark smudges on the Computers' screens;

iii.   By failing to disclose that, over time, the Filter Defect causes the Computers' motherboards to crash or malfunction;

iv.   By failing to disclose, in charging customers $600 to replace the screen, that there is a temporary fix that is simple and inexpensive;

v.   By marketing the Computers as reliable, durable, and dependable; and

vi.   By marketing the Retina screens as vividly bright, sharp, and offering the best screens in the industry.

51.   Apple intentionally and knowingly misrepresented material facts regarding the Computers with an intent to mislead Plaintiffs and the Class.

52.   In purchasing the Computers, Plaintiffs and the other Class members were deceived by Apple's failure to disclose that the Computers have the Filter Defect; that the Filter Defect causes dark smudges to appear on the Computers' screens; that the Filter Defect causes the Computers' motherboards to crash or malfunction; and that, in charging customers $600 to replace the screen, there is a temporary fix for the smudges that is simple and inexpensive.



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

53.     Plaintiffs and Class members reasonably relied upon Apple's false misrepresentations. They had no way of knowing that Apple's representations were false and gravely misleading. As alleged herein, Apple engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Apple's deception on their own.

54.     Apple knew or should have known that its conduct violated the UCL.

55.     Apple owed Plaintiffs and the Class a duty to disclose the truth about the Filter Defect because Apple:

    a.      Possessed exclusive knowledge regarding the Filter Defect, and intentionally concealed the foregoing from Plaintiffs and the Class;

    b.      Possessed exclusive knowledge that the Filter Defect causes dark smudges to appear on customers' Computer screens, and intentionally concealed the foregoing from Plaintiffs and the Class;

    c.      Possessed exclusive knowledge that the Filter Defect causes the Computers' motherboards to slow down and crash over time, and intentionally concealed the foregoing from Plaintiffs and the Class; and

    d.      Made incomplete representations regarding the Computers' performance and longevity, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

56.     Apple had a duty to disclose that the Computers have the Filter Defect; that the Filter Defect causes dark smudges to appear on the Computers' screens; that the Filter Defect causes the Computers' motherboards to crash or malfunction; and that, in charging customers $600 to replace the screen, there is a temporary fix for the smudges that is simple and inexpensive, because Plaintiffs and the other Class members relied on Apple's material representations that the Computers they were purchasing were high quality, efficient, durable, and free from defects.

57.     Apple's conduct proximately caused injuries to Plaintiffs and the other Class members.

58.     Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Apple's conduct in that Plaintiffs and

CLASS ACTION COMPLAINT
Case No.: 5:18-cv-7196
010778-11 1079273 V1

- 21 -

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

the other Class members overpaid for their Computers and did not receive the benefit of their

bargain, and their Computers have suffered a diminution in value. They also were required to pay

more for repairs than they reasonably anticipated based on Apple's material representations. These

injuries are the direct and natural consequence of Apple's misrepresentations and omissions.

59.     Apple's violations present a continuing risk to Plaintiffs as well as to the general

public. Apple's unlawful acts and practices complained of herein affect the public interest.

60.     Apple's misrepresentations and omissions alleged herein caused Plaintiffs and the

other Class members to make their purchases of their Computers. Absent those misrepresentations

and omissions, Plaintiffs and the other Class members would not have purchased the Computers,

would not have purchased these Computers at the prices they paid, and/or would have purchased less

expensive alternative computers that did not contain the Filter Defect.

61.     Accordingly, Plaintiffs and the other Class members have suffered injury-in-fact,

including lost money or property, as a result of Apple's misrepresentations and omissions.

62.     Plaintiffs request that this Court enter such orders or judgments as may be necessary

to restore to Plaintiffs and members of the Class any money Apple acquired by unfair competition,

including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code

§ 17203 and Cal. Civ. Code § 3345, and for such other relief as may be appropriate.

## COUNT II

### VIOLATIONS OF THE CALIFORNIA CONSUMER
### LEGAL REMEDIES ACT
### (CAL. CIV. CODE § 1750, *ET SEQ.*)

63.     Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

64.     California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

65.     The Computers are "goods" as defined in Cal. Civ. Code § 1761(a).



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

66.     Plaintiffs and the other Class members are "consumers" as defined in Cal. Civ. Code § 1761(d), and Plaintiffs and the other Class members, and Apple, are "persons" as defined in Cal. Civ. Code § 1761(c).

67.     As alleged above, Apple made representations concerning the efficiency, performance, durability, and longevity of the Computers that were misleading.

68.     In purchasing the Computers, Plaintiffs and the other Class members were deceived by Apple's failure to disclose that the Computers have the Filter Defect; that the Filter Defect causes dark smudges to appear on the Computers' screens; that the Filter Defect causes the Computers' motherboards to crash or malfunction; and that, in charging customers $600 to replace the screen, there is a temporary fix for the smudges that is simple and inexpensive.

69.     Apple's conduct, as described herein, was and is in violation of the CLRA. Apple's conduct violates at least the following enumerated CLRA provisions:

     i.    Cal. Civ. Code § 1770(a)(2): Misrepresenting the approval or certification of goods.

    ii.    Cal. Civ. Code § 1770(a)(3): Misrepresenting the certification by another.

   iii.    Cal. Civ. Code § 1770(a)(5): Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities which they do not have.

   iv.    Cal. Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade, if they are of another.

    v.    Cal. Civ. Code § 1770(a)(9): Advertising goods with intent not to sell them as advertised.

   vi.    Cal. Civ. Code § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

70.     Apple intentionally and knowingly misrepresented material facts regarding the Computers with an intent to mislead Plaintiffs and the Class.

71.     Plaintiffs and Class members reasonably relied upon Apple's false misrepresentations and/or omissions. They had no way of knowing that Apple's representations were false and gravely

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

misleading. As alleged herein, Apple engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Apple's deception on their own.

72.     Apple knew or should have known that their conduct violated the CLRA.

73.     Apple owed Plaintiffs and the Class a duty to disclose the truth about the Computers' Filter Defect and the resulting deficiencies in the Computers' performance because Apple:

a.     Possessed exclusive knowledge regarding the Filter Defect, and intentionally concealed the foregoing from Plaintiffs and the Class;

b.     Possessed exclusive knowledge that the Filter Defect causes dark smudges to appear on customers' computer screens, and intentionally concealed the foregoing from Plaintiffs and the Class;

c.     Possessed exclusive knowledge that the Filter Defect causes the Computers' motherboards to slow down and crash over time, and intentionally concealed the foregoing from Plaintiffs and the Class; and

d.     Made incomplete representations regarding the Computers' performance and longevity, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

74.     Apple had a duty to disclose that the Computers have the Filter Defect; that the Filter Defect causes dark smudges to appear on the Computers' screens; that the Filter Defect causes the Computers' motherboards to crash or malfunction; and that, in charging customers $600 to replace the screen, there is a temporary fix for the smudges that is simple and inexpensive, because Plaintiffs and the other Class members relied on Apple's material representations that the Computers they were purchasing were high quality, efficient, durable, and free from defects.

75.     Apple's conduct proximately caused injuries to Plaintiffs and the other Class members.

76.     Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Apple's conduct in that Plaintiffs and the other Class members overpaid for their Computers and did not receive the benefit of their bargain, and their Computers have suffered a diminution in value. They also were required to pay

CLASS ACTION COMPLAINT
Case No.: 5:18-cv-7196
010778-11 1079273 V1
- 24 -
HAGENS BERMAN
1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    more for repair costs than they reasonably anticipated based on Apple's material representations.

2    These injuries are the direct and natural consequence of Apple's misrepresentations and omissions.

3       77. Apple's violations present a continuing risk to Plaintiffs as well as to the general

4    public. Apple's unlawful acts and practices complained of herein affect the public interest.

5       78. Apple knew, should have known, or was reckless in not knowing of the defective

6    design and/or manufacture of the Computers, and that the Computers were not suitable for their

7    intended use.

8       79. The facts concealed and omitted by Apple from Plaintiffs and the other Class

9    members are material in that a reasonable consumer would have considered them to be important in

10   deciding whether to purchase the Computers or pay a lower price. Had Plaintiffs and Class members

11   been aware of the Filter Defect with regard to the Computers, and Apple's disregard for the truth,

12   Plaintiffs and Class members who purchased the Computers would have paid less for their

13   Computers or would not have purchased them at all.

14      80. Plaintiffs' and the other Class members' injuries were proximately caused by Apple's

15   unlawful and deceptive business practices.

16      81. In accordance with Cal. Civ. Code § 1780(a), Plaintiffs and the California Class seek

17   injunctive relief for Apple's violations of the CLRA.

18      82. Pursuant to Cal. Civ. Code § 1780(a), Plaintiffs and the California Class seek an order

19   enjoining Apple's unfair and/or deceptive acts or practices, and awarding damages, punitive

20   damages, and any other just and proper relief available under the CLRA. Under Cal Civ. Code §

21   1780(b), Plaintiffs seek an additional award against Apple of up to $5,000 for each California Class

22   member who qualifies as a "senior citizen" or a "disabled person" under the CLRA.  Apple knew or

23   should have known that its conduct was directed to one or more California Class members who are

24   senior citizens or disabled persons. Apple's conduct caused one or more of these senior citizens or

25   disabled persons to suffer a substantial loss of property set aside for retirement or for personal or

26   family care and maintenance, or assets essential to the health or welfare of the senior citizen or

27   disabled person. One or more California Class members who are senior citizens or disabled persons

28   are substantially more vulnerable to Apple's conduct because of age, poor health or infirmity,

CLASS ACTION COMPLAINT
Case No.: 5:18-cv-7196
010778-11 1079227 V1

- 25 -

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

impaired understanding, restricted mobility, or disability, and each of them suffered substantial physical, emotional, or economic damage resulting from Apple's conduct.

83.     Plaintiffs provided Apple with notice of its violations of the CLRA on or about November 20, 2018.  If Apple fails to remedy its unlawful conduct within the requisite time period, Plaintiffs will seek all damages and relief to which Plaintiffs and the California Class are entitled.

**COUNT III**

**VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW**
**(CAL. BUS. & PROF. CODE § 17500, *ET SEQ.*)**

84.     Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

85.     This claim is brought on behalf of the California Class.

86.     Cal. Bus. & Prof. Code § 17500 states: "It is unlawful for any … corporation … with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

87.     Apple caused to be made or disseminated through California and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Apple, to be untrue and misleading to consumers, including Plaintiffs and the other Class members.

88.     Apple violated § 17500 because the misrepresentations and omissions regarding the functionality, reliability, performance, and longevity of the Computers as set forth in this Complaint were material and likely to deceive a reasonable consumer.

89.     Plaintiffs and the other Class members have suffered an injury-in-fact, including the loss of money or property, as a result of Apple's unfair, unlawful, and/or deceptive practices. In purchasing their Computers, Plaintiffs and the other Class members relied on the misrepresentations and/or omissions of Apple with respect to the functionality, reliability, performance, and longevity of



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

the Computers. The Computers purchased by Plaintiffs and the other Class members were, in fact, defective. Had Plaintiffs and the other Class members known this, they would not have purchased their Computers and/or paid as much for them. Accordingly, Plaintiffs and the other Class members overpaid for their Computers and did not receive the benefit of their bargain.

90. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Apple's business. Apple's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

91. Plaintiffs, individually and on behalf of the other Class members, request that this Court enter such orders or judgments as may be necessary to restore to Plaintiffs and the other Class members any money Apple acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief as may be appropriate.

**COUNT IV**

**BREACH OF CONTRACT**
**(BASED ON CALIFORNIA LAW)**

92. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

93. Apple's misrepresentations and omissions alleged herein, including, but not limited to, the failure to disclose that the Computers have the Filter Defect; the failure to disclose that the Filter Defect causes dark smudges on the Computers' screens; the failure to disclose that, over time, the Filter Defect causes the Computers' motherboards to crash or malfunction; the failure to disclose, in charging customers $600 to replace the screen, that there is a temporary fix that is simple and inexpensive; by marketing the Computers as reliable, durable, and dependable; and by marketing the Retina screens as vividly bright, sharp, and offering the best screens in the industry, caused Plaintiffs and the other Class members to make their purchases of their Computers. Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased these Computers, would not have purchased these Computers at the prices they paid, and/or would have purchased less expensive alternative Computers that did not contain the Filter Defect. Accordingly, Plaintiffs and the other Class members overpaid for their Computers and did not receive the benefit of their bargain.

CLASS ACTION COMPLAINT
Case No.: 5:18-cv-7196
010778-11 1079273 V1

- 27 -

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

94.     Each and every sale of a Computer constitutes a contract between Apple and the purchaser. Apple breached these contracts by selling to Plaintiffs and the other Class members defective Computers and by misrepresenting or failing to disclose that the Computers have the Filter Defect; that the Filter Defect causes dark smudges on the Computers' screens; that, over time, the Filter Defect causes the Computers' motherboards to crash or malfunction; that, in charging customers $600 to replace the screen, failing to disclose a temporary fix is simple and inexpensive; that the Computers as reliable, durable, and dependable; and that the Retina screens as vividly bright, sharp, and offering the best screens in the industry.

95.     As a direct and proximate result of Apple's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT V

### FRAUDULENT CONCEALMENT
### (BASED ON CALIFORNIA LAW)

96.     Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

97.     Apple intentionally and knowingly misrepresented material facts regarding the Computers with an intent to mislead Plaintiffs and the Class.

98.     In purchasing the Computers, Plaintiffs and the other Class members were deceived by Apple's failure to disclose that the Computers have the Filter Defect; that the Filter Defect causes dark smudges to appear on the Computers' screens; that the Filter Defect causes the Computers' motherboards to crash or malfunction; and that, in charging customers $600 to replace the screen, a temporary fix for the smudges is simple and inexpensive.

99.     Plaintiffs and Class members reasonably relied upon Apple's false misrepresentations. They had no way of knowing that Apple's representations were false and gravely misleading. As alleged herein, Apple engaged in extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Apple's deception on their own.

100.    Apple owed Plaintiffs and the Class a duty to disclose the truth about the Filter Defect because Apple:



1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

a.     Possessed exclusive knowledge regarding the Filter Defect, and intentionally concealed the foregoing from Plaintiffs and the Class;

b.     Possessed exclusive knowledge that the Filter Defect causes dark smudges to appear on customers' Computer screens, and intentionally concealed the foregoing from Plaintiffs and the Class;

c.     Possessed exclusive knowledge that the Filter Defect causes the Computers' motherboards to slow down and crash over time, and intentionally concealed the foregoing from Plaintiffs and the Class; and

d.     Made incomplete representations regarding the Computers' performance and longevity, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

101.    Apple had a duty to disclose that the Computers have the Filter Defect; that the Filter Defect causes dark smudges to appear on the Computers' screens; that the Filter Defect causes the Computers' motherboards to crash or malfunction; and that, in charging customers $600 to replace the screen, there is a temporary fix for the smudges that is simple and inexpensive, because Plaintiffs and the other Class members relied on Apple's material representations that the Computers they were purchasing were high quality, efficient, durable, and free from defects.

102.    Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased the Computers. Apple were in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

103.    Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage because they own Computers that are diminished in value as a result of Apple's concealment of the Filter Defect and the resulting deficiencies in the Computers. Had Plaintiffs and Class members been aware of the true facts with regard to the Computers, and Apple's disregard for the truth, Plaintiffs and Class members who purchased the Computers would have paid less for their Computers or would not have purchased them at all.

HB HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

104.    The value of Plaintiffs' and Class members' Computers has diminished as a result of Apple's fraudulent concealment of the Filter Defect and the resulting deficiencies in the Computers' performance, all of which has greatly tarnished Apple's brand name attached to Plaintiffs' and Class members' Computers and made any reasonable consumer reluctant to purchase any of the Computers, let alone pay what otherwise would have been fair market value for the Computers.

105.    Accordingly, Apple is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

106.    Apple's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Apple made to them, in order to enrich the Defendant.  Apple's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT VI**

**VIOLATIONS OF 15 U.S.C. § 2301, *ET SEQ.***
**THE MAGNUSON-MOSS WARRANTY ACT**

107.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

108.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

109.    Apple is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)–(5).

110.    The Computers are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

111.    15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

112.    Apple's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Computers' implied warranties are covered under 15 U.S.C. § 2301(7).

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

113.     Apple breached these warranties, as described in more detail above. Without limitation, the Computers contain a common design Filter Defect in that the Computers fail to operate as represented by Apple.

114.     Plaintiffs and the other Class members have had sufficient direct dealings with either Apple or its agents (*e.g.*, sales representatives and technical support) to establish privity of contract between Apple on one hand, and Plaintiffs and each of the other Class members on the other hand.

115.     Affording Apple a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here.

116.     At the time of sale of each Computer, Apple knew, should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Computers' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Apple a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

117.     Plaintiffs and the other Class members would suffer economic hardship if they returned their Computers but did not receive the return of all payments made by them. Because Apple is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the other Class members have not re-accepted their Computers by retaining them.

118.     The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

119.     Plaintiffs, individually and on behalf of the other Class members, seek all damages permitted by law, including diminution in value of the Computers, in an amount to be proven at trial.

**PRAYER FOR RELIEF**

Plaintiffs and Class members accordingly pray for relief as set forth below:

A. Restitution and/or actual, incidental and consequential damages, and such other relief

HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    as provided by the statutes cited herein.

2         B. Pre-judgment and post-judgment interest.

3         C. Equitable relief in the form of restitution and/or disgorgement of all of Defendant's

4    ill-gotten gains.

5         D. Attorney's fees and costs.

6         E. An injunction against Apple, its affiliates, successors, transferees, assignees, and

7    other officers, directors, partners, agents and employees thereof, and all other persons acting or

8    claiming to act on their behalf or in concert with them, from in any manner continuing its unfair,

9    unlawful, and deceptive practices and false advertising.

10        F. Injunctive relief under the California CLRA as appropriate.

11        G. All other relief to which Plaintiffs and Class members may be entitled at law or in

12   Equity.

13                              **JURY DEMAND**

14        120.    Pursuant to Federal Rule of Civil Procedure 38(c), Plaintiffs demand a trial by jury on

15   all matters so triable.

16
     DATED:  November 28, 2018              Respectfully submitted,
17
18                                          HAGENS BERMAN SOBOL SHAPIRO LLP

19                                          By: ____/s *Jeff D. Friedman*_____
                                                 Jeff D. Friedman (173886)
20                                          715 Hearst Avenue, Suite 202
                                            Berkeley, CA  94710
21                                          Telephone: (510) 725-3000
                                            Facsimile: (510) 725-3001
22                                          jefff@hbsslaw.com

23                                          Steve W. Berman (*pro hac vice forthcoming*)
                                            Jerrod C. Patterson (*pro hac vice forthcoming*)
24                                          HAGENS BERMAN SOBOL SHAPIRO LLP
                                            1301 Second Avenue, Suite 2000
25                                          Seattle, Washington  98101
                                            Telephone: (206) 623-7292
26                                          Facsimile: (206) 623-0594
                                            steve@hbsslaw.com
27                                          jerrodp@hbsslaw.com

28                                          *Attorneys for Plaintiffs*

HB  HAGENS BERMAN

1301 SECOND AVENUE, SUITE 2000 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594