1  MATTHEW D. POWERS (S.B. #212682)
   mpowers@omm.com
2  SARAH H. TRELA (S.B. # 293089)
   strela@omm.com
3  O'MELVENY & MYERS LLP
   Two Embarcadero Center, 28th Floor
4  San Francisco, CA  94111-3823
   Telephone:    (415) 984-8700
5  Facsimile:    (415) 984-8701

6  Attorneys for Defendant
   APPLE INC.

7              **UNITED STATES DISTRICT COURT**

8              **NORTHERN DISTRICT OF CALIFORNIA**

9

10 KIM AHERN, NIKOLAS FRENZEL,          Case No. 5:18-cv-07196-LHK
   JUSTIN EVANS, JOSEPH SAMMARCO,
11 PHIL MAZZA, OMAR GONZALEZ,           **DEFENDANT APPLE INC.'S NOTICE**
   CHARLES KRESNEVICH, JUSTIN           **OF MOTION AND MOTION TO**
12 BROWN, JARED GOFF, JAMES MAYO,       **DISMISS AMENDED CLASS ACTION**
   GARRICK VANCE, ROBERT TREPPER,       **COMPLAINT; MEMORANDUM OF**
13 JAMIE BRIDGE, JASON REED, GARRY      **POINTS AND AUTHORITIES IN**
   PORTER, and TIMOTHY PARKS,           **SUPPORT THEREOF**
14 individually and on behalf of themselves
   and all others similarly situated,
15                                      Hearing Date:  September 26, 2019
                  Plaintiffs,           Time:  1:30 p.m.
16                                      Judge:  Hon. Lucy H. Koh
        v.                              Courtroom:  8, 4th Floor
17
   APPLE INC.,                          **Complaint Filed:  February 15, 2019**
18
                  Defendant.
19

20

21

22

23

24

25

26

27

28

1

<u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

2

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

3      PLEASE TAKE NOTICE THAT on September 26, 2019, at 1:30 p.m. or as soon

4  thereafter as the matter may be heard, in the United States District Court, Northern District of

5  California, San Jose Courthouse, located at 280 South 1st Street, Courtroom 8, before the

6  Honorable Lucy H. Koh, Defendant Apple Inc. ("Apple") will, and hereby does, move the Court

7  for an order dismissing the ten causes of action chosen by the parties from Plaintiffs' first

8  Amended Class Action Complaint ("FAC") pursuant to Rules 12(b)(1), 12(b)(6), and 9(b) of the

9  Federal Rules of Civil Procedure.  Apple respectfully preserves its objections to this claim-

10  selection procedure, as previously explained.  (ECF No. 47.)

11      Specifically, Apple seeks an order dismissing all ten selected claims (1) under Rule

12  12(b)(6) because Plaintiffs fail to identify any actionable misstatements or omissions, and

13  (2) because Plaintiffs fail to meet the heightened pleading standards of Rule 9(b).  Apple also

14  seeks an order (3) dismissing the Florida and Pennsylvania fraudulent concealment claims as

15  barred by the economic loss doctrine, (4) dismissing the New Mexico consumer fraud claim, the

16  Arizona consumer fraud claim, and the Pennsylvania fraudulent concealment claim as barred by

17  the applicable statutes of limitations, and (5) dismissing all Plaintiffs' claims as to iMac and

18  MacBook models they did not purchase for lack of standing under Rule 12(b)(1).

19      This Motion is based on this Notice of Motion and Motion, the accompanying

20  Memorandum of Points and Authorities, the papers and records on file in this action, and such

21  other written and oral argument as may be presented to the Court.

22

23      Dated: August 2, 2019                    O'MELVENY & MYERS LLP

24

25                                               By: /s/ Matthew D. Powers
                                                     Matthew D. Powers
26                                               Attorneys for Defendant
                                                 APPLE INC.

27

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................................ 1

II.    BACKGROUND FACTS ............................................................................................ 2

III.   LEGAL STANDARDS................................................................................................. 5

IV.   PLAINTIFFS' FRAUD-BASED CLAIMS FAIL ........................................................ 6

     A.     No Actionable Affirmative Misrepresentation.......................................... 6

         1.     No Misrepresentation ................................................................. 6

         2.     It Is Unclear What Statements Plaintiffs Actually Saw .............. 8

     B.     No Actionable "Omission" ...................................................................... 9

         1.     Apple Disclosed the Risk of iMac Screen "Smudges" .............. 9

         2.     Plaintiffs Do Not Explain What More Apple Should Have
Disclosed.................................................................................... 9

         3.     Plaintiffs Do Not Plead Apple Had Knowledge of Issues with the
Logic Board or MacBook Screen "Smudging"......................... 10

         4.     No Duty to Disclose ................................................................. 11

             a.     No Exclusive Knowledge............................................. 13

             b.     No Intentional Concealment ........................................ 14

             c.     No Partial Misrepresentation ....................................... 15

         5.     No Basis for Alternative Expectation About Dust..................... 15

     C.     Certain State Fraud-Based Claims Fail.................................................. 16

         1.     Economic Loss Doctrine Bars Florida and Pennsylvania Common-
Law Fraud Claim...................................................................... 16

         2.     No Separate "Unfair" or "Unlawful" Conduct.......................... 18

V.     SEVERAL PLAINTIFFS' CLAIMS ARE UNTIMELY ............................................ 18

VI.   COMPUTERS PLAINTIFFS DID NOT PURCHASE .................................................... 19

VII.   CONCLUSION ......................................................................................................... 21

# TABLE OF AUTHORITIES

Page

**CASES**

*"O" Co. v. Osteotech, Inc.,*
2002 WL 35649660 (D.N.M. 2002) ........................................................................ 18

*Aetna v. Health Diagnostic Lab,*
2015 WL 9460072 (E.D. Pa. 2015) ......................................................................... 15

*Andriesian v. Cosmetic Derm.,*
2015 WL 1638729 (D. Or. 2015) ............................................................................... 7

*Apodaca v. Whirlpool,*
2013 WL 6477821 (C.D. Cal. 2013) ....................................................................... 15

*Arcure v. Kellogg Co.,*
2011 WL 13294631 (M.D. Fla. 2011) ....................................................................... 7

*Ash v. Cont'l Ins.,*
932 A.2d 877 (Pa. 2007) ......................................................................................... 19

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................................................... 5

*Avery v. State Farm Mut. Auto. Ins. Co.,*
835 N.E.2d 801 (Ill. 2005) ........................................................................................ 7

*Backhaut v. Apple,*
74 F. Supp. 3d 1033 (N.D. Cal. 2014) ...................................................................... 8

*Baird v. Samsung,*
2018 WL 4191542 (N.D. Cal. 2018) .................................................................... 9, 10

*Balistreri v. Pacifica,*
901 F.2d 696 (9th Cir. 1988) ..................................................................................... 5

*Barbara's Sales v. Intel,*
879 N.E.2d 910 (Ill. 2007) ........................................................................................ 7

*Begay v. Medicus Healthcare Sols.,*
2015 WL 13650107 (D.N.M. 2015) ........................................................................... 7

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................................................... 5

*Belmont v. MB Inv. Partners,*
708 F.3d 470 (3d Cir. 2013) .................................................................................... 11

*Berenblat v. Apple,*
2010 WL 1460297 (N.D. Cal. 2010) ....................................................................... 16

*Bergdale v. Countrywide,*
2014 WL 2885473 (D. Ariz. 2014) ......................................................................... 19

*Bhatt v. Tech Data Corp.,*
2018 WL 6504375 (M.D. Fla. 2018) ......................................................................... 9

*Breeden v. Richmond Cmty. Coll.,*
171 F.R.D. 189 (M.D.N.C. 1997) ........................................................................... 15

*Bruton v. Gerber Prods.*,
    2014 WL 172111 (N.D. Cal. 2014)................................................................................ 19, 20

*Burns v. Winnebago Indus., Inc.*,
    2013 WL 4437246 (M.D. Fla. 2013) ...................................................................................... 17

*Cheatham v. ADT Corp.*,
    161 F. Supp. 3d 815 (D. Ariz. 2016)........................................................................................ 7

*Connick v. Suzuki*,
    675 N.E.2d 584 (Ill. 1996) ........................................................................................................ 8

*Cosman v. Ford*,
    674 N.E.2d 61 (Ill. App. Ct. 1996) ........................................................................................ 16

*Dang v. Samsung Elecs. Co.*,
    2018 WL 6308738 (N.D. Cal. 2018).................................................................................. 2, 12

*Darne v. Ford*,
    2015 WL 9259455 (N.D. Ill. 2015)........................................................................................... 9

*Daugherty v. Am. Honda*,
    144 Cal. App. 4th 824 (2006)............................................................................................ 12, 18

*Davidson v. Apple*,
    2017 WL 976048 (N.D. Cal. 2017)............................................................................ 2, 9, 10, 15

*Davidson v. Apple, Inc.*,
    2017 WL 3149305 (N.D. Cal. 2017)........................................................................................ 17

*Diep v. Durst-Pro-USA*,
    2006 WL 1788175 (D. Or. 2006) ............................................................................................ 16

*Dolan v. SunGard*,
    2007 WL 4287722 (D.N.H. 2007) .......................................................................................... 16

*Drilling Consultants v. First Montauk Sec.*,
    806 F. Supp. 2d 1228 (M.D. Fla. 2011) ................................................................................. 10

*Elbeco v. Nat'l Ret. Fund*,
    128 F. Supp. 3d 849 (E.D. Pa. 2015) ..................................................................................... 14

*Elias v. Hewlett-Packard*,
    903 F. Supp. 2d 843 (N.D. Cal. 2012) ..................................................................................... 7

*Elm Ridge Expl. Co. v. Engle*,
    721 F.3d 1199 (10th Cir. 2013)............................................................................................... 19

*Evans v. Taco Bell Corp.*,
    2005 WL 2333841 (D.N.H. 2005) ............................................................................................ 7

*Expedite v. Plus, Bags, Cars & Serv.*,
    2012 WL 3597427 (D. Or. 2012)............................................................................................. 14

*Falk v. Gen. Motors*,
    496 F. Supp. 2d 1088 (N.D. Cal. 2007) .............................................................................. 2, 13

*Fusco v. Uber Techs.*,
    2018 WL 3618232 (E.D. Pa. 2018)........................................................................................... 7

*Gaines v. Krawczyk*,
    354 F. Supp. 2d 573 (W.D. Pa. 2004) ...................................................................................... 9

*Gould v. M & I Marshall,*
 860 F. Supp. 2d 985 (D. Ariz. 2012) ................................................................... 15

*Grassie v. Roswell Hosp.,*
 258 P.3d 1075 (N.M. Ct. App. 2010) ................................................................... 15

*Grodzitsky v. Am. Honda,*
 2013 WL 690822 (C.D. Cal. 2013) ...................................................................... 11

*Gusdorff v. MNR Indus., LLC,*
 2018 WL 3328021 (E.D. Pa. 2018) ...................................................................... 17

*Hamilton v. TBC,*
 328 F.R.D. 359 (C.D. Cal. 2018) ..................................................................... 8, 16

*Hauck v. AMD,*
 2018 WL 5729234 (N.D. Cal. 2018) ...................................................................... 6

*Hauck v. AMD,*
 2019 WL 1493356 (N.D. Cal. 2019) ............................................................. 8, 9, 18

*Henderson Square v. LAB Townhomes,*
 16 N.E.3d 197 (Ill. App. 2014) ............................................................................ 14

*Herron v. Best Buy,*
 924 F. Supp. 2d 1161 (E.D. Cal. 2013) ............................................................... 14

*Hindsman v. Gen. Motors,*
 2018 WL 2463113 (N.D. Cal. 2018) .................................................................... 10

*Hodges v. Apple Inc.,*
 2013 WL 6698762 (N.D. Cal. 2013) .................................................................... 12

*Hodsdon v. Mars, Inc.,*
 891 F.3d 857 (9th Cir. 2018) ........................................................................... 2, 12

*Hoey v. Sony,*
 515 F. Supp. 2d 1099 (N.D. Cal. 2007) ......................................................... 12, 16

*In re Apple Inc. Device Performance Litig.,*
 2019 WL 1979915 (N.D. Cal. 2019) .................................................................... 12

*In re Arris Cable Modem Consumer Litig.,*
 2018 WL 288085 (N.D. Cal. 2018) ........................................................................ 8

*In re Gen. Motors LLC Ignition Switch Litig.,*
 2016 WL 3920353 (S.D.N.Y. 2016) ..................................................................... 17

*In re Gen. Motors LLC Ignition Switch Litig.,*
 257 F. Supp. 3d 372 (S.D.N.Y.), *modified on reconsideration*, 2017 WL
 3443623 (S.D.N.Y. 2017) .................................................................................... 15

*In re iPhone 4S Consumer Litig.,*
 2014 WL 589388 (N.D. Cal. 2014), *aff'd*, 637 F. App'x 414 (9th Cir. 2016) ..................... 1, 8

*In re K-Dur Antitrust Litig.,*
 338 F. Supp. 2d 517 (D.N.J. 2004) ...................................................................... 16

*In re MyFord Touch Consumer Litig.,*
 46 F. Supp. 3d 936 (N.D. Cal. 2014) ..................................................................... 8

*In re Takata Airbag Prods. Liab. Litig.,*
 193 F. Supp. 3d 1324 (S.D. Fla. 2016) ................................................................ 17

- iv -

*In re Tobacco II*,
    207 P.3d 20 (Cal. 2009) ........................................................................................ 8

*Invest Almaz v. Temple-Inland Forest Prods.*,
    243 F.3d 57 (1st Cir. 2001) ................................................................................. 15

*Irwin v. Miami-Dade Cty.*,
    2009 WL 465066 (S.D. Fla. 2009) ....................................................................... 8

*Kalik v. Abacus Exch.*,
    2001 WL 1326581 (D.N.H. 2001) ................................................................ 16, 18

*Kane v. Chobani, Inc.*,
    2013 WL 5289253 (N.D. Cal. 2013) ................................................................... 20

*Kearns v. Ford*,
    567 F.3d 1120 (9th Cir. 2009) ................................................................... 2, 6, 8, 9

*Kidwell v. Wagoner*,
    2010 WL 11507301 (M.D. Fla. 2010) .................................................................. 7

*Koski v. Carrier Corp.*,
    347 F. Supp. 3d 1185 (S.D. Fla. 2017) ............................................................... 17

*Leon v. Cont'l AG*,
    301 F. Supp. 3d 1203 (S.D. Fla. 2017) ............................................................... 17

*Lerner v. DMB Realty*,
    234 Ariz. 397, 322 P.3d 909 (2014) ................................................................... 14

*Lohman v. Daimler–Chrysler*,
    166 P.3d 1091 (N.M. Ct. App. 2007) ................................................................. 10

*Long v. Hewlett-Packard Co.*,
    2007 WL 2994812 (N.D. Cal. 2007) ................................................................... 12

*Marcus v. Apple*,
    2015 WL 1743381 (N.D. Cal. 2015) ............................................................... 9, 10

*McGlinchy v. Shell*,
    845 F.2d 802 (9th Cir. 1988) ................................................................................ 5

*McKee v. James*,
    2013 WL 3893430 (N.C. Super. 2013) ......................................................... 13, 14

*Mendiondo v. Centinela Hosp.*,
    521 F.3d 1097 (9th Cir. 2008) .............................................................................. 5

*Muehlbauer v. Gen. Motors*,
    431 F. Supp. 2d 847 (N.D. Ill. 2006) .................................................................. 13

*Oestreicher v. Alienware*,
    544 F. Supp. 2d 964 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489 (9th Cir. 2009) ............ passim

*Pearson v. Philip Morris*,
    361 P.3d 3 (Or. 2015) ........................................................................................... 9

*Pirozzi v. Apple*,
    913 F. Supp. 2d 840 (N.D. Cal. 2012) ............................................................ 8, 15

*Private Jet Servs. v. Sky King*,
    2006 WL 2864057 (D.N.H. 2006) ....................................................................... 7

*Punian v. Gillette*,
    2016 WL 1029607 (N.D. Cal. 2016)...................................................................... 16

*R.A. Peck v. Liberty Fed.*,
    766 P.2d 928 (N.M. Ct. App. 1988)...................................................................... 16

*Rasmussen v. Apple*,
    27 F. Supp. 3d 1027 (N.D. Cal. 2014) ...................................................................... 7

*Rockford Mem'l Hosp. v. Havrilesko*,
    858 N.E.2d 56 (Ill. App. Ct. 2006) ................................................................ 10, 13

*Rosenfield v. Frank*,
    2019 WL 2355588 (M.D. Pa. 2019) ................................................................ 17, 18

*Sabol v. Ford Motor Co.*,
    2015 WL 4378504 (E.D. Pa. 2015)...................................................................... 17

*Sadler v. Pella*,
    146 F. Supp. 3d 734 (D.S.C. 2015)...................................................................... 16

*Salmeron v. Highlands Ford Sales, Inc.*,
    271 F. Supp. 2d 1314 (D.N.M. 2003) ................................................................ 13, 14

*Sanders v. Apple*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009) ...................................................................... 14

*Sciacca v. Apple*,
    362 F. Supp. 3d 787 (N.D. Cal. 2019) ................................................... 7, 11, 20

*Sevidal v. Target*,
    189 Cal. App. 4th 905 (2010)...................................................................... 8

*Silverman v. Motorola, Inc.*,
    2008 WL 4360648 (N.D. Ill. 2008)...................................................................... 9

*Slippery Rock Area Sch. Dist. v. Tremco*,
    2016 WL 3198122 (W.D. Pa. 2016) ...................................................................... 16

*Soilworks v. Midwest Indus. Supply*,
    575 F. Supp. 2d 1118 (D. Ariz. 2008)...................................................................... 7

*Solum v. Certainteed*,
    147 F. Supp. 3d 404 (E.D.N.C. 2015)...................................................................... 7

*Spector v. Mondelez*,
    178 F. Supp. 3d 657 (N.D. Ill. 2016) ...................................................................... 16

*Steinberger v. McVey*,
    318 P.3d 419 (Ariz. Ct. App. 2014) ...................................................................... 19

*Stewart v. Electrolux*,
    304 F. Supp. 3d 894 (E.D. Cal. 2018) ...................................................................... 9

*Taylor v. Am. Honda*,
    555 F. Supp. 59 (M.D. Fla. 1982) ................................................................ 14, 16

*Taylor, Bean & Whitaker Mortg. v. GMAC*,
    2008 WL 3200286 (M.D. Fla. 2008) ...................................................................... 15

*Tiara Condo. Ass'n v. Marsh & McLennan*,
    110 So. 3d 399 (Fla. 2013)...................................................................... 17

*Toy v. Metro. Life Ins.*,
  928 A.2d 186 (Pa. 2007) ........................................................................... 19

*Unigestion v. UPM Tech.*,
  160 F. Supp. 3d 1214 (D. Or. 2016) .................................................. 14, 15

*Universal Inv. v. Sahara Motor Inn*,
  619 P.2d 485 (Ariz. Ct. App. 1980) ......................................................... 16

*Vazquez v. Gen. Motors*,
  2018 WL 447644 (S.D. Fla. 2018)............................................................ 17

*Vess v. Ciba-Geigy*,
  317 F.3d 1097 (9th Cir. 2003) .................................................................... 6

*Viguers v. Philip Morris*,
  837 A.2d 534 (Pa. Super. Ct. 2003) ......................................................... 11

*Werwinski v. Ford Motor Co.*,
  286 F.3d 661 (3d Cir. 2002) ...................................................................... 17

*Williams v. Yamaha*,
  851 F.3d 1015 (9th Cir. 2017)............................................................ 10, 15

*Wilson v. Dryvit Sys.*,
  206 F. Supp. 2d 749 (E.D.N.C. 2002) ...................................................... 16

*Wilson v. Frito-Lay*,
  961 F. Supp. 2d 1134 (N.D. Cal. 2013) ................................................ 2, 20

*Wilson v. Hewlett-Packard*,
  668 F.3d 1136 (9th Cir. 2012)............................................... 2, 10, 11, 12

*XP Glob., Inc. v. AVM, L.P.*,
  2016 WL 6679427 (S.D. Fla. 2016).................................................... 13, 14

*Yacht W., Ltd. v. Christensen Shipyards, Ltd.*,
  2009 WL 1372954 (D. Or. 2009) ................................................................ 7

**STATUTES**

40 Pa. Cons. Stat. § 5524(7)........................................................................ 19

720 Ill. Comp. Stat. 295/1A) ........................................................................ 5

815 ILCS 505/10a(a)...................................................................................... 8

815 Ill. Comp. Stat. 505/1, *et seq.* .............................................................. 5

Ariz. Rev. Stat. § 44-1521, *et seq.* .............................................................. 5

Cal. Bus. & Prof. Code § 17200, *et seq.* ..................................................... 5

N.C. Gen. Stat. § 75-1.1., *et seq.* ................................................................ 5

N.H. Rev. Stat. § 38-A:10 ............................................................................. 8

N.H. Rev. Stat. Ann. § 358-A:1, *et seq.* ..................................................... 5

N.M. Stat. § 57-12-10(B) .............................................................................. 8

N.M. Stat. Ann. § 37-1-4 ............................................................................. 18

N.M. Stat. Ann. § 57-12-1, *et seq.* .............................................................. 5

Or. Rev. Stat. § 646.605, *et seq.*................................................................... 5

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 551(2) ...................................................................................... 13

**RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................... 5

Fed. R. Civ. P. 9 ............................................................................................................................... 9

Fed. R. Civ. P. 9(b) ................................................................................................................ passim

1    ## I.    **INTRODUCTION**

2         The ten claims in Plaintiffs' first Amended Complaint ("FAC") that are currently at issue[1]

3    fail as a matter of law.  Plaintiffs contend that Apple "fail[ed] to disclose" that its iMac and

4    MacBook computers do not come with air filters and that they could occasionally experience

5    problems caused by dust (primarily, screen smudges).  Yet Plaintiffs admit that Apple *explicitly*

6    warns customers that dust and debris, in certain circumstances, could cause the same screen

7    smudges they claim to have experienced—and they plead no facts to show that their factual

8    allegations about iMacs are relevant to MacBooks, which have a different design.  Plaintiffs also

9    admit that if any such issues do arise, Apple fixes affected computers for free under its standard

10   warranty.  Nevertheless, Plaintiffs contend that—in their view—Apple's computers should have

11   been designed differently and with special air filters.  Specifically, Plaintiffs contend that Apple

12   committed fraud because its computers "do not filter out" dust and because it does not provide

13   free dust-related repairs *after* the warranty has expired.  On these alleged facts, all of Plaintiffs'

14   fraud-based claims should be dismissed with prejudice.

15        ***No "False Statements."***  Plaintiffs' fraud-based claims, premised on supposed "false

16   statements" by Apple, fail because (1) none of the statements Plaintiffs cite are false and

17   (2) Plaintiffs do not allege that they personally relied on any specific statements or that the

18   statements caused their alleged injuries.  The specific advertising statements Plaintiffs identify

19   ("rigorous testing," "most brilliant" displays, "uncompromising performance") are either non-

20   actionable on their face or are not alleged to be false.  *Oestreicher v. Alienware*, 544 F. Supp. 2d

21   964, 973 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489 (9th Cir. 2009); *In re iPhone 4S Consumer*

22   *Litig.*, 2014 WL 589388, at *7 (N.D. Cal. 2014), *aff'd*, 637 F. App'x 414 (9th Cir. 2016)

23   (representations about product features are not promises product will never need repair).

24        ***No Actionable "Omissions."***  Nor have Plaintiffs pleaded any actionable omission.  They

25   admit that Apple explicitly warned that dust can, in certain circumstances, affect computer

26   ───────────────
     [1] Pursuant to the Court's June 5 and June 14, 2019 Orders (ECF Nos. 42 and 44), the parties each
27   selected five claims (ten in total) to litigate in this motion.  Apple respectfully preserves its
     objections to the claim-selection procedure, as previously explained in its Case Management
28   Statement filed on June 14, 2019 (ECF No. 43) and again in its Objections to the Claim Selection
     Process and Selection of Causes of Action, filed on July 12, 2019 (ECF No. 47).

APPLE'S 2ND MOT. TO DISMISS FAC
CASE NO. 5:18-cv-07196-LHK

1    screens.  (FAC ¶ 91.)  Nevertheless, Plaintiffs contend that Apple "fail[ed] to disclose the Filter

2    Defect" without clearly explaining what else they contend Apple knew and *should* have

3    disclosed.  (*E.g.*, *id.* ¶ 16.)  Their "omissions" claims fail under Rule 9(b).  *See Kearns v. Ford*,

4    567 F.3d 1120, 1124, 1126-27 (9th Cir. 2009); *Davidson v. Apple*, 2017 WL 976048, at *9-10

5    (N.D. Cal. 2017) (Koh, J.) (dismissing omissions claims for failing to plead what specific

6    materials plaintiffs reviewed prior to their purchases).  Nor do Plaintiffs plead facts to establish

7    that Apple had any duty to disclose that unidentified information.  Under California law, for

8    example, there is no duty to disclose absent either an affirmative misrepresentation or an omitted

9    safety issue, none of which are present here.  *See, e.g.*, *Wilson v. Hewlett-Packard*, 668 F.3d

10   1136, 1141 (9th Cir. 2012)  Nor have Plaintiffs pleaded facts to show that the risk of screen

11   smudging defeats the "central function" of the computers such that they were "incapable of use

12   by any consumer," much less that a duty to disclose could exist on any other basis.  *See Hodson*

13   *v. Mars, Inc.*, 891 F.3d 857, 862-64 (9th Cir. 2018); *Dang v. Samsung Elecs. Co.*, 2018 WL

14   6308738, at *7 (N.D. Cal. 2018) (Koh, J.).  And under the laws of other states, no disclosure duty

15   exists without (in varying forms) either a fiduciary relationship, exclusive knowledge, active

16   concealment, or a misleading partial disclosure—none of which Plaintiffs plead here.  *See Falk v.*

17   *Gen. Motors*, 496 F. Supp. 2d 1088, 1085 (N.D. Cal. 2007).

18           ***Plaintiffs Cannot Sue for Products They Did Not Purchase.***  Finally, Plaintiffs

19   improperly seek relief for products they never purchased.  Plaintiffs contend, without any

20   supporting facts, that *all* models of iMac and MacBook computers sold over the past two decades

21   are "defective" in the same way.  But the computers differ in critical ways, including the location

22   of the screen in relation to the air vents and logic board—for example, on all MacBooks the

23   screen is in a separate compartment from the keyboard and logic board.  Plaintiffs lack standing

24   to bring claims based on products that are not "substantially similar" to the ones they bought.  *See*

25   *Wilson v. Frito-Lay*, 961 F. Supp. 2d 1134, 1141 (N.D. Cal. 2013) (rejecting claims over

26   "products that are not in fact substantially similar to the products they actually bought").

27   **II.    BACKGROUND FACTS**

28           Plaintiffs filed their original Complaint on November 28, 2018.  (ECF No. 1.)  They

alleged that Apple did "not install [air] filters in the vents" on iMac and MacBook computers and failed to disclose that dust could accumulate on the screen or logic board.  (Compl. ¶¶ 23-24.)  Plaintiffs' FAC reiterates those allegations.  (*See, e.g.*, FAC ¶¶ 2, 85-87.)  But as Plaintiffs now admit, Apple's publicly available iMac user guides for years have included warnings that dust or smoke, in rare instances and under certain conditions, can cause smudging on iMac screens.  (*Id*. ¶ 91 (dust can "in rare instances, enter the ventilation openings of your iMac and, under certain conditions, result in a slight haze on the inside surface of the glass panel that covers the iMac display").)  And if dust does affect a computer, Apple offers free repairs under its standard warranty.  (*See, e.g.*, *id*. ¶¶ 22, 79, 97.)

Plaintiffs Ahern (AZ), Gonzalez (CA), Vance (CA), Porter (FL), Sammarco (IL), Brown (NH), Evans (NM), Trepper (NC), Reed (OR), and Kresnevich (PA) each claim they saw "smudges" in the corners of the screens caused by dust.[2]  (FAC ¶¶ 10, 22, 27, 37, 42, 47, 58, 63, 74.)[3]  They first noticed those "smudges" between 5 months (Trepper) and 4 years (Reed) after purchase; and at least seven of the ten Plaintiffs whose claims are the subject of this motion used their computer for a year or more before seeing any "smudging."  (*See generally id*. ¶¶ 9-82.)  Plaintiffs Evans, Sammarco, and Kresnevich also allege that they experienced performance issues other than smudges, but those issues allegedly occurred long after their warranties expired and only after *years* of use.  (*Id*. ¶¶ 22, 28, 43.)  Evans claims he replaced his iMac's logic board *six years* after purchase (*id*. ¶ 22), and Kresnevich "had his hard drive crash" more than *five years* after purchase.  (*Id*. ¶ 43.)  And Sammarco simply claims that at some unspecified time after his warranty expired, his computer was running "exceedingly slowly," which he claims, "[u]pon

---

[2] The screen on MacBook computers is in an enclosure with no air vents or fans.  It is separate from the enclosure that contains the logic board and other "working components," along with air vents and fans to cool those components.  (*See* video cited in FAC ¶ 95 n.42 ("The New MacBook Pro – Design, Performance and Features – Apple" (Oct. 27, 2016)).)  If the dust problems are connected to the vents and fans, as Plaintiffs allege, it is unclear how they could have possibly affected the screen enclosure.  But Plaintiff Porter (FL) insists, without explanation, that the "Filter Defect" caused "smudging" on his MacBook screen.  (*Id*. ¶ 74.)

[3] For purposes of this motion, "Plaintiffs" will refer to the 10 individual plaintiffs across nine states who assert the selected claims at issue in this motion.  These 10 plaintiffs purchased between March 2011 (Evans) and July 2016 (Brown).  Most purchased 27" 5K Retina display iMacs, though two purchased the smaller 21.5" iMac model; only Plaintiff Porter purchased a MacBook.

APPLE'S 2ND MOT. TO DISMISS FAC
CASE NO. 5:18-cv-07196-LHK

information and belief," was caused "*in part* by the Filter Defect." (*Id*. ¶ 28 (emphasis added).)

Plaintiffs do *not* contend that all or most iMacs or MacBooks experienced the dust-related issues they describe, or that the "defect" had any impact on most computer users. Instead, Plaintiffs admit that the problems they allege arise *only* if the computer fans or vents "suck in dirt and debris." (*E.g.*, FAC ¶¶ 2-3.) Yet each Plaintiff also alleges that their residences have "no known sources of smoke, dust, or debris." (*E.g.*, *id*. ¶ 10.)

Plaintiffs contend that Apple made several "affirmative misrepresentations": that its screens were "clear and remarkably vivid" (FAC ¶¶ 19, 59, 64), or the "highest quality" (*id*. ¶¶ 75, 80); that its products underwent "rigorous testing methods that simulated customers' experiences" (*id*. ¶¶ 4, 94); that its displays were "the most advanced, most brilliant desktop display[s] we've ever built" (*id*. ¶¶ 4, 93); and that "everything is designed to work just the way you expect it to" (*id*. ¶¶ 4, 93). But Plaintiffs do not explain why these statements were false—let alone how they are objective *factual* statements. The risk of dust-related screen smudging after years of use does not mean Apple's screens were not "vivid" or "brilliant" when sold. And moreover, Plaintiffs do not allege that they ever saw most of these statements or identify the precise content of the few generalized statements they did claim to see.

Finally, Plaintiffs contend Apple "fail[ed] to disclose the Filter Defect." (FAC ¶ 16.) But as Plaintiffs admit, Apple expressly warned consumers that dust or other particulates could affect their computers and possibly cause screen smudging in rare circumstances and under certain conditions. (*Id*. ¶ 91.) Plaintiffs appear to contend that Apple's disclosures somehow "work[] to disguise the defect," but they do not allege facts indicating why that could be the case and do not identify any specific aspect of Apple's disclosure that they contend was false. (*Id*. ¶ 92.) Nor do Plaintiffs explain what more Apple should have told them about this "defect." Instead, Plaintiffs simply assert that Apple should have disclosed "the Filter Defect" or its "defective design" without describing what additional information Apple should have disclosed (or in what context). (*E.g.*, *id*. ¶ 15 ("Had Apple disclosed the Filter Defect, Ms. Ahern would have received this information prior to her purchase, either through the macrumors.com website or through Apple's own website."); *see also id*. ¶¶ 20, 25, 30, 35, 40, 45, 48, 52, 56, 61, 65, 69, 72, 76, 82, 122.)

1    Based on these allegations, Plaintiffs asserted state-specific putative class claims for

2    violations of consumer protection statutes, fraudulent concealment, and breach of contract across

3    14 states, as well as a putative nationwide class claim for violating the Magnuson-Moss Warranty

4    Act.  After the motion to dismiss briefing was complete, the Court ordered the parties to each

5    choose five claims to litigate first.  (*See* Order Denying Motion to Dismiss Without Prejudice

6    (ECF No. 42); Case Management Order (ECF No. 44).)  Plaintiffs subsequently voluntarily

7    dismissed all warranty and breach of contract claims.  (ECF No. 46.)

8    In keeping with the Court's instructions and the selections of the parties, this motion seeks

9    dismissal of claims for (1) violations of the Arizona Consumer Fraud Act (Ariz. Rev. Stat. § 44-

10   1521, *et seq.*), (2) violations of the California Unfair Competition Law (Cal. Bus. & Prof. Code §

11   17200, *et seq.*), (3) fraudulent concealment based on California law, (4) fraudulent concealment

12   based on Florida law, (5) violations of the Illinois Consumer Fraud and Deceptive Business

13   Practices Act (815 Ill. Comp. Stat. 505/1, *et seq.*, and 720 Ill. Comp. Stat. 295/1A), (6) violations

14   of the New Hampshire Consumer Protection Act (N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*, (7)

15   violations of the New Mexico Unfair Trade Practices Act (N.M. Stat. Ann. § 57-12-1, *et seq.*), (8)

16   violations of the North Carolina Unfair and Deceptive Acts and Practices Act (N.C. Gen. Stat. §

17   75-1.1., *et seq.*), (9) violations of the Oregon Unlawful Trade Practices Act (Or. Rev. Stat. §

18   646.605, *et seq.*), and (10) fraudulent concealment based on Pennsylvania law.

19   **III.   LEGAL STANDARDS**

20   Dismissal under Rule 12(b)(6) is appropriate where there is either a "lack of a cognizable

21   legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri*

22   *v. Pacifica*, 901 F.2d 696, 699 (9th Cir. 1988); *Mendiondo v. Centinela Hosp.*, 521 F.3d 1097,

23   1104 (9th Cir. 2008).  The Court must accept well-pleaded facts as true, but "conclusory

24   allegations without more are insufficient to defeat a motion to dismiss."  *McGlinchy v. Shell*, 845

25   F.2d 802, 810 (9th Cir. 1988).  The Court cannot assume the truth of legal conclusions merely

26   because they are pleaded in the form of factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-

27   79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("plaintiff's obligation to

28   provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions,

1   and a formulaic recitation of the elements of a cause of action will not do").

2         Plaintiffs' fraud-based claims also must satisfy the heightened pleading standard of Rule

3   9(b) and "must state with particularity the circumstances constituting fraud" in order to "give

4   [Apple] notice of the particular misconduct which is alleged to constitute the fraud charged so

5   that they can defend against the charge and not just deny that they have done nothing wrong."

6   Fed. R. Civ. P. 9(b).  Specifically, Plaintiffs must plead the time, place, and content of the alleged

7   fraudulent representation or omission—the "who, what, when, where, and how"—as well as facts

8   showing their reliance on or causation from the allegedly fraudulent conduct when making their

9   purchases.  *Kearns*, 567 F.3d at 1124, 1126-27; *Vess v. Ciba-Geigy*, 317 F.3d 1097, 1106 (9th

10   Cir. 2003).

11   **IV.     PLAINTIFFS' FRAUD-BASED CLAIMS FAIL**

12         The selected claims all fail as a matter of law.  Plaintiffs do not identify any

13   misrepresentations or omissions that are actionable, much less that caused Plaintiffs any injury.

14   And because all Plaintiffs' claims are based on the same alleged fraudulent scheme, Rule 9(b)

15   requires that all claims satisfy its heightened pleading standard.  *See Vess*, 317 F.3d at 1102

16   ("Rule 9(b) applies to 'averments of fraud'"); *Kearns*, 567 F.3d at 1125; *Hauck v. AMD*, 2018

17   WL 5729234, at *4 (N.D. Cal. 2018).  Plaintiffs' allegations do not come close to meeting that

18   standard.

19       **A.     No Actionable Affirmative Misrepresentation**

20           1.     **No Misrepresentation**

21         The only affirmative statements Plaintiffs identify are non-actionable and cannot support

22   any fraud-based claim.  Plaintiffs allege that Apple advertised "rigorous testing methods" (FAC

23   ¶¶ 4, 94), that "everything is designed to work just the way you expect it to" (*id*. ¶ 93), that "the

24   5K Retina screen was particularly sharp and vivid" (*id*. ¶ 9), and that Apple's displays were "the

25   most advanced, most brilliant desktop display[s] we've ever built."  (*Id*. ¶¶ 4, 93.)  Plaintiffs also

26   generally allege they "relied" on unspecified Apple statements about the clarity of the screens or

27   the quality of the computers.  (*Id*. ¶¶ 9, 24, 29, 39, 44, 59, 64, 75.)  Plaintiffs' attempt to base

28   "fraud" claims on those statements should be rejected.

First, these statements are not actionable as a matter of law. An actionable statement must make a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Rasmussen v. Apple*, 27 F. Supp. 3d 1027, 1039-40 (N.D. Cal. 2014) (citation omitted); *Sciacca v. Apple*, 362 F. Supp. 3d 787, 798-88 (N.D. Cal. 2019) (Koh, J.). "Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable." *Oestreicher*, 544 F. Supp. 2d at 973 (citation omitted). The same is true under the laws of each of the nine states that are the subject of this motion.[4] Courts routinely reject claims on the pleadings when based on statements like the ones Plaintiffs cite here. *See Elias v. Hewlett-Packard*, 903 F. Supp. 2d 843, 855 (N.D. Cal. 2012) (Koh, J.) ("advertisements that a computer is 'ultra-reliable' or 'packed with power' say nothing about the specific characteristics or components of the computer"); *Rasmussen*, 27 F. Supp. 3d at 1040; *Sciacca*, 362 F. Supp. 3d at 799.[5]

---

[4] *See also, e.g.*, **(AZ)** *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 827 (D. Ariz. 2016) (statements about a product's "technological sophistication" and "general marketing statements regarding advanced or 'state-of-the-art' technology are nonactionable" under the Arizona Consumer Fraud Act because only "a statement that is quantifiable, that makes a claim as to the 'specific or absolute characteristics of a product,' may be an actionable statement of fact while a general, subjective claim about a product is non-actionable puffery'") (citation omitted); **(FL)** *Arcure v. Kellogg Co.*, 2011 WL 13294631, at *6 (M.D. Fla. 2011) (statements about the "quality of [a] product and the nature of [] quality control standards … amount to vague, subjective claims of product superiority" and cannot form the basis of a fraudulent concealment claim); **(IL)** *Barbara's Sales v. Intel*, 879 N.E.2d 910, 926 (Ill. 2007) ("words such as 'best' are not actionable representations of fact"); **(NH)** *Evans v. Taco Bell Corp.*, 2005 WL 2333841, at *12 (D.N.H. 2005) ("general claims to superiority, known as 'puffery' do not amount to actionable representations"); **(NM)** *Begay v. Medicus Healthcare Sols.*, 2015 WL 13650107, at *6 (D.N.M. 2015) (phrases that "are not measurable standards [] are so broad that one would not reasonably rely upon them"); **(NC)** *Solum v. Certainteed*, 147 F. Supp. 3d 404, 412 (E.D.N.C. 2015) ("General statements of comparison or superiority are puffery and are not actionable as a matter of law."); **(OR)** *Andriesian v. Cosmetic Derm.*, 2015 WL 1638729, at *4 (D. Or. 2015) ("generalized, vague and unspecific assertions constitute mere puffery upon which a reasonable consumer cannot rely") (citation omitted); **(PA)** *Fusco v. Uber Techs.*, 2018 WL 3618232, at *6-7 (E.D. Pa. 2018) ("Fraud requires a statement that can be proved false. … [T]here is no way to prove that a product is not 'good' [or] 'dependable[.]'").

[5] *See also, e.g.*, **(AZ)** *Soilworks v. Midwest Indus. Supply*, 575 F. Supp. 2d 1118, 1133 (D. Ariz. 2008) ("innovative" and "generalized and vague statements of product superiority"); **(FL)** *Kidwell v. Wagoner*, 2010 WL 11507301, at *4 (M.D. Fla. 2010) ("built like a rock" and "most dependable, long-lasting"); **(IL)** *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 847 (Ill. 2005) ("best," "high-quality," and "picture perfect"); **(NH)** *Private Jet Servs. v. Sky King*, 2006 WL 2864057, at *5 (D.N.H. 2006) ("highest attainable level of safety, efficiency and comfort"); **(NM)** *Begay*, 2015 WL 13650107, at *6 ("laser-focused on quality"); **(NC)** *Solum*, 147 F. Supp. 3d at 412 ("highly prestigious" and "rigorous coursework"); **(OR)** *Yacht W., Ltd. v. Christensen Shipyards, Ltd.*, 2009 WL 1372954, at *6 (D. Or. 2009) ("proven, of high quality, and free of material defects"); **(PA)** *Fusco*, 2018 WL 3618232, at *6-7 ("thorough," "rigorous,"

1      Second, Plaintiffs never explain how the statements they identify were false, let alone

2   false at the time they were made.  *Hauck v. AMD*, 2019 WL 1493356, at *13 (N.D. Cal. 2019)

3   (Koh, J.) ("[T]o satisfy Rule 9(b), a plaintiff must allege why a statement was 'untrue or

4   misleading *when made*.'") (citation omitted, emphasis original).  Plaintiffs do not contest that

5   Apple's computers underwent testing, or deny that the display was the "most brilliant" Apple had

6   built to date.  The statements Plaintiffs cite—like a "sharp and vivid" display—are entirely true

7   when the products are sold and not representations that the features cited will function

8   indefinitely without issues.  *E.g.*, *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 954

9   (N.D. Cal. 2014) (rejecting claims when plaintiffs did not contend the "system [did] not have the

10  features described[.] ... [T]heir beef is that the features ... do not work[.]"); *In re iPhone 4S*, 2014

11  WL 589388, at *7 ("Absent a representation that a product feature would perform at a certain

12  level, a reasonable consumer is unlikely to be deceived by advertising that merely demonstrates a

13  product has such a feature.");  *Hauck*, 2019 WL 1493356 (statement about initial clock speed did

14  not represent that processor would retain that speed after software patches were installed).

## 2.      **It Is Unclear What Statements Plaintiffs Actually Saw**

16      Next, Plaintiffs fail to identify any specific statement that they relied on when purchasing

17  their computers, as required by Rule 9(b).  *See Kearns*, 567 F.3d at 1124, 1126-27; *In re Arris*

18  *Cable Modem Consumer Litig.*, 2018 WL 288085, at *9 (N.D. Cal. 2018) (Koh, J.) (plaintiffs did

19  not specify "which statements any of them saw or relied on in deciding to buy"); *Pirozzi v. Apple*,

20  913 F. Supp. 2d 840, 850 (N.D. Cal. 2012).  To the extent the claims that are the subject of this

21  motion relate to affirmative misrepresentations, they all require that a plaintiff either relied on a

22  specific misrepresentation or that they suffered economic harm caused by a specific

23  misrepresentation—often both.[6]  But Plaintiffs do not plead those facts.  Instead, they make vague

and "safe").

[6] **(AZ)** *Hamilton v. TBC*, 328 F.R.D. 359, 379 (C.D. Cal. 2018) ("[P]laintiffs who do not actually rely on a false statement or material omission have no claim under the ACFA."); **(CA)** *Sevidal v. Target*, 189 Cal. App. 4th 905, 928 (2010) ("Reliance is an essential element of a fraudulent concealment claim."); *Backhaut v. Apple*, 74 F. Supp. 3d 1033, 1048 (N.D. Cal. 2014) (UCL); *In re Tobacco II*, 207 P.3d 20, 25 (Cal. 2009) (UCL); **(FL)** *Irwin v. Miami-Dade Cty.*, 2009 WL 465066, at *9 (S.D. Fla. 2009) (fraudulent concealment requires reliance); **(IL)** 815 ILCS 505/10a(a); *Connick v. Suzuki*, 675 N.E.2d 584, 595 (Ill. 1996) (ICFA requires proximate

APPLE'S 2ND MOT. TO DISMISS FAC
CASE NO. 5:18-cv-07196-LHK

1    allegations that they "relied" on *unspecified* Apple statements about the clarity of Apple's screens

2    or the quality of the computers.  (FAC ¶¶ 9, 24, 29, 39, 44, 59, 64, 75.)  Plaintiffs never identify

3    when or where they saw those statements or exactly what those statements said.  And for some

4    statements (e.g., Apple's disclosures about dust), Plaintiffs do not allege they saw them *at all*,

5    much less that they relied on them or were deceived by them.  (*Id.*)  Thus, as pled, Plaintiffs'

6    misrepresentation claims all fail under Rule 9.  *See Kearns*, 567 F.3d at 1124, 1126-27.

7          **B.**      **No Actionable "Omission"**

8               1.    **Apple Disclosed the Risk of iMac Screen "Smudges"**

9          Apple disclosed that airborne dust or smoke "can enter the ventilation openings of your

10   iMac and, under certain conditions, result in a slight haze on the inside surface of the glass panel

11   that covers the iMac display."  (FAC ¶ 91.)  That disclosure is fundamentally inconsistent with

12   Plaintiffs' "omissions" claims.  (*E.g.*, *id.* ¶ 130.)  *See Marcus v. Apple*, 2015 WL 1743381, at *1-

13   2 (N.D. Cal. 2015) (overheating disclosed in user guides); *Baird v. Samsung*, 2018 WL 4191542,

14   at *7 (N.D. Cal. 2018) (risk disclosed in TV user manuals).[7]

15              2.    **Plaintiffs Do Not Explain What More Apple Should Have Disclosed**

16         Although Plaintiffs apparently claim additional or different disclosures should have been

17   made, they never explain what else Apple should disclose or where those additional disclosures

18   should have appeared.  Under Ninth Circuit law, in order to satisfy Rule 9(b), a plaintiff must

19   "describe the content of the omission."  *Stewart v. Electrolux*, 304 F. Supp. 3d 894, 907 (E.D.

20   Cal. 2018); *see also Hauck*, 2019 WL 1493356, at *11; *Kearns*, 567 F.3d at 1126-27; *Davidson*,

21   2017 WL 976048, at *9.  Here, Plaintiffs do not plead with the specificity required by Rule 9(b)

22   

23   causation); **(NH)** N.H. Rev. Stat. § 38-A:10 ("injured by" deceptive act); **(NM)** N.M. Stat. § 57-12-10(B) (injury "as a result of" unlawful practice); **(NC)** *Darne v. Ford*, 2015 WL 9259455, at

24   *12 (N.D. Ill. 2015) (NCUDTPA requires reliance); **(OR)** *Pearson v. Philip Morris*, 361 P.3d 3, 27 (Or. 2015) (misrepresentation requires reliance); **(PA)** *Gaines v. Krawczyk*, 354 F. Supp. 2d

25   573, 585 (W.D. Pa. 2004) (fraudulent non-disclosure requires "justifiable reliance").

26   [7] The common-sense conclusion that *disclosed* information cannot constitute an "omission" arises frequently in fraud cases related to securities. *See, e.g.*, *Bhatt v. Tech Data Corp.*, 2018 WL 6504375, at *5 (M.D. Fla. 2018) ("Plaintiff cannot premise its omission claims on risks that were

27   disclosed."); *Silverman v. Motorola, Inc.*, 2008 WL 4360648, at *9 (N.D. Ill. 2008) ("Where the facts and circumstances allegedly omitted or represented have actually been disclosed ...[,] there

28   will be no liability[.]") (citation omitted).

APPLE'S 2ND MOT. TO DISMISS FAC
CASE NO. 5:18-cv-07196-LHK

1 because they fail to allege precisely what Apple "omitted," where that disclosure should have

2 been made, and why they would have seen it. *See Hindsman v. Gen. Motors*, 2018 WL 2463113,

3 at *13 (N.D. Cal. 2018).

4       The screen "smudge" risk the "Filter Defect" supposedly created is *exactly* the risk Apple

5 disclosed in its user guide, which is publicly available on Apple's website. (*See* FAC ¶ 91.)  If

6 Plaintiffs contend that Apple should have disclosed other risks or used different language, they

7 must identify what specific disclosures Apple should have made. *See Davidson*, 2017 WL

8 976048, at *9.  Since they did not, their claims must be dismissed. *See Marcus*, 2015 WL

9 1743381, at *1-2 (rejecting omissions claim when risk disclosed in public user guide); *Baird*,

10 2018 WL 4191542, at *7 (same).

11       Plaintiffs also failed to plead that they would have seen updated disclosures if Apple had

12 made them.  Plaintiffs allege that prior to their purchases, they reviewed various third-party

13 websites or Apple's own website. (*See* FAC ¶¶ 15, 25, 30, 40, 45, 48, 61, 65, 72, 76.)  But no

14 Plaintiff pleads that he or she saw Apple's *actual* dust disclosures in the user guide.  Thus, even if

15 Apple had added additional language to its existing disclosures, Plaintiffs' allegations do not

16 show that they would have seen it.  In short, Plaintiffs' "omissions" claims fail for lack of

17 specificity under Rule 9(b).

18
19           3.    **Plaintiffs Do Not Plead Apple Had Knowledge of Issues with the Logic Board or MacBook Screen "Smudging"**

20       To the extent Plaintiffs base their claims on alleged dust-related logic board issues or on

21 MacBook screen "smudging," Plaintiffs do not plead any facts to show Apple knew about these

22 issues at the time they bought their devices. *Williams v. Yamaha*, 851 F.3d 1015, 1025 (9th Cir.

23 2017) ("[A] party must allege ... the manufacturer knew of the defect at the time a sale was

24 made."); *Wilson*, 668 F.3d at 1145 n.5 (failing to disclose "a defect of which [a manufacturer] is

25 not aware, does not constitute an unfair or fraudulent practice").[8]

26 ---
[8] **(FL)** *Drilling Consultants v. First Montauk Sec.*, 806 F. Supp. 2d 1228, 1236 (M.D. Fla. 2011)
27 (fraud requires knowledge); **(IL)** *Rockford Mem'l Hosp. v. Havrilesko*, 858 N.E.2d 56, 62 (Ill.
App. Ct. 2006) ("[F]or a material omission to be actionable, the plaintiff must establish that the
28 fact concealed was known to the defendant at the time of the concealment."); **(NM)** *Lohman v. Daimler–Chrysler*, 166 P.3d 1091, 1093 (N.M. Ct. App. 2007) (UPA claim requires a deceptive

First, Plaintiffs fail to show how Apple "knew" of alleged dust-related logic-board crashes. The only thing Plaintiffs cite to show Apple's "knowledge" is a July 2018 article about maintaining the "motherboard of desktop computers" that neither mentions Apple nor suggests its products suffer from specific dust-related problems. (FAC ¶ 87 & n.21.) Plaintiffs also cite online complaints starting in 2016 (*id.* ¶ 88), but they relate exclusively to smudges, not to other performance issues. These complaints cannot possibly have put Apple on notice of problems they did not mention. *See, e.g.*, *Sciacca*, 362 F. Supp. 3d at 800 (online complaints insufficient because they do not identify the alleged defect). Moreover, if those online complaints had mentioned logic-board issues (they do not), that smattering of online discussion is too limited to establish Apple's knowledge of any sort of "defect." *See, e.g.*, *Grodzitsky v. Am. Honda*, 2013 WL 690822, at *6-7 (C.D. Cal. 2013).

Second, with respect to smudging on MacBook screens (as opposed to iMac screens), Plaintiffs' allegations about Apple's "knowledge" of that "risk" are nearly non-existent. The *only* facts Plaintiffs plead are Plaintiff Porter's description of his own issues (FAC ¶¶ 74-77) and an unrelated quote from a MacBook Pro ad ("optimizes both performance and portability"). (*Id.* ¶ 95.) Beyond that, Plaintiffs present *zero* factual allegations that MacBooks suffer from the same "defect" as iMacs, that any customer other than Porter experienced smudges, or that Apple "knew" of any "defect" in MacBooks. *See Wilson*, 668 F.3d at 1145 ("Plaintiffs must allege [defendant's] knowledge of a defect to succeed on their claims of deceptive practices and fraud.").

### 4.   No Duty to Disclose

Finally, no Plaintiff pleads facts to show that Apple had any duty to disclose anything beyond the disclosures in its user guide. There are multiple tests that different courts use to evaluate whether a party had a duty to disclose, but Plaintiffs' allegations fail under each test.

Under long-standing California law, when a product functions properly throughout the

---

act that was "knowingly made"); **(PA)** *Belmont v. MB Inv. Partners*, 708 F.3d 470, 498 (3d Cir. 2013) (Pennsylvania Unfair Trade Practices and Consumer Protection Act requires knowledge); *Viguers v. Philip Morris*, 837 A.2d 534, 540 (Pa. Super. Ct. 2003) (omission requires intentional concealment, which implies knowledge).

1   manufacturer's warranty—as it did for both Plaintiffs from California (FAC ¶¶ 37, 58)—"[a]

2   manufacturer's duty to consumers is limited to its warranty obligations absent either an

3   affirmative misrepresentation or a safety issue." *Wilson*, 668 F.3d at 1141; *Daugherty v. Am.*

4   *Honda*, 144 Cal. App. 4th 824, 830 (2006); *Hoey v. Sony*, 515 F. Supp. 2d 1099, 1105 (N.D. Cal.

5   2007) ("[N]o authority [] provides that the mere sale of a consumer electronics product in

6   California can create a duty to disclose any defect that may occur during the useful life of the

7   product."). *Wilson* is settled law in the Ninth Circuit where the product functions properly

8   throughout the manufacturer's warranty. *See In re Apple Inc. Device Performance Litig.*, 2019

9   WL 1979915, at *15 (N.D. Cal. 2019) ("California law is clear that its consumer fraud statutes

10  cannot be used to extend a product's warrant."). Plaintiffs do not plead Apple made any

11  "affirmative misrepresentation" or that any "safety issues" exist. And courts have repeatedly

12  rejected attempts to impose liability on manufacturers for allegedly failing to disclose even

13  "known" risks that products might malfunction after the warranty has expired. *See Wilson*, 668

14  F.3d at 1141; *Hodges v. Apple Inc.*, 2013 WL 6698762, at *8 (N.D. Cal. 2013) (same);

15  *Oestreicher*, 544 F. Supp. 2d at 969 (same); *Hoey*, 515 F. Supp. 2d at 1105; *Long v. Hewlett-*

16  *Packard Co.*, 2007 WL 2994812, at *8 (N.D. Cal. 2007) ("Absent a manufacturer representation

17  as to the life span of the part in question, ... the only expectation that a purchaser could have had

18  was that the product would function properly for the duration of the manufacturer's express

19  warranty.").

20      The Ninth Circuit recently discussed *Wilson* but declined to either "rely[] on or

21  overrul[e]" its holding—and did not mention (much less overrule) the conclusion in *Wilson* that

22  manufacturers have no duty to disclose the risk that products might malfunction after the

23  warranty expires.. *See Hodsdon v. Mars, Inc.*, 891 F.3d 857 (9th Cir. 2018). Instead, the court

24  noted that manufacturers may, under some circumstances, have a duty to disclose defects that

25  "concern[ ] a central function" of the product and render the device "incapable of use by any

26  consumer." *Id.* at 862-63; *see also Dang*, 2018 WL 6308738, at *7 (similar). But Plaintiffs'

27  allegations here do not show that the alleged defect affects the "central function" of the computers

28  such that they are "incapable of use by any consumer." *Hodsdon*, 891 F.3d at 864 (rejecting

1   argument that "subjective preferences" are sufficient to give rise to a duty to disclose).  Instead,

2   Plaintiffs Gonzalez and Vance (the only California plaintiffs) allege only that they experienced

3   "smudges" in the corners of their screens.  Plaintiffs do not allege they were forced to stop using

4   their computers due to those smudges or that the issues they experienced had a dramatic impact

5   on their use of the devices.

6        Next, even if Apple had not lived up to its warranty obligations (it did) and the alleged

7   defect concerned a "central function" and rendered the computers "incapable of use" (it does not),

8   Plaintiffs' omissions claims would still fail under the laws of any state at issue because Plaintiffs

9   fail to plead facts that could justify a "duty to disclose" under any other possible theory—

10  regardless of when the defect manifested.  *See Falk*, 496 F. Supp. 2d at 1095.  In general, a duty

11  to disclose arises only under special circumstances.  *See, e.g.*, Restatement (Second) of Torts §

12  551(2); *see also, e.g.*, *Falk*, 496 F. Supp. 2d at 1095.[9]  Here, Plaintiffs contend Apple had a duty

13  because it (a) "possessed exclusive knowledge regarding the Filter Defect," (b) "intentionally

14  concealed" those facts, and (c) "made incomplete representations regarding the Computers'

15  performance and longevity, while purposefully withholding material facts."  (*E.g.*, FAC ¶ 132.)

16  But under the laws of the states at issue on this motion, Plaintiffs fail to plead facts to show a duty

17  under any of those theories.

18                    a.    **No Exclusive Knowledge**

19        California, Florida, New Mexico, and North Carolina each recognize a duty to disclose in

20  certain circumstances based on a seller's "exclusive knowledge."[10]  But to show such a duty, a

---

[9] Some courts have held that Illinois and New Mexico consumer protection laws do not
necessarily require a duty of disclosure.  *See Muehlbauer v. Gen. Motors*, 431 F. Supp. 2d 847,
868 (N.D. Ill. 2006) (ICFA); *Salmeron v. Highlands Ford Sales, Inc.*, 271 F. Supp. 2d 1314, 1318
(D.N.M. 2003) (NMUPA).  That said, Plaintiffs' "omissions" claims under those laws fail for the
reasons discussed above—i.e., Apple actually disclosed the risk of smudging, Plaintiffs never
identify what else should have been disclosed, and plead no facts to show that Apple "knew"
about risks other than smudging on iMac screens.  *Rockford*, 858 N.E.2d at 62 (ICFA omissions).

[10] *See, e.g.*, **(FL)** *XP Glob., Inc. v. AVM, L.P.*, 2016 WL 6679427, at *4 (S.D. Fla. 2016) ("fraud
is where one party having superior knowledge intentionally fails to disclose a material fact")
(citation omitted); **(NM)** *Salmeron*, 271 F. Supp. 2d at 1319 (duty can exist under certain
circumstances when "a party 'has superior knowledge that is not within the reach of the other
party'") (citation omitted); **(NC)** *McKee v. James*, 2013 WL 3893430, at *8 (N.C. Super. 2013)
("A duty to speak may arise … where one party has knowledge of a latent defect ... [of] which the
other party is both ignorant and unable to discover through reasonable diligence.").

APPLE'S 2ND MOT. TO DISMISS FAC
CASE NO. 5:18-cv-07196-LHK

1    plaintiff must offer "specific substantiating facts" that the defendant has "exclusive

2    knowledge"—not merely that the defendant has a better understanding of the product.  *See*

3    *Sanders v. Apple*, 672 F. Supp. 2d 978, 986 (N.D. Cal. 2009).  In *Sanders*, for example, the

4    plaintiff alleged Apple had exclusive knowledge "that its 20-inch Aluminum iMac was designed

5    with an inferior display, and that Apple was in a superior position of knowledge with regard to its

6    own technology."  *Id.*  The district court rejected this contention as too conclusory, explaining

7    that similar allegations "could be made about any alleged design defect in any manufactured

8    product."  *Id.*  (quoting *Oestreicher*, 544 F. Supp. 2d at 974).  Rather, "exclusive" knowledge

9    requires that consumers be unable to discover the allegedly omitted information.[11]  Here, Apple

10   *disclosed* the risk that dust might cause "smudges" (FAC ¶ 91), so this "knowledge" was not

11   exclusive.  And Plaintiffs have not pled facts to show that Apple had "knowledge"—exclusive or

12   otherwise—of the other alleged issues.

13                          b.    **No Intentional Concealment**

14           At least six states recognize a duty can exist where the facts show "intentional" or "active

15   concealment."[12]  But as multiple courts have made clear, "mere nondisclosure does not constitute

16   active concealment"; instead, a plaintiff must allege "specific affirmative acts" that the defendant

17   took to hide material facts.  *Herron*, 924 F. Supp. 2d at 1176; *Expedite v. Plus, Bags, Cars &*

18   *Serv.*, 2012 WL 3597427, at *6 (D. Or. 2012) (defendant must "remove an opportunity that might

19

---

20   [11] *See* **(FL)** *XP Glob.*, 2016 WL 6679427, at *4 (omitted information must be "not discoverable
     by ordinary observation") (citation omitted); **(NM)** *Salmeron*, 271 F. Supp. 2d at 1319 (omitted

21   information must be "not within the reach of the other party or could not have been discovered by
     the exercise of reasonable diligence") (citation omitted); **(NC)** *McKee*, 2013 WL 3893430, at *8

22   (the other party must be "unable to discover [the omitted information] through reasonable
     diligence.").

23   [12] **(AZ)** *Lerner v. DMB Realty*, 234 Ariz. 397, 322 P.3d 909, 916 (2014) ("Unlike simple

24   nondisclosure, a party may be liable for acts taken to conceal, mislead or otherwise deceive.");
     **(CA)** *Herron v. Best Buy*, 924 F. Supp. 2d 1161, 1176 (E.D. Cal. 2013) ("specific 'affirmative
     acts on the part of the [D]efendants in hiding, concealing or covering up the matters'") (citation

25   omitted); **(FL)** *Taylor v. Am. Honda*, 555 F. Supp. 59, 64 (M.D. Fla. 1982) ("mere non-disclosure
     of material facts in an arm's length transaction is ordinarily not actionable misrepresentation

26   unless some artifice or trick has been employed"); **(IL)** *Henderson Square v. LAB Townhomes*, 16
     N.E.3d 197, 216 (Ill. App. 2014); **(NC)** *McKee*, 2013 WL 3893430, at *8 ("affirmative steps to

27   conceal material facts"); **(OR)** *Unigestion v. UPM Tech.*, 160 F. Supp. 3d 1214, 1223-24 (D. Or.
     2016) ("actual concealment, as opposed to simple nondisclosure"); **(PA)** *Elbeco v. Nat'l Ret.*

28   *Fund*, 128 F. Supp. 3d 849, 859 n.6 (E.D. Pa. 2015) ("active concealment").

APPLE'S 2ND MOT. TO DISMISS FAC
                                        CASE NO. 5:18-cv-07196-LHK

1    otherwise have led to the discovery of a material fact") (citation omitted).  But, again, there are no

2    allegations Apple took such actions.  Apple warned consumers about dust, smudges were publicly

3    discussed on Apple message boards (FAC ¶¶ 88, 91), and Plaintiffs do not plead Apple was even

4    aware of, much less concealed, any other dust-related issue.  *See, e.g.*, *Williams*, 851 F.3d at 1025

5    (knowledge required for omissions claim).

6                            c.    **No Partial Misrepresentation**

7            All states recognize a duty to disclose when a party makes a partial representation that is

8    misleading,[13] and here Plaintiffs contend Apple "made incomplete representations about the

9    Computers' performance and longevity" while withholding information about dust.  (*E.g.*, FAC

10   ¶ 132.)  But the "representations" about "performance and longevity" Plaintiffs cite are too

11   generalized to be actionable—and they are true in any event.  (*See supra* Part A.1.)  For example,

12   Plaintiffs contend that statements that computers were designed to "meet [Apple's] performance

13   and durability standards" (FAC ¶ 29) were misleading, but they do not explain why those

14   statements are incomplete.  *See Oestreicher*, 544 F. Supp. 2d at 973 (non-actionable statements

15   are not partial representations); *Apodaca v. Whirlpool*, 2013 WL 6477821, at *8 (C.D. Cal. 2013)

16   ("'partial representations' that refer to the reliability and durability representations" were "too

17   general for Defendant to incur a duty to disclose").  To the extent Plaintiffs contend that Apple's

18   existing dust disclosure was "incomplete," they do not explain what *other* information Apple

19   must provide, and do not plead that they saw the existing disclosure, much less that they believed

20   it was proper to use their computers in dusty environments so long as the dust was not

21   "significant."  *E.g.*, *Davidson*, 2017 WL 976048, at *9; *Pirozzi*, 913 F. Supp. 2d at 850.

22                        5.    **No Basis for Alternative Expectation About Dust**

23           Plaintiffs' omissions claims also fail for a more fundamental reason: they do not plead that

24   _____

25   [13] **(AZ)** *Gould v. M & I Marshall*, 860 F. Supp. 2d 985, 989 (D. Ariz. 2012); **(FL)** *Taylor, Bean & Whitaker Mortg. v. GMAC*, 2008 WL 3200286, at *3 (M.D. Fla. 2008); **(IL)** *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 414 (S.D.N.Y.), *modified on reconsideration*,

26   2017 WL 3443623 (S.D.N.Y. 2017); **(NH)** *Invest Almaz v. Temple-Inland Forest Prods.*, 243 F.3d 57, 77 (1st Cir. 2001); **(NM)** *Grassie v. Roswell Hosp.*, 258 P.3d 1075, 1094-95 (N.M. Ct.

27   App. 2010); **(NC)** *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 196 (M.D.N.C. 1997); **(OR)** *Unigestion*, 160 F. Supp. 3d at 1223; **(PA)** *Aetna v. Health Diagnostic Lab*, 2015 WL

28   9460072, at *5 (E.D. Pa. 2015).

1   they had any expectation or understanding about the risks of dust or their computers' ability to

2   resist dust when they made their purchases.  "In order to be deceived, members of the public must

3   have had an expectation or an assumption" about the matter in question, such that the omitted

4   information was material.  *Punian v. Gillette*, 2016 WL 1029607, at *15 (N.D. Cal. 2016)

5   (Koh, J.) (citation omitted)); *Spector v. Mondelez*, 178 F. Supp. 3d 657, 672 (N.D. Ill. 2016) ("an

6   omission is not actionable as fraud if it gives rise to 'an incomplete' as opposed to an

7   affirmatively 'false impression'").[14]  But Plaintiffs plead no facts for any "expectation" about the

8   effect of dust on their computers.  Apple never promised its computers would be impermeable to

9   dust, and the *only* statements about dust Plaintiffs identify are Apple's *warnings*.  (FAC ¶ 91.)

10  The fact that Apple provides warranty service clearly communicates what all reasonable

11  consumers know: Computers sometimes need to be repaired.  *See, e.g.*, *Hoey*, 515 F. Supp. 2d at

12  1104 ("Nothing in the warranty expressly or impliedly warrants that the computer will be defect-

13  free either during the warranty period or thereafter."); *Cosman v. Ford*, 674 N.E.2d 61, 68 (Ill.

14  App. Ct. 1996) ("A promise to repair is simply not a promise of performance" and, in fact,

15  suggests that issues *could* arise.).  Without a more specific basis for their apparent expectations

16  about computers' resistance to dust, the only reasonable "expectation" is that if an issue

17  developed, Apple would repair it under warranty—which is precisely what Apple did.  *See*

18  *Berenblat v. Apple*, 2010 WL 1460297, at *9 (N.D. Cal. 2010).

19      **C.**    <u>**Certain State Fraud-Based Claims Fail**</u>

20          1.    **Economic Loss Doctrine Bars Florida and Pennsylvania Common-Law**

21                  **Fraud Claim**

22        Plaintiff Porter's and Plaintiff Kresnevich's fraudulent concealment claims fail because

23  they are barred by the economic loss rule.  Florida law prevents fraud-based claims predicated on

---

24  [14] All states at issue in this motion require omitted information to be material in order to be the
    basis of an omissions claim.  **(AZ)** *Hamilton*, 328 F.R.D. at 379; *Universal Inv. v. Sahara Motor*

25  *Inn*, 619 P.2d 485, 486-87 (Ariz. Ct. App. 1980); **(FL)** *Taylor*, 555 F. Supp. at 64; **(IL)** *Sadler v.*
    *Pella*, 146 F. Supp. 3d 734 (D.S.C. 2015); **(NH)** *Kalik v. Abacus Exch.*, 2001 WL 1326581, at *9

26  (D.N.H. 2001); *Dolan v. SunGard*, 2007 WL 4287722, at *2 (D.N.H. 2007); **(NM)** *R.A. Peck v.*
    *Liberty Fed.*, 766 P.2d 928, 932 (N.M. Ct. App. 1988); **(NC)** *Wilson v. Dryvit Sys.*, 206 F. Supp.

27  2d 749, 756 (E.D.N.C. 2002); **(OR)** *Diep v. Durst-Pro-USA*, 2006 WL 1788175, at *5 (D. Or.
    2006); **(PA)** *Slippery Rock Area Sch. Dist. v. Tremco*, 2016 WL 3198122, at *8 (W.D. Pa. 2016);

28  *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 548 (D.N.J. 2004).

1    purely economic loss where, as here, the same alleged conduct underlies warranty claims. *See*

2    *Tiara Condo. Ass'n v. Marsh & McLennan*, 110 So. 3d 399, 403-08 (Fla. 2013) ("The products

3    liability economic loss rule developed to protect manufacturers from liability for economic

4    damages caused by a defective product beyond those damages provided by warranty law.");

5    *Vazquez v. Gen. Motors*, 2018 WL 447644, at *6 (S.D. Fla. 2018) ("Fraudulent concealment

6    claims in the products liability sphere that seek to recover only economic damages are clearly

7    barred by Florida's economic loss rule.").[15]  So, too, does Pennsylvania—as this court recently

8    held. *See Davidson v. Apple, Inc.*, 2017 WL 3149305, at *17 (N.D. Cal. 2017) (Koh, J.)

9    (dismissing Pennsylvania common-law fraud claim under the economic loss doctrine); *see also*

10   *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 681 (3d Cir. 2002) (affirming dismissal of

11   fraudulent concealment claims under the economic loss doctrine); *Rosenfield v. Frank*, 2019 WL

12   2355588, at *6–7 (M.D. Pa. 2019) (dismissing fraudulent concealment claim because "[t]he

13   economic loss doctrine applies to transactions involving ordinary consumers, not just those

14   between sophisticated commercial entities. … It applies to intentional fraud claims.").[16]  That is

15   exactly what Plaintiffs Porter and Kresnevich claim: that they did not receive the full benefit of

16   their bargains because Apple (in their view) did not comply with its warranty obligations.

17          The fact that plaintiffs have since dropped their warranty claims does not affect this

18   analysis. *See Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1198 (S.D. Fla. 2017) (finding no

---

[15] *See also Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1225 (S.D. Fla. 2017); *In re Takata Airbag Prods. Liab. Litig.*, 193 F. Supp. 3d 1324, 1339 (S.D. Fla. 2016) (dismissing a fraudulent concealment claim that "allege[s] precisely what a breach of warranty claim would allege— namely that the [] vehicles did not work as promised"); *Burns v. Winnebago Indus., Inc.*, 2013 WL 4437246, at *4 (M.D. Fla. 2013) (holding that fraudulent concealment claim for an automotive defect was barred under the economic loss rule, and rejecting an argument that an exception for fraudulent inducement applied to the product liability context); *In re Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *27–28 (S.D.N.Y. 2016) ("[Florida] tort claims that overlap with the subject matter of a breach of warranty claim are barred by the economic loss rule because they do not arise independently from the sale of the product[.] ... [T]he only viable basis for [plaintiff's] fraud claim is that New GM failed to disclose a known defect in her car at the time of purchase.  That claim falls squarely within the domain of products liability, and is therefore barred by Florida's economic loss rule.").

[16] *See also Gusdorff v. MNR Indus., LLC*, 2018 WL 3328021, at *6 (E.D. Pa. 2018) (applying "the economic loss doctrine as provided in *Werwinski*" and finding common-law claim "for fraud is barred by the economic loss doctrine"); *Sabol v. Ford Motor Co.*, 2015 WL 4378504, at *7 (E.D. Pa. 2015) (holding that fraudulent concealment claim that "relate[s] to the quality or character" of the product purchased is barred by the economic loss doctrine).

1    "case law that makes the application of the economic loss rule contingent on the viability of a

2    plaintiff's warranty claims"); *Rosenfield*, 2019 WL 2355588, at *7 (barring fraudulent

3    concealment claim under economic loss rule "even if the plaintiff has failed to plead an

4    alternative contract or warranty cause of action, as is the case here").  Accordingly, Plaintiffs

5    Porter and Kresnevich's fraudulent concealment claims fail as a matter of law.

6                          2.    **No Separate "Unfair" or "Unlawful" Conduct**

7              To the extent that Plaintiffs' consumer protection claims include "unlawful" or "unfair"

8    claims, Plaintiffs have pled no separate facts to substantiate those claims.  Where the "unfair"

9    conduct "overlap[s] entirely" with the conduct alleged to constitute "fraud," then the "unfair"

10   claim fails if the fraud claims fail.  *See Hauck*, 2019 WL 1493356, at *15 (rejecting unfair claim

11   that "overlap[s] entirely with plaintiffs' claims of fraud").[17]  Plaintiffs did not plead "unfair"

12   conduct other than "deceit"; their claims are based on supposed "omissions" and

13   "misrepresentations"—not on separate allegations about "unfair" conduct.  (*See, e.g.*, FAC ¶¶

14   260-66, 294-99, 362-68, 479-84.)  In addition, absent an underlying legal violation (none is pled),

15   Plaintiffs have no claim under the unlawful prong of a consumer protection statute.  *See*

16   *Daugherty*, 144 Cal. App. 4th at 837-38.

17   **V.    SEVERAL PLAINTIFFS' CLAIMS ARE UNTIMELY**

18             In addition to the substantive deficiencies described below, Plaintiff Evans' New Mexico

19   consumer fraud claim, Plaintiff Ahern's Arizona consumer fraud claim, and Plaintiff

20   Kresnevich's Pennsylvania fraudulent concealment claim all fail on statute of limitations grounds.

21   Each Plaintiff was aware of their dust-related problems, but filed suit well after their respective

22   statute of limitations period expired.

23   •  Evans bought his iMac in March 2011 and noticed dust-related problems by 2013.  (FAC

24            ¶ 22.)  New Mexico Unfair Trade Practices Act claims have a four-year statute of

25            limitations.  N.M. Stat. Ann. § 37-1-4; *"O" Co. v. Osteotech, Inc.*, 2002 WL 35649660, at

26            *3 (D.N.M. 2002) ("Unfair Trade Practices Act [claims] are also governed by a four year

27   _____
     [17] *See also, e.g.*, **(NH)** *Kalik*, 2001 WL 1326581, at *9 (when defendants did not breach a contract

28   or make actionable misrepresentations or omissions, "they cannot be said to have engaged in
     actionable 'unfair' or 'deceptive' trade practices.").

statute of limitations").  Because Evans waited five years before filing suit, his claim was brought a year too late.

- Ahern bought her iMac in June 2015 and noticed problems by March 2016.  (FAC ¶¶ 9-10.)  In Arizona, consumer fraud claims must be filed "within one year after the cause of action accrues."  *Steinberger v. McVey*, 318 P.3d 419, 436 (Ariz. Ct. App. 2014).  Because Ahern waited two years and eight months before filing suit, her claim was filed a year and eight months too late.

- Kresnevich bought his iMac in August 2013 and noticed dust-related problems by August 2015.  (FAC ¶ 42.)  His fraud claims are subject to a two-year statute of limitations.  40 Pa. Cons. Stat. § 5524(7); *Ash v. Cont'l Ins.*, 932 A.2d 877, 879 (Pa. 2007).  Because Kresnevich waited three and a half years before filing suit, his claim was filed a year and a half too late.

While each state allows for tolling under the discovery rule, this only delays accrual until "the defrauded party discovers or with reasonable diligence could have discovered the fraud." *Bergdale v. Countrywide*, 2014 WL 2885473, at *4 (D. Ariz. 2014) (Arizona); *Elm Ridge Expl. Co. v. Engle*, 721 F.3d 1199, 1210 (10th Cir. 2013) (New Mexico); *Toy v. Metro. Life Ins.*, 928 A.2d 186, 202 (Pa. 2007) (Pennsylvania).  Here, each of the three plaintiffs actually discovered that there were "smudges" caused by dust on the inside of their computer screens between 2011 and 2015, as described above, and their respective limitations periods to investigate and bring a claim have expired.

## VI.    COMPUTERS PLAINTIFFS DID NOT PURCHASE

Finally, Plaintiffs assert claims over products they never purchased and that are different from the products they did purchase.  Plaintiffs purport to sue over all iMac and MacBook computers sold in the past *twenty years*.  But in the Ninth Circuit, Plaintiffs have standing to bring claims over products they did not buy *only* if they plead facts to show those products are "substantially similar" to products they bought.  *E.g.*, *Bruton v. Gerber Prods.*, 2014 WL 172111, at *8 (N.D. Cal. 2014) (granting motion to dismiss claims for certain unpurchased products where plaintiff "failed to explain how these categories of products are substantially similar in kind to the

Purchased Products"); *Wilson*, 961 F. Supp. 2d at 1141 (plaintiffs listed other products but "failed to allege substantial similarity").  And here, Plaintiffs plead no facts to show that the many generations of iMac desktops and MacBook portable computers at issue have anything close to "substantially similar" designs with respect to the air-vent issues asserted in the case.  *See, e.g.*, *Sciacca*, 2019 WL 331280, at *8 (alleged defect in the Apple Watch does not relate to subsequent "distinct" generations of device).  Indeed, Plaintiffs could not possibly make such a showing.

First, Plaintiffs allege that "fans suck in dirt and debris that get stuck behind the screen" (FAC ¶ 2), potentially leading to "smudging."  But this is not so for MacBooks, whose screens are housed in an enclosure with no vents or fans, separate from the enclosures holding the logic board and keyboard.  (*Compare, e.g.*, video cited in FAC ¶ 95 n.42 ("The New MacBook Pro – Design, Performance and Features – Apple" (published Oct. 27, 2016) (Apple video showing MacBook Pro cooling fans within the keyboard/logic board enclosure, not the separate screen enclosure)) *with id.* ¶ 85 (photograph of a "typical iMac" with the logic board behind the screen).) Plaintiffs do not and cannot explain how dust drawn in through vents in the logic board enclosure could enter the ventless screen enclosure on a MacBook.

Second, Plaintiffs do not and cannot allege that all generations of iMacs are "substantially similar."  The iMac was first released in 1998, and its shape, components, performance, and vent design have substantially evolved over the past twenty years.[18]  For example, Plaintiffs allege that a supposed "temporary fix" for all iMac screen issues is demonstrated by a YouTube video (not posted by Apple) entitled "Apple iMac Glass Removal: Cleaning Behind the Glass."  (FAC ¶ 90 & n.35.)[19]  Yet even the purported "fix" in this video—which is the opinion of the poster and not endorsed by Apple—allegedly only works for "Aluminum iMacs from 2007-2012" because of changes in the iMac design.  (*Id.*)  In short, Plaintiffs have not met their burden to plead how all those other computers are substantially similar to the computers they bought.  *See Bruton*, 2014 WL 172111, at *8; *Kane v. Chobani, Inc.*, 2013 WL 5289253, at *11 (N.D. Cal. 2013) (Koh, J.)

---

[18] If this case were to proceed beyond the pleadings, Apple expects that it will likely introduce robust evidence on iMac model variations.

[19] DetroitBORG, *Apple iMac Glass Removal: Cleaning Behind the Glass*, YouTube (Aug. 23, 2011), https://www.youtube.com/watch?v=ONCdGHe0Uxs.

("Plaintiffs do not allege facts sufficient to show that the products Plaintiffs did not purchase are 'substantially similar' to those that they did.").  Accordingly, the Court should dismiss claims over all product models other than the specific models these Plaintiffs personally bought.

## VII.   CONCLUSION

Apple respectfully requests that the Court dismiss the ten selected claims from the FAC at issue in this motion with prejudice.

Dated:   August 2, 2019

MATTHEW D. POWERS
O'MELVENY & MYERS LLP

By: /s/ Matthew D. Powers
Matthew D. Powers

Attorneys for Defendant
APPLE INC.

APPLE'S 2ND MOT. TO DISMISS FAC
CASE NO. 5:18-cv-07196-LHK