UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

KIM AHERN, et al.,

        Plaintiffs,

   v.

APPLE INC.,

        Defendant.

Case No. 18-CV-07196-LHK

**ORDER GRANTING MOTION TO DISMISS IN PART WITH PREJUDICE AND IN PART WITH LEAVE TO AMEND**

Re: Dkt. No. 48

Plaintiffs bring this putative class action against Defendant Apple Inc. ("Apple") and allege common law fraud claims and violations of various state consumer fraud statutes. ECF No. 33 ("Amended Class Action Complaint" or "ACAC"). Before the Court is Apple's motion to dismiss.[1] ECF No. 48. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS Apple's motion to dismiss. The Court GRANTS the motion to dismiss Plaintiffs' Pennsylvania fraudulent concealment claim with prejudice, and

---

[1] Apple's motion to dismiss contains a notice of motion that is separately paginated from the memorandum of points and authorities in support of the motion. *See* Mot. at 1. Civil Local Rule 7-2(b) provides that the notice of motion and points and authorities should be contained in one document with a combined limit of 25 pages. *See* Civ. Loc. R. 7-2(b).

GRANTS the motion to dismiss Plaintiffs' nine other claims with leave to amend.

## I.    BACKGROUND

### A.  Factual Background

Apple is the manufacturer of "state-of-the-art technology products," including iMac desktops and Macbook laptops (collectively, "Apple computers"). ACAC ¶¶ 1-2. According to Plaintiffs, "Apple's computers . . . contain a critical defect that had led to at least two deficiencies" in the computers. *Id.* ¶ 2. Plaintiffs allege that Apple computers utilize "fans and vents to cool them down," but that "Apple did not install any filters for the vents." *Id.* This "critical defect"—named the "Filter Defect"—allows "fans [to] suck in dirt and debris." *Id.* This results in dirt and debris "get[ting] stuck behind the screen, causing permanent dark smudging to appear in the corners of the screens." *Id.* "The second deficiency caused by the Filter Defect is the harmful effect of dust on the 'motherboard' of the computer," which "causes it to overheat," "slows down the processing speed of the computer, and ultimately causes it to crash." *Id.* ¶ 3.

Plaintiffs are citizens of Arizona, California, Colorado, Florida, Illinois, Massachusetts, New Jersey, New York, North Carolina, Oregon, Pennsylvania, Texas, Utah, and Wisconsin who bought Apple computers between March 2011 and April 2018. ACAC ¶¶ 9, 17, 22, 27, 32, 37, 42, 47, 50, 54, 58, 63, 67, 71, 74, and 78. Plaintiffs plead that "Apple promotes and advertises its products" "based on their reliability, durability, and longevity." *Id.* ¶ 93. According to Plaintiffs, Apple claimed that its computer screens were "clear and remarkably vivid" (*id.* ¶¶ 59, 64) and of the "highest quality" (*id.* ¶ 75); that Apple's computer displays were "the most advanced, most brilliant desktop display[s] [Apple] ever built" (*id.* ¶ 93); that "everything is designed to work just the way you expect it to" (*id.*); and that Apple products underwent "rigorous testing methods that simulated customers' experiences" (*id.* ¶ 94). Plaintiffs allege that they relied on these advertisements when purchasing Apple computers. *See, e.g., id.* ¶¶ 56, 74, 89, 101.

Plaintiffs also claim that Apple knew about the Filter Defect and the resulting screen "smudges." As evidence, Plaintiffs point to complaints "[o]n Apple's own website," where

"Computer owners have been complaining about the dark, smudgy marks on their displays for *years*, which often appeared just after their one-year warranty expired." *Id.* ¶ 88. Plaintiffs do not allege, however, that any consumers complained about so-called motherboard issues on Apple's website or elsewhere. *Id.*

Furthermore, according to Plaintiffs, "Apple has acknowledged the Filter Defect exists" and included a "limited disclosure of the Filter Defect in user manuals." *Id.* ¶ 91. The disclosure allegedly states the following:

> Do not operate your iMac in areas with significant amounts of airborne dust, or smoke from cigarettes, cigars, ashtrays, stoves, or fireplaces, or near an ultrasonic humidifier using unfiltered tap water. Tiny airborne particles produced by smoking, cooking, burning, or using an ultrasonic humidifier with unfiltered water may, in rare instances, enter the ventilation openings of your iMac and, under certain conditions, result in a slight haze on the inside surface of the glass panel that covers the iMac display.

*Id.* Plaintiffs do not allege that they viewed this "limited disclosure" prior to purchasing their Apple computers.

**B. Procedural History**

On November 28, 2018, Plaintiffs Kim Ahern, Nikolas Frenzel, and Justin Evans filed a putative class action complaint against Apple that alleged causes of action under (1) California's Unfair Competition Law ("California UCL" or "UCL"), Cal. Bus. & Prof. Code § 17200; (2) California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750; (3) California's False Advertisement Law, Cal. Bus. & Prof. Code § 17500; (4) breach of contract; (5) fraudulent concealment; and the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301. *See* ECF No. 1.

On February 15, 2019, Plaintiffs filed the Amended Class Action Complaint ("ACAC"). ECF No. 33. The ACAC adds several named Plaintiffs and causes of action under the laws of Arizona, Colorado, Florida, Illinois, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oregon, Pennsylvania, Texas, and Utah. *See id.* In total, the FAC alleges 46 causes of action, one nationwide class, and 14 state subclasses.

On March 15, 2019, Apple filed a motion to dismiss all 46 causes of action. ECF No. 34.

United States District Court
Northern District of California

The Court determined that addressing all issues at once was unwieldy and denied Apple's motion to dismiss without prejudice. ECF No. 42 at 1-2. The Court ordered each party to select five causes of action to litigate for purposes of the instant motion to dismiss and through trial. *Id.* at 2.

The parties selected the following 10 causes of action: (1) California UCL, Cal. Bus. & Prof. Code § 17200; (2) California fraudulent concealment; (3) Arizona Consumer Fraud Act ("Arizona CFA"), Ariz. Rev. Stat. § 44- 1521, *et seq.*; (4) Florida fraudulent concealment; (5) Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA"), 815 Ill. Comp. Stat. 505/1, *et seq.*; (6) New Hampshire Consumer Protection Act ("New Hampshire CPA"), N.H. Rev. Stat. Ann. § 358-A, *et seq.*; (7) New Mexico Unfair Trade Practices Act ("New Mexico UTPA"), N.M. Stat. Ann. § 358-A:1, *et seq.*; (8) North Carolina Unfair and Deceptive Practices Acts ("North Carolina UDPA"), N.C. Gen. Stat. § 75-1.1, *et seq.*; (9) Oregon Unlawful Trade Practices Act ("Oregon UTPA"), Or. Rev. Stat. § 646.605, *et seq.*; and (10) Pennsylvania fraudulent concealment. ECF Nos. 45 and 47. Additionally, Plaintiffs voluntarily dismissed their causes of action under the Magnuson-Moss Warranty Act and all state breach of contract claims. ECF No. 46.

On August 2, 2019, Apple filed the instant motion to dismiss. ECF No. 48 ("Mot."). On August 23, Plaintiffs filed an opposition. ECF No. 49 ("Opp."). On September 4, 2019, Apple filed a reply. ECF No. 50 ("Reply").[2]

## II.    LEGAL STANDARD

### A.    Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The U.S. Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough

---

[2] Both parties' motion to dismiss briefs contained excessively long footnotes. All substantive arguments should be contained in the briefs' text and not in footnotes. The Court may strike future briefs that abuse footnotes.

facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### B. Motion to Dismiss Under Federal Rule of Civil Procedure 9(b)

Claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). Under the federal rules, a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy this standard, the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v.*

United States District Court
Northern District of California

*Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). The plaintiff must also plead facts explaining why the statement was false when it was made. *See In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1549 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.,* 927 F. Supp. 1297 (C.D. Cal. 1996).

"When an entire complaint . . . is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint . . . ." *Vess*, 317 F.3d at 1107. A motion to dismiss a complaint "under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Id.*

**C. Leave to Amend**

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

**III. DISCUSSION**

Apple's motion to dismiss challenges Plaintiffs' (1) California UCL, Cal. Bus. & Prof. Code § 17200; (2) California fraudulent concealment; (3) Arizona Consumer Fraud Act ("Arizona

CFA"), Ariz. Rev. Stat. § 44- 1521, *et seq.*; (4) Florida fraudulent concealment; (5) Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA"), 815 Ill. Comp. Stat. 505/1, *et seq.*; (6) New Hampshire Consumer Protection Act ("New Hampshire CPA"), N.H. Rev. Stat. Ann. § 358-A, *et seq.*; (7) New Mexico Unfair Trade Practices Act ("New Mexico UTPA"), N.M. Stat. Ann. § 358-A:1, *et seq.*; (8) North Carolina Unfair and Deceptive Practices Acts ("North Carolina UDPA"), N.C. Gen. Stat. § 75-1.1, *et seq.*; (9) Oregon Unlawful Trade Practices Act ("Oregon UTPA"), Or. Rev. Stat. § 646.605, *et seq.*; and (10) Pennsylvania fraudulent concealment claims.

At the outset, the Court notes that "Plaintiffs concede . . . that . . . the Pennsylvania economic loss doctrine bars Plaintiff Kresnevic's common law fraud claims." Opp. at 24. Accordingly, the Court GRANTS with prejudice Apple's motion to dismiss the Pennsylvania fraudulent concealment claim.

For the remaining nine claims, Plaintiffs allege that Apple made both affirmative misrepresentations as well as material omissions and thereby violated various state laws. Regarding their affirmative misrepresentation theory, Plaintiffs assert that Apple made false statements regarding the quality, clarity, and brilliance of its computer screens. *See* ACAC ¶¶ 59, 64, 75, 93, 94. As for the omission theory, Plaintiffs contend that Apple failed to disclose the existence of the Filter Defect to consumers. *See id.* ¶¶ 91-92. The Court begins its analysis with Plaintiffs' affirmative misrepresentation theory and then turns to Plaintiffs' omission theory.[3]

**A. Affirmative Misrepresentation Theory**

Plaintiffs allege that Apple made affirmative misrepresentations upon which Plaintiffs relied in making their decisions to purchase Apple computers. Opp. at 9. All nine state law causes of action recognize fraud claims based on affirmative misrepresentations. Nonetheless, Apple contends that Plaintiffs' affirmative misrepresentation theory fails under every state law

---

[3] Apple also argues that Plaintiffs lack standing to bring claims regarding products Plaintiffs allegedly did not purchase. Mot. at 19-21. The Court need not reach this argument because the Court dismisses all of Plaintiffs' claims on other grounds.

Case No. 18-CV-07196-LHK
ORDER GRANTING MOTION TO DISMISS IN PART WITH PREJUDICE AND IN PART WITH LEAVE TO AMEND

United States District Court
Northern District of California

claim pled here. Specifically, Apple raises three arguments in support of dismissal. First, Apple contends that the statements are "mere puffery" that cannot form the basis of a claim for misrepresentation. Second, Apple argues Plaintiffs do not adequately allege how the identified statements are false, let alone false when made. Finally, Apple asserts that Plaintiffs fail to adequately plead reliance. Because the Court finds that all the alleged affirmative misrepresentations are either non-actionable puffery or not adequately pled as false, the Court need not reach Apple's reliance argument.

### 1. Legal Standard

Fraud claims based on affirmative misrepresentations are cognizable under the California UCL, California fraudulent concealment law, the Arizona CFA, Florida fraudulent concealment law, the Illinois CFA, the New Hampshire CPA, the New Mexico UTPA, the North Carolina UDPA, and the Oregon UTPA. *See Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1075 (N.D. Cal. 2014) ("[T]he [California] UCL . . . prohibit[s] . . . affirmative misrepresentations . . . ." (citation omitted)); *In re Arizona Theranos, Inc., Litig.*, 256 F. Supp. 3d 1009, 1023 (D. Ariz. 2017), *on reconsideration in part*, 2017 WL 4337340 (D. Ariz. Sept. 29, 2017) ("Generally stated, claims under the [Arizona Consumer Fraud Act], like common law fraud claims, can be based on affirmative misrepresentations, concealment, or omission of material facts." (quotation omitted)); *Apodaca v. Whirlpool Corp.*, 2013 WL 6477821, at *12 (C.D. Cal. Nov. 8, 2013) ("To state a claim for fraudulent concealment under Florida law, a plaintiff must allege [among other things] . . . 'a misrepresentation (or omission) of a material fact . . . .'" (quoting *Maison v. Ford Motor Co.*, 2005 WL 1684159, at *1 (N.D. Fla. July 7, 2005)); *Spector v. Mondelez Int'l, Inc.*, 178 F. Supp. 3d 657, 664 (N.D. Ill. 2016) ("To succeed in a private cause of action under [the Illinois CFA], a plaintiff must prove (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." (quotation omitted)); *Evans v. Taco Bell Corp.*, 2005 WL 2333841, at

8

Case No. 18-CV-07196-LHK
ORDER GRANTING MOTION TO DISMISS IN PART WITH PREJUDICE AND IN PART WITH LEAVE TO AMEND

*12 (D.N.H. Sept. 23, 2005) ("The New Hampshire Supreme Court has held that the [New Hampshire CPA's] prohibition extends to misrepresentations made in the course of a business transaction." (citation omitted)); *McKenzie v. Wells Fargo Bank, N.A.*, 931 F. Supp. 2d 1028, 1048 (N.D. Cal. 2013) ("Generally speaking, the [New Mexico Unfair Trade Practices Act] is designed to provide a remedy against misleading identification and false or deceptive advertising." (quoting *Lohman v. Daimler-Chrysler Corp.,* 142 N.M. 437, 442, 166 P.3d 1091 (Ct. App. 2007)); *Solum v. Certainteed Corp.*, 147 F. Supp. 3d 404, 411 (E.D.N.C. 2015) ("When the alleged [North Carolina] UDTPA violation is a misrepresentation, a plaintiff must prove detrimental reliance on the alleged misrepresentation to satisfy the proximate cause requirement." (citations omitted)); *Teater v. Pfizer, Inc.*, 2012 WL 3776366, at *9 (D. Or. June 27, 2012), *report and recommendation adopted*, 2012 WL 3776364 (D. Or. Aug. 29, 2012) (dismissing Oregon Unlawful Trade Practices Act claim because "where the alleged UTPA violations are affirmative misrepresentations, the causation element requires proof of reliance-in-fact by the consumer").

Plaintiffs allege that Apple made affirmative misrepresentations in the form of statements that Apple's computer screens were "clear and remarkably vivid" (ACAC ¶¶ 59, 64) and of the "highest quality" (*id.* ¶ 75); that Apple's displays were "the most advanced, most brilliant desktop display[s] [Apple] ever built" (*id.* ¶ 93); that "everything is designed to work just the way you expect it to" (*id.*); and that Apple products underwent "rigorous testing methods that simulated customers' experiences" (*id.* ¶ 94).

### 2. Most of the Identified Statements are Non-Actionable Puffery

Even under a theory of affirmative misrepresentation, however, not all statements are actionable as a matter of law. "A challenged claim is non-actionable 'puffery' if it is a generalized, vague, and unspecified assertion upon which a reasonable consumer could not rely." *Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1039 (N.D. Cal. 2014) (internal alterations and quotations omitted). An actionable statement must make a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact."

9

*Id.* (quotation omitted). "[T]he common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions." *Elias v. Hewlett-Packard co.*, 950 F. Supp. 2d 1123, 1133 (N.D. Cal. 2013) (quoting *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242 (9th Cir. 1990)). Whether a statement is puffery or a representation of fact is a question of law that can be properly decided on a motion to dismiss. *Cook*, 911 F.2d at 245.

The California UCL, California fraudulent concealment, Arizona CFA, Florida fraudulent concealment, Illinois CFA, New Hampshire CPA, New Mexico UTPA, North Carolina UDPA, and Oregon UTPA claims pled here all recognize that puffery is non-actionable. *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1081 (N.D. Cal. 2017) ("Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and thus are not actionable under the [California] UCL . . . ." (internal alterations and quotations omitted)); *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 827 (D. Ariz. 2016) ("Because puffery is a subjective characterization of a product's value rather than a representation of fact, it cannot give rise to a[n] [Arizona CFA] claim."); *Arcure v. Kellogg Co.*, 2011 WL 13294631, at *6 (M.D. Fla. Mar. 29, 2011) (dismissing claim for fraudulent concealment under Florida law because "Defendant's allegedly deceptive statements . . . are general, non-specific, and subjective, and therefore constitute puffery"); *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 926 (Ill. 2007) (dismissing Illinois CFA claim because the "representation is nothing more than puffery, and therefore is not a 'deceptive act' within the purview of the Act"); *Evans*, 2005 WL 2333841, at *12 n.19 (dismissing New Hampshire CPA claim in part because "general claims to superiority, known as 'puffery,' do not amount to actionable representations"); *Begay v. Medicus Healthcare Sols., LLC*, 2015 WL 13650107, at *6 (D.N.M. Nov. 18, 2015) (dismissing New Mexico UTPA claims arising from "[p]hrases like, 'laser-focused on quality'" and 'quality solutions'" because they "are not measurable standards and are so broad that one would not reasonably rely upon them"); *Solum*, 147 F. Supp. 3d at 412 ("[M]ere puffery is not actionable under the [North

Case No. 18-CV-07196-LHK
ORDER GRANTING MOTION TO DISMISS IN PART WITH PREJUDICE AND IN PART WITH LEAVE TO AMEND

Carolina] UDTPA or as common law fraud." (citation omitted)); *Andriesian v. Cosmetic Dermatology, Inc.*, 2015 WL 1638729, at *4 (D. Or. Mar. 3, 2015), *report and recommendation adopted*, 2015 WL 1925944 (D. Or. Apr. 28, 2015) (applying puffery doctrine to Oregon UTPA claim).

Plaintiffs do not contest that puffery is non-actionable. Instead, Plaintiffs argue that the statements "are not puffery." Opp. at 9. Plaintiffs contend that the following statements are actionable misrepresentations: that the computer screens were "clear and remarkably vivid" and of the "highest quality (ACAC ¶¶ 59, 64, 75); that Apple displays were "the most advanced, most brilliant desktop display[s] we've ever built" (*id.* ¶¶ 4, 93); that "everything is designed to work just the way you expect it to" (*id.* ¶¶ 4, 93); and that Apple products underwent "rigorous testing methods that simulated customers' experiences" (*id.* ¶¶ 4, 94). Plaintiffs acknowledge that each individual statement "may not be actionable in isolation" but contend that the statements "become actionable when they contribute to the deceptive context of the advertising as a whole." Opp. at 9.

To begin, the alleged statements about "clear and remarkably vivid" computer screens "are not factual representations that a given standard is met." *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1361 (2003). Courts have consistently held that "[g]eneralized advertisements" that a computer is 'ultra-reliable' or 'packed with power' say nothing about the specific characteristics or components of the computer." *Elias*, 903 F. Supp. 2d at 855; *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008). The same is true here, as statements that Apple computer screens are "clear and remarkably vivid" do not say anything about specific characteristics or components—or even how clear or vivid the screens actually are. *See Consumer Advocates*, 113 Cal. App. 4th at 1361 (finding statements that a product provided "crystal clear digital" video and "CD quality" audio were puffery statements because "[a]fter all, how clear is any given crystal [or] how good are the speakers on the CD player?"). Thus, the alleged statements that Apple's computer screens were "clear and remarkably vivid" are similarly generalized statements that "[a] reasonable consumer could not rely [upon] as

describing the specific . . . capabilities" of an Apple computer.  *See Elias*, 903 F. Supp. 2d at 855.

Furthermore, Apple's alleged statements that its computer screens were of the "highest quality" and that its desktop displays were "the most advanced, most brilliant" that Apple built are also non-actionable puffery.  These statements "are all boasts, all-but-meaningless superlatives." *Consumer Advocates*, 113 Cal. App. 4th at 1361.  Numerous courts have not hesitated to declare similar statements non-actionable.  *See Oestreicher*, 544 F. Supp. 2d at 973 ("[G]eneralized and vague statements of product superiority such as 'superb, uncompromising quality'" and "'longer battery life' are . . . all non-actionable puffery."); *Hodges v. Apple Inc.*, 2013 WL 4393545, at *3 (N.D. Cal. Aug. 12, 2013) (concluding that Apple's statement that its product had "the world's most advanced notebook display . . . . is non-actionable puffery because it is a generalized, vague, and unspecified assertion upon which a reasonable consumer could not rely" (internal alterations and quotation omitted)); *Apodaca v. Whirlpool Corp.*, 2013 WL 6477821, at *6 (C.D. Cal. Nov. 8, 2013) (holding that "statements about dependability and superiority," including comments such as "unequaled tradition of quality production" or "unrivaled performance" are "too vague to be actionable"); *Cook*, 911 F.2d 242 (statement that lamps were "far brighter than any lamp ever before offered for home movies" was puffery (citing *Smith-Victor Corp. v. Sylvania Elec. Prods., Inc.*, 242 F. Supp. 302, 308-09 (N.D. Ill. 1965)).

Next, Apple's advertisement that "everything is designed to work just the way you expect it to" fares no better under existing law.  Courts have concluded that statements that a product is "designed to 'last'"—or that a company is "sure that you'll be pleased with the outstanding quality, reliability, and performance of your new [product]"—do not constitute "actionable statements" "about specific or absolute characteristics."  *Rasmussen*, 27 F. Supp. 3d 1040-43 (holding advertisements that Mac is "designed to last," "designed for a long productive," and "designed to be a better computer" are all puffery); *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139-41 (C.D. Cal. 2005) (finding that a statement that "[w]e are sure that you'll be pleased with the outstanding quality, reliability, and performance of your new notebook" to be non-

12

actionable puffery). Indeed, Apple's purported advertisement that "everything is designed to work just the way you expect it to" "is not amenable to general verification or falsification because its truth or falsity for a particular consumer depends as much on the characteristics of that consumer as the efficacy of the product." *See Cheatham*, 161 F. Supp. 3d at 828; *Rasmussen*, 27 F. Supp. 3d at 1043 (holding statements non-actionable because they were not "capable of being proved false or of being reasonably interpreted as a statement of objective fact" (citation omitted)). Accordingly, the statement that "everything is designed to work just the way you expect it to" is also non-actionable puffery.

The last challenged statement is that Apple products underwent "rigorous testing methods that simulated customers' experiences." Whether this statement is actionable as a matter of law presents a closer issue. "A specific and measurable advertisement claim of product superiority based on product testing is not puffery." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997). Here, the question is whether the challenged statement—that Apple products underwent "rigorous testing methods that simulated customers' experiences"—makes a "specific and measurable" advertisement claim. *See id.* The Court holds that it does.

*Vigil v. General Nutrition Corp.*, 2015 WL 2338982, at *9 (S.D. Cal. May 13, 2015), is instructive in helping discern the contours of the specific advertisement claim at issue here. In *Vigil*, the court considered whether a company selling a virility supplement for men made misrepresentations by claiming one of its products was "[f]ormulated with premium ingredients to provide maximum potency." *Id.* at *9. The court noted that the terms "premium" and "maximum"—like the statements "most brilliant," "rigorous," and "highest quality" here—were "subjective terms that are typical of puffery." 2015 WL 2338982, at *9. At the same time, the court concluded that the statement was actionable because it "arguably promise[d] consumers that the product [was] capable of producing *some effect* on male potency (as opposed to maximum potency of the product)." *Id.* (emphasis added). That same logic applies here.

The alleged claim that Apple products underwent "rigorous testing methods that simulated

Case No. 18-CV-07196-LHK
ORDER GRANTING MOTION TO DISMISS IN PART WITH PREJUDICE AND IN PART WITH LEAVE TO AMEND

customers' experiences" arguably promises that Apple subjected its products to *some form of testing* and is therefore "a specific factual assertion which could be established or disproved." *Anunziato*, 402 F. Supp. 2d at 1140; *see id.* ("The Court finds that the phrase 'most stringent quality control tests' is actionable, and is not mere puffery."); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at \*26 (N.D. Cal. Aug. 30, 2017) (finding that alleged statement that Defendants had "physical, electronic, and procedural safeguards that comply with federal regulations to protect personal information about you" was not puffery because "[a] reasonable consumer could rely on this statement as representing that Defendants did, in fact, use safeguards that complied with federal regulations"). As a result, this final statement—that Apple products underwent "rigorous testing methods that simulated customers' experiences"—is not mere puffery.

Finally, Plaintiffs resist the conclusion that the vast majority of the aforementioned statements are non-actionable puffery. Plaintiffs, relying on *Vigil*, contend that though the statements "may not be actionable in isolation," the statements nonetheless all become actionable because they contribute to a "deceptive context" of advertising. Opp. at 9. But *Vigil* has a far more limited holding, as the *Vigil* court held that the terms "premium" and "maximum"—like the statements "most brilliant," "rigorous," and "highest quality" here—were "subjective terms that are typical of puffery." 2015 WL 2338982, at \*9. *Vigil* only held that the statement was actionable because it "arguably promise[d] consumers that the product [was] capable of producing *some effect*." *Id.* (emphasis added). *Vigil* does little to distinguish the numerous aforementioned cases, which are directly applicable to the instant case. Furthermore, Plaintiffs in any event do not explain how the various puffery statements merge to form one overarching misrepresentation. *See Elias*, 950 F. Supp. 2d at 1134 ("[T]he combination of several 'puff' statements does not automatically create an actionable misrepresentation.").

Accordingly, the Court finds that the following statements are non-actionable puffery: that the computer screens were "clear and remarkably vivid" and of the "highest quality (ACAC ¶¶ 59,

United States District Court
Northern District of California

64, 75); that Apple displays were "the most advanced, most brilliant desktop display[s] [Apple has] ever built" (*id.* ¶¶ 4, 93); and that "everything is designed to work just the way you expect it to" (*id.* ¶¶ 4, 93). The Court GRANTS Apple's motion to dismiss Plaintiffs' California UCL, California fraudulent concealment, Arizona CFA, Florida fraudulent concealment, Illinois CFA, New Hampshire CPA, New Mexico UTPA, North Carolina UDPA, and Oregon UTPA claims to the extent that these claims are premised on an affirmative misrepresentation theory and statements of puffery. The Court also GRANTS Plaintiffs leave to amend these claims based on alleged puffery statements because amendment would not necessarily be futile, cause undue delay, or unduly prejudice Apple, and Plaintiffs have not acted in bad faith. *Leadsinger*, 512 F.3d at 532.

As to the statements that Apple products underwent "rigorous testing methods that simulated customers' experiences" (*id.* ¶¶ 4, 94), these statements are not puffery because whether Apple products underwent any testing is objectively verifiable. As a result, the Court next considers whether Plaintiffs adequately plead that the "rigorous testing methods" statements are false.

### 3. Plaintiffs Do Not Adequately Plead that Apple's Remaining Statements are False or Misleading

Plaintiffs allege that Apple's advertisements that its products underwent "rigorous testing methods that simulated customers' experiences" are false and misleading. ACAC ¶¶ 4, 94. The parties agree that the Plaintiffs' California UCL, California fraudulent concealment, Arizona CFA, Florida fraudulent concealment, Illinois CFA, New Hampshire CPA, New Mexico UTPA, North Carolina UDPA, and Oregon UTPA claims sound in fraud and are therefore subject to Rule 9(b)'s heightened pleading standard. Mot. at 6 ("And because all Plaintiffs' claims are based on the same alleged fraudulent scheme, Rule 9(b) requires that all claims satisfy its heightened pleading standard."); Opp. at 7 ("Plaintiffs' fraud claims satisfy Rule 9(b).").

To meet Rule 9(b)'s heightened pleading standard, a plaintiff must allege why a statement was "untrue or misleading *when made*." *In re GlenFed,* 42 F.3d at 1549 (emphasis in original). Claims sounding in fraud must also allege "an account of the time, place, and specific content of

15

the false representations as well as the identities of the parties to the misrepresentations." *Swartz*, 476 F.3d at 764.

Plaintiffs fail to state how the "rigorous testing methods" statements constitute false or misleading representations. Plaintiffs merely plead that the statements regarding "rigorous testing methods" are false and misleading, but Plaintiffs do not plead "what is false or misleading about [the] statement, and why it is false." *In re GlenFed*, 42 F.3d at 1548. In fact, when alleging that Apple knew about the supposed defect, Plaintiffs assume that Apple did "simulate[] customers' experiences with their devices and test[] extensively." Opp. at 18.

Courts have dismissed misrepresentation claims when a plaintiff fails to plead how an alleged misrepresentation is false or misleading. For instance, in *Palmer v. Apple Inc.*, the plaintiff pleaded that he relied on "quantitative statements regarding the iPhone 5's performance or its compatibility with Wi-Fi and cellular networks." 2016 WL 1535087, at *5 (N.D. Cal. Apr. 15, 2016). However, the *Palmer* plaintiff did not allege how such quantitative statements regarding the iPhone's performance were false, so the court dismissed the claims. *Id.*

In another case, *Davidson v. Apple, Inc.*, 2017 WL 3149305, at *11 (N.D. Cal. July 25, 2017), Plaintiffs alleged that Apple's statement that iPhones are made with "stainless steel and titanium inserts" were false misrepresentations because their iPhones suffered alleged defects. The court determined, however, that "Plaintiffs d[id] not allege that the iPhones are *not* made with any of these specific materials" but that these materials "d[id] not sufficiently reinforce the iPhone." *Id.* "[T]hat some iPhones suffered from the touchscreen defect does not demonstrate that Apple made any misrepresentation of fact in stating that the iPhones were made with certain materials and components." *Id.*

Here, the same logic applies, as Plaintiffs do not allege that Apple never tested its products. In other words, "that some [Apple products] suffered from the [alleged] defect does not demonstrate that Apple made any misrepresentation of fact in stating that the [products] were [rigorously tested with methods that simulated customers' experiences]." *See id.*; *Deburro v.*

*Apple, Inc.*, 2013 WL 5917665, at \*4 (W.D. Tex. Oct. 31, 2013) ("[E]ven if Apple did make relevant representations, and assuming those representations were material, Plaintiffs have not identified a single *false* representation. . . . It would be false to represent the MacBook has USB ports when it does not have USB ports. It is not false to represent the MacBook has USB ports when it in fact has them, even if those ports may cease to function . . . .").

In the instant case, when alleging that Apple knew about the supposed defect, Plaintiffs assume that Apple did "simulate[] customers' experiences with their devices and test[] extensively." Opp. at 18; *Hauck v. Advanced Micro Devices, Inc.*, 2019 WL 1493356, at \*14 (N.D. Cal. Apr. 4, 2019) ("Plaintiff's [complaint] even acknowledges that [Defendant's] representations about clock speed are *true*.").

Therefore, Plaintiffs "fail[] to plead what is false or misleading about a statement, and why it is false." *See Sciacca*, 362 F. Supp. 3d at 799. As a result, they have not stated a claim based on any affirmative misrepresentations. *Hauck*, 2019 WL 1493356, at \*14 ("Plaintiffs have not alleged that AMD made any representations that were "actually false" when made and have not stated a claim based on any affirmative misrepresentations." (citation omitted)). The Court GRANTS Apple's motion to dismiss Plaintiffs' California UCL, California fraudulent concealment, Arizona CFA, Florida fraudulent concealment, Illinois CFA, New Hampshire CPA, New Mexico UTPA, North Carolina UDPA, and Oregon UTPA claims to the extent they rely on an affirmative misrepresentation theory predicated on Apple's statement that its products underwent "rigorous testing methods that simulated customers' experiences." ACAC ¶¶ 4, 94. Nonetheless, the Court finds that granting Plaintiffs leave to amend these claims would not be futile, cause undue delay, or unduly prejudice Apple, and that Plaintiffs have not acted in bad faith. *Leadsinger*, 512 F.3d at 532. The Court therefore GRANTS Plaintiffs leave to amend their claims based on allegations that Apple affirmatively misrepresented that its products underwent "rigorous testing methods that simulated customers' experiences." ACAC ¶¶ 4, 94.

**B. Omission Theory**

The Court next addresses Plaintiffs' nine state law causes of action based on alleged omissions. Plaintiffs proffer two omission theories. First, Plaintiff present a "partial omission" theory and contend that Apple failed to adequately disclose the existence of the Filter Defect to consumers by making misleading statements that contained material omissions. ACAC ¶¶ 91-92. Specifically, under their partial omission theory, Plaintiffs argue that (1) Apple "made incomplete representations about the Computers' performance and longevity" while withholding information about dust (*id.* ¶ 167); and (2) Apple's "limited disclosure of the Filter Defect" in its user-guide manual "works to disguise" the problem of screen smudging (*id.* ¶ 91).

Second, Plaintiffs assert that Apple did not make any meaningful disclosure of the Filter Defect and is liable under a "pure omission" theory. Opp. at 12. Under their pure omission theory, Plaintiffs contend that (1) Apple intentionally concealed and omitted information about motherboard issues related to dust accumulation (ACAC ¶ 167); and (2) Apple did not meaningfully disclose the Filter Defect even though it had a duty to do so (Opp. at 12-14).

The parties devote the lion's share of their briefing on the omission theory to the California UCL and fraudulent concealment claim. As a result, the Court begins with the California state law claims and addresses each of Plaintiffs' partial and pure omission theories before turning to the seven other state law claims.

The Court notes that the parties focus mainly on California law even when asking the Court to construe the non-California causes of action. "The parties are advised that in future briefing, to the extent they ask the Court to decide matters on the basis of several states' laws, they must squarely address whether there are material variations in state law." *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 864 n.9 (N.D. Cal. 2018).

### 1. California UCL and Fraudulent Concealment Claims

#### i. Legal Standard under California Law

"California's UCL provides a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent." *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1050 (N.D. Cal. 2014)

18

(citing Cal. Bus. & Prof. Code § 17200). Plaintiffs allege that Apple made fraudulent omissions and are therefore liable under the fraudulent and unfair prongs of the UCL. *See* Opp. at 20-21.

"For an omission to be actionable under the UCL, 'the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose.'" *In re Yahoo! Inc.*, 2017 WL 3727318, at *29 (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006)); *Backhaut.*, 74 F. Supp. 3d at 1049 (same).

Courts in this district have held that where the "plaintiffs' unfair prong claims overlap entirely with their claims of fraud," the plaintiffs' unfair prong claim cannot survive. *In re Actimmune Mktg. Litig.*, 2009 WL 3740648, at *14 (N.D. Cal. Nov. 6, 2009), *aff'd*, 464 Fed. App'x 651 (9th Cir. 2011); *see also Punian v. Gillette Co.*, 2016 WL 1029607, at *17 (N.D. Cal. Mar. 15, 2016) (holding UCL unfair prong cause of action does not survive where the "cause of action under the unfair prong of the UCL overlaps entirely with [a plaintiff's] claims" alleging fraud that also do not survive); *Hauck*, 2019 WL 1493356, at *14-15.

Here, Plaintiffs' UCL unfair prong claim is premised on Apple's alleged fraud. *See, e.g.*, ACAC ¶¶ 162-72 (alleging Apple violated the UCL because Plaintiffs "were deceived by Apple's failure to disclose that the Computers have the Filter Defect"). As a result, "Plaintiffs' unfair prong claim 'overlaps entirely' with Plaintiffs' fraud claims[]" and Plaintiffs' UCL unfair prong claims fail if Plaintiffs' UCL fraudulent prong claims fail. *Hauck*, 2019 WL 1493356, at *15 (quoting *Hadley*, 243 F. Supp. 3d at 1104).

For an omission to be actionable under California fraudulent concealment, a plaintiff must show that:

> (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1133 (N.D. Cal. 2018)

United States District Court
Northern District of California

(quoting *Tenet Healthsystem Desert, Inc. v. Blue Cross of Cal.*, 245 Cal. App. 4th 821, 844 (2016)); *Baird v. Samsung Elecs. Am., Inc.*, 2018 WL 4191542, at *7 (N.D. Cal. July 20, 2018) (same).

The Court will first address Plaintiffs' two partial omission arguments. Specifically, the Court will address Plaintiffs' partial omission arguments that (1) Apple "made incomplete representations about the Computers' performance and longevity" while withholding information about dust (ACAC ¶ 167); and (2) Apple's "limited disclosure of the Filter Defect" in its user-guide manual "works to disguise" the problem of screen smudging (*id.* ¶ 91). The Court will then assess Plaintiffs' two pure omission arguments that (1) Apple intentionally concealed and omitted information about motherboard issues related to dust accumulation (*id.* ¶ 167); and (2) Apple did not meaningfully disclose the Filter Defect even though it had a duty to do so (Opp. at 12-14). The Court addresses each theory as to both the California fraudulent concealment and UCL claims.

### ii.    Partial Omission Arguments

Plaintiffs' proffer two partial omission arguments. First, Plaintiffs argue that Apple "made incomplete representations about the Computers' performance and longevity" while withholding information about dust. ACAC ¶ 167. Second, Plaintiffs claim that Apple's "limited disclosure of the Filter Defect" in its user-guide manual "works to disguise" the problem of screen smudging. *Id.* ¶ 91. The Court holds that both of Plaintiffs' partial omission arguments fail as to Plaintiffs' California causes of action.

### a.  Statements Regarding Performance and Longevity

Plaintiffs contend that the following statements are actionable partial omissions: that the computer screens were "clear and remarkably vivid" and of the "highest quality (ACAC ¶¶ 59, 64, 75); that Apple displays were "the most advanced, most brilliant desktop display[s] we've ever built" (*id.* ¶¶ 4, 93); that "everything is designed to work just the way you expect it to" (*id.* ¶¶ 4, 93); and that Apple products underwent "rigorous testing methods that simulated customers'

United States District Court
Northern District of California

experiences" (*id*. ¶¶ 4, 94). On this basis, Plaintiffs allege that Apple "made incomplete representations about the Computers' performance and longevity" while withholding information about dust. ACAC ¶ 132.

These allegedly incomplete statements about "performance and longevity" are not actionable partial omissions. As discussed previously, most of these statements—namely that Apple's computer screens were "clear and remarkably vivid" (ACAC ¶¶ 59, 64) and of the "highest quality" (*id*. ¶ 75); that its displays were "the most advanced, most brilliant desktop display[s] [Apple] ever built" (*id*. ¶ 93); and that "everything is designed to work just the way you expect it to" (*id*.)—are non-actionable puffery. Alleged omissions are actionable if they are likely to deceive reasonable consumers, but "[g]eneric sales talk . . . is not actionable even if a consumer subjectively believes it means something more specific." *Azoulai v. BMW of N. Am. LLC*, 2017 WL 1354781, at *8 (N.D. Cal. Apr. 13, 2017) (citing *Vitt v. Apple Computer, Inc.*, 469 Fed. App'x 605, 607 (9th Cir. 2012)). In other words, puffery is "not likely to deceive a reasonable consumer" and cannot undergird a claim based on a material omission. *See id.*; *see also Apodaca*, 2013 WL 6477821, at *8 ("[P]artial representations that refer to the reliability and durability representations of the long-term advertising campaign are, as discussed above, too general for Defendants to incur a duty to disclose.").

Apple's other alleged statements—that its products underwent "rigorous testing methods that simulated customers' experiences"—are also non-actionable. Plaintiffs do not adequately plead what is false or misleading about these statements, which make no representations about anything related to screen "smudges" or the alleged Filter Defect. *Sciacca*, 362 F. Supp. 3d at 799 (holding that an alleged partial representation must directly relate to the omitted information in order to be actionable). Accordingly, Plaintiffs cannot state a claim based on these alleged partial omissions. *See id.* (Apple's statement did not concern its watch's screen and therefore did not omit any information related to the watch's screen). The Court GRANTS Apple's motion to dismiss the California fraudulent concealment claim and UCL fraudulent prong claim to the extent

United States District Court
Northern District of California

they are based on partial omissions related to statements of puffery or statements that Plaintiffs did not adequately plead as false. Because the Court dismisses Plaintiffs' UCL fraudulent prong claim, the Court also GRANTS Apple's motion to dismiss Plaintiffs' UCL unfair prong claim. However, the Court finds that granting Plaintiffs leave to amend would not be futile, cause undue delay, or unduly prejudice Apple, and that Plaintiffs have not acted in bad faith. *Leadsinger*, 512 F.3d at 532. The Court therefore GRANTS Plaintiffs leave to amend these claims.

### b. Apple's User-Guide Disclosures

Plaintiffs next rely on the allegation that Apple's "limited disclosure of the Filter Defect [in its user guide] works to disguise" the purported screen smudges. ACAC ¶ 91. Plaintiffs allege that Apple cautions customers to "not operate . . . iMac[s] in areas with significant amounts of airborne dust, or smoke from cigarettes, cigars, ashtrays, stoves, or fireplaces" because "tiny airborne particles . . . may, in rare instances, result in a slight haze on the inside surface of the glass panel that covers the iMac display." ACAC ¶ 91. Plaintiffs contend that under a "partial omission" theory, this "limited disclosure" in Apple's user guide works to disguise the defect "because a customer reading this disclosure would reasonably believe that she will not experience the defect unless she had 'significant' amounts of dust or smoke" when "[i]n truth, the Filter Defect is present in all Computers." *Id.* ¶ 92.

Apple responds that (1) Plaintiffs do not adequately plead reliance on the user-guide dust disclosures as necessary to plead claims under California law, and (2) Apple disclosed the risk of dust problems in its user guide. Mot. at 9-15. The Court agrees that Plaintiffs do not plead reliance on the dust disclosures as necessary under California law and does not reach Apple's other argument that the user-guide disclosure of dust problems was adequate.

Plaintiffs argue that "they need not plead reliance," but they are mistaken. Opp. at 12. In *In re Tobacco II,* the California Supreme Court held that plaintiffs, who had been exposed to a "decades-long campaign of deceptive advertising" aimed at down-playing the negative health effects of smoking were not required to identify with particularity the specific advertisements

upon which they relied. 46 Cal.4th at 306, 328. However, the *In re Tobacco II* Court also emphasized that plaintiffs were still required to allege facts showing that defendants' advertisements "were an immediate cause of the" plaintiffs' decisions to purchase defendants' cigarettes. *Id.* Thus, as explained by the California Court of Appeal in *Pfizer Inc. v. Superior Court*, *In re Tobacco II* "does not stand for the proposition that a consumer who was never exposed to an alleged false or misleading advertising or promotional campaign" may bring a claim for relief. 182 Cal. App. 4th 622, 632 (2010). "Rather, *In re Tobacco II* stands for the narrower, and more straightforward proposition that, where a plaintiff has been exposed to numerous advertisements over a period of decades, the plaintiff is not required to 'plead with an *unrealistic degree* of specificity [the] particular advertisements and statements' that she relied upon." *Kane v. Chobani, Inc.*, 2013 WL 5289253, at *9 (N.D. Cal. Sept. 19, 2013) (quoting *In re Tobacco II*, 46 Cal.4th at 328) (emphasis added); *see also In re Arris*, 2018 WL 288085, at *9 (noting that "the *Tobacco II* exception [is] narrow and applie[s] [to] long-term advertising campaigns").

Thus, Plaintiffs here must adequately plead actual reliance on a specific statement from Apple. "California courts have held that when the 'unfair competition' underlying a plaintiff's UCL claim consists of a defendant's misrepresentation or omission, a plaintiff must have actually relied on the misrepresentation or omission, and suffered economic injury as a result of that reliance, to have standing to sue." *Backhaut*, 74 F. Supp. 3d at 1047 (citing *In re Tobacco II*, 46 Cal. 4th at 326). "California courts have subsequently extended the actual reliance requirement to claims brought under the UCL's unlawful prong to the extent the predicate unlawful conduct is based on misrepresentations," and "the California Supreme Court suggested that the actual reliance requirement applies whenever the underlying misconduct in a UCL action is fraudulent conduct." *Id.* at 1047-48 (citations omitted). For California fraudulent concealment claims, the same is true, as "[r]eliance is an essential element of a fraudulent concealment claim." *Sevidal v. Target*, 189 Cal. App. 4th 905, 928 (2010); *see also In re Tobacco II*, 46 Cal. 4th at 312 ("A common law fraudulent deception must be actually false, known to be false by the perpetrator and

reasonably relied upon by a victim who incurs damages." (internal alterations omitted)).

Furthermore, "Rule 9(b) requires the plaintiff to allege 'the particular circumstances surrounding [the] representations' at issue." *In re Arris*, 2018 WL 288085, at *9 (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009)). "This rule applies regardless of whether the statements at issue are misleading because they are affirmative misrepresentations or because they contain material omissions." *Id.*

Here, Plaintiffs do not allege that they relied on Apple's statement that "tiny airborne particles . . . may, in rare instances, result in a slight haze on the inside surface of the glass panel that covers the iMac display." ACAC ¶ 91. Instead, Plaintiffs only make general allegations that they "relied on Apple's representations" on its website, presentations, or advertisements that its screens were "particularly sharp and vivid" and "generally the best screen Apple has ever produced," which as discussed previously, are non-actionable puffery. *See, e.g.,* ACAC ¶¶ 9, 19, 24, 29, 34, 39, 44 51, 55, 59, 64, 75, and 80. More importantly, Plaintiffs argue that they were not exposed to the user-guide disclosures until after they purchased their products. Opp. at 13-14 ("[T]his disclosure occurred after the point of sale, in the Computers' user manual" and "[s]uch a belated disclosure does nothing to inform them.").

As a result, "Plaintiffs have not specified which statements any of them saw or relied on in deciding to buy the [Apple computers]." *See In re Arris*, 2018 WL 288085, at *9. The Court therefore GRANTS Apple's motion to dismiss Plaintiffs' California fraudulent concealment claim and UCL fraudulent prong claim to the extent they are based on the user-guide disclosures. Because the Court dismisses Plaintiffs' UCL fraudulent prong claim, the Court also GRANTS Apple's motion to dismiss Plaintiffs' UCL unfair prong claim. The Court GRANTS Plaintiffs leave to amend because doing so would not be futile, cause undue delay, or unduly prejudice Apple, and Plaintiffs have not acted in bad faith. *Leadsinger*, 512 F.3d at 532.

### iii. Pure Omission Arguments

The Court now addresses Plaintiffs' pure omission arguments regarding Plaintiffs'

California fraudulent concealment and California UCL fraudulent prong and unfair prong claims. Plaintiffs argue that Apple is liable for pure omissions because (1) Apple intentionally concealed and omitted information about motherboard issues related to dust accumulation (*id.* ¶ 132); and (2) Apple did not meaningfully disclose the Filter Defect even though Apple had a duty to do so (Opp. at 12-14). The Court holds that both pure omission arguments fail.

### a. Motherboard-Related Omissions

Plaintiffs' claims that Apple intentionally concealed information about motherboard issues fail because Plaintiffs do not adequately plead actual knowledge. To state a California fraudulent concealment and UCL claim based on an omission, a defendant "must have known of the defect at the time of sale for a plaintiff to state a claim for fraud by omission." *Hauck*, 2019 WL 1493356, at *11 (quotation omitted); *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 926-27 (N.D. Cal. 2018) ("California law [under common-law claims for deceit, fraudulent concealment, and a number of consumer fraud statutes] supports this common-sense notion that a defendant cannot 'disclose facts of which it was unaware.'"). Constructive knowledge is insufficient to state a claim based on omissions. *Hauck*, 2019 WL 1493356, at *11 ("[A] plaintiff may not state an omission claim with allegations that a defendant *should have* known about a defect from general knowledge." (citation omitted)); *see In re Nexus*, 293 F. Supp. 3d at 927 ("[T]o state a claim for fraud based on failure to disclose under California law, the plaintiff must allege that 'the manufacturer knew of the defect at the time a sale was made.'" (quoting *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1025 (9th Cir. 2017)); *Morris v. BMW of N. Am. LLC*, 2007 WL 3342612, at *6 (N.D. Cal. Nov. 7, 2007) (holding that allegations that the defendant "should have known" of a defect were insufficient to state a fraud by omission claim, and that the plaintiff must instead allege that the defendant had "actual knowledge" of the defect).

Plaintiffs allege that "the problem of accumulation of dust is well-known in the technology community," which "causes [the motherboard] to overheat" and "slows down the processing speed of the computer." ACAC ¶ 3. Plaintiffs contend that Apple's product testing, which "simulate[s]

Case No. 18-CV-07196-LHK
ORDER GRANTING MOTION TO DISMISS IN PART WITH PREJUDICE AND IN PART WITH LEAVE TO AMEND

customers' experiences with their devices" and ensures that devices "meet [Apple's] performance and durability standards" made it "completely implausible that [Apple] did *not* know" about the motherboard issues. *Id.*¶ 94; *see* Opp. at 18.

These allegations are insufficient to allege that Apple knew about the motherboard issue in its products. "The pleading standard of Rule 8 applies to Apple's knowledge of a defect." *Sciacca*, 362 F. Supp. 3d at 800 (citing Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.")). But even under Rule 8's relaxed pleading standard, "vague, sweeping statements about industry research and general knowledge" are "insufficient to allege that [Apple] knew about any specific [defect]." *Hauck*, 2019 WL 14993356, at *12; *Morris*, 2007 WL 3342612, at *6 (allegations that a defendant "should have known" of defects are insufficient to state an omission claim).

Plaintiffs respond that Apple's statement that it tested its products extensively and simulated users' experiences is enough to allege Apple's knowledge of motherboard issues. Opp. at 18 (citing *Davidson*, 2017 WL 3149305, at *15). But in cases finding that plaintiffs sufficiently alleged knowledge through product testing, plaintiffs "describe[d] the details of this pre-release testing" and "explain[ed] how this testing would have alerted [defendants] to the defect." *Davidson*, 2017 WL 3149305, at *15; *see Kowalsky v. Hewlett-Packard Co.*, 2011 WL 3501715, at *4-5 (N.D. Cal. Aug. 10, 2011) (finding Plaintiffs adequately pled knowledge by "making averments and alleging contemporaneous facts . . . that HP used certain testing procedures . . . that would have uncovered the alleged defect"). Plaintiffs do nothing of the sort here, instead relying on "vague, sweeping statements about industry research and general knowledge." *Hauck*, 2019 WL 14993356, at *12.

Additionally, Plaintiffs do not cite any Apple statements that support Plaintiffs' allegation that motherboard issues connected to dust exposure are "well-known in the technology community" and apply to Apple's products. *See* ACAC ¶¶ 3, 87. Instead, Plaintiffs cite to a link from a website that appears unrelated to Apple and does not mention Apple products. *Id.* ¶ 87

United States District Court
Northern District of California

n.21.  On top of that, while Plaintiffs assiduously describe customer complaints to Apple about screen smudges, the ACAC does not mention a single customer complaint regarding motherboard issues.  *Id.* ¶¶ 88-89 (describing screen smudges without mentioning any motherboard issues).  The court in *Davidson* found that consumer complaints were an important factor that suggested defendant had actual knowledge of the defect at issue in that case.  *Davidson*, 2017 WL 3149305, at *15; *see Kowalsky*, 2011 WL 3501715, at *4-5 (finding Plaintiffs adequately pled knowledge by "making averments and alleging contemporaneous facts . . . that HP used certain testing procedures . . . that would have uncovered the alleged defect and that consumers complained of the defect").  But when "none of the[] complaints identify the alleged defect," courts are reticent to find that defendants had actual knowledge of the defect.  *See Sciacca*, 362 F. Supp. 3d at 800 ("First, Plaintiff's amended complaint does not identify any customer complaints at Apple Stores or to Apple Support.  Second, the only online customer complaints are customer posts on Apple's website, and none of these complaints identify the alleged defect . . . .").  Here, Plaintiffs do not allege that consumers reported any motherboard issues to Apple.

Accordingly, because Plaintiffs do not "describe the details of this . . . testing," "explain how this testing would have alerted Apple" to the alleged motherboard issues, or allege that consumers even reported motherboard issues to Apple, Plaintiffs do not adequately plead actual knowledge.  *See Davidson*, 2017 WL 3149305, at *15.  The Court GRANTS Apple's motion to dismiss Plaintiffs' California fraudulent concealment claim and UCL fraudulent prong claim to the extent they are based on Apple's alleged omission of information related to motherboard issues.  Because the Court dismisses Plaintiffs' UCL fraudulent prong claim, the Court also GRANTS Apple's motion to dismiss Plaintiffs' UCL unfair prong claim.  The Court GRANTS Plaintiffs leave to amend these claims because doing so would not be futile, cause undue delay, or unduly prejudice Apple, and Plaintiffs have not acted in bad faith.  *Leadsinger*, 512 F.3d at 532.

In regards to Plaintiffs' Arizona CFA, Florida fraudulent concealment, Illinois CFA, New Hampshire CPA, New Mexico UTPA, North Carolina UDPA, and Oregon UTPA claims,

27

Plaintiffs also argue that Apple intentionally concealed and omitted information about motherboard issues. Plaintiffs' briefing, however, offers no new arguments and relies on its arguments as to Plaintiffs' two California causes of action. Opp. at 18 (citing *Davidson*, 2017 WL 3149305, at *15). Plaintiffs' arguments fail for the same reason as previously noted—namely, that Plaintiffs have not adequately pleaded knowledge of motherboard-related issues. Therefore, the Court GRANTS Apple's motion to dismiss Plaintiffs' Arizona CFA, Florida fraudulent concealment, Illinois CFA, New Hampshire CPA, New Mexico UTPA, North Carolina UDPA, and Oregon UTPA claims to the extent that these claims are based on Apple's alleged omission of information related to motherboard issues. The Court also GRANTS Plaintiffs leave to amend because doing so would not be futile, cause undue delay, or unduly prejudice Apple, and Plaintiffs have not acted in bad faith. *Leadsinger*, 512 F.3d at 532.

### b. Pure Omissions Related to the Filter Defect

Plaintiffs argue that under California fraudulent concealment and the UCL, Apple had a duty to disclose the Filter Defect. Plaintiffs allege that because Apple did not disclose the Filter Defect, Apple is liable under a pure omission theory. Apple responds that it is not liable under a pure omission theory because it had no duty to disclose the Filter Defect under California law. The Court agrees with Apple.

"Under controlling Ninth Circuit law, an 'omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose.'" *Knowles v. Arris Int'l PLC*, 2019 WL 3934781, at *15 (N.D. Cal. Aug. 20, 2019) (quoting *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018)). In *Hodsdon*, the Ninth Circuit held that under California law, a defendant only has a duty to disclose material defects that impair the product's central function or that implicates the consumer's safety. 891 F.3d at 864. Plaintiffs contend that Apple is liable for a pure omission because the Filter Defect impairs the central function of their computers and implicates consumer safety such that Apple had a duty to disclose the Filter Defect. *See Knowles*, 2019 WL 3934781, at *15 (applying *Hodsdon* to UCL claims);

Case No. 18-CV-07196-LHK
ORDER GRANTING MOTION TO DISMISS IN PART WITH PREJUDICE AND IN PART WITH LEAVE TO AMEND

United States District Court
Northern District of California

*see Norcia v. Samsung Telecomms. Am., LLC*, 2018 WL 4772303, at \*1-2 (N.D. Cal. Oct. 1, 2018) (applying *Hodsdon* to "common law fraud claims").

Both of Plaintiffs' arguments fail.  As to the claim that the Filter Defect impairs the central functionality of their computers, the Ninth Circuit held that "the central functionality of the product is not based on subjective preferences about a product."  *Hodsdon*,  891 F.3d at 864.  Rather, such a defect is one that "renders those products incapable of use by any consumer."  *Id.*

The California Court of Appeal's decision in *Collins*, which *Hodsdon* cited at length, is indicative of how a defect renders a product incapable of use, and thus impairs its central function.  In *Collins*, a floppy disk defect caused critical data corruption of a computer's hard drive.  *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 256 (2011).  At the time the computers were sold, "floppy disks provided the primary means of storing and transporting computer data," and were "integral to the storage, access, and transport of accurate computer data."  *Id.*  Accordingly, the California Court of Appeal held that the defective floppy disk "was central to the function of a computer as a computer."  *Id.* at 258.  Similarly, *Rutledge* involved a malfunctioning display screen on a laptop, which "would require the connection of an outside monitor" for the consumer to actually use the laptop.  *Rutledge v. Hewlett-Packard Co.*, 238 Cal. App. 4th 1164, 1175 (2015).  By contrast, in *Hodsdon*, the Ninth Circuit held that the existence of slave labor in a chocolate supply chain had no connection to the "chocolate's function as chocolate," and observed that "some consumers of chocolate are not concerned about the labor practices used to manufacture the product."  891 F.3d at 864.

*Knowles v. Arris Int'l PLC*, a recent decision of this Court, is also directly applicable to the case at hand.  In *Knowles*, the Court analyzed whether latency defects in computer modems impaired the central function of the modems.  2019 WL 3934781, at \*16.  The Court answered in the negative.  *Id.*  Even though latency defects may have "manifested to end users in the form of slow web browsing and file transfers; less responsive online gaming; glitches in video and audio streaming; and delays in video and audio conference[,] [t]hat evidence pale[d] in comparison to

Case No. 18-CV-07196-LHK
ORDER GRANTING MOTION TO DISMISS IN PART WITH PREJUDICE AND IN PART WITH LEAVE TO AMEND

the facts of *Collins* and *Rutledge*, in which the defects rendered the products unusable as sold." *Id.*

The same is true here. Plaintiffs allege that the Filter Defect results in "dark smudges in the corners of [the] screen," ACAC ¶ 37, and the pictures included in the ACAC show only a small, gray haze in the corners of the screen, ACAC ¶ 88. Such issues are similar to the problems generated by the latency defect in *Knowles*, and both sets of issues do not "obliterate the function of a computer as a computer." *Collins*, 202 Cal. App. 4th at 258. Furthermore, unlike the malfunctioning display screen in *Rutledge*, which "require[d] the connection of an outside monitor" for the consumer to actually use the laptop, dark smudges in the corners of the screen do not render Apple computers unusable. 238 Cal. App. 4th at 1175. While such smudges may appear unreasonable to Plaintiffs, "the central functionality of a product" depends "not . . . on subjective preferences about a product," and "some consumers [of Apple computers] are not concerned about [dark smudges in the corners of displays]." *Hodsdon*, 891 F.3d at 864. Thus, the ACAC alleges no facts that demonstrate that the Filter Defect impairs the computers' central function such that Apple had a duty to disclose the Filter Defect.

Plaintiffs also contend that Apple had a duty to disclose the Filter Defect under California law due to "the safety risk caused by the overheating motherboard." Opp. at 14. While the ACAC does mention that dust can cause Apple computers to "heat up and then suddenly crash," ACAC ¶ 87, such allegations are insufficient to constitute an "unreasonable safety hazard" as they are not "plausibly hazardous." *Williams v. Yamaha Motor Co. Ltd*, 851 F.3d 1015, 1029 (9th Cir. 2017). Plaintiffs do not allege that an overheated iMac or Macbook can injure a person. Rather, the case law suggests that an event only rises to the level of an "unreasonable safety hazard" in dangerous situations analogous to "engine disintegration or failure or engine fire," *Sloan v. General Motors LLC*, 287 F. Supp. 3d 840, 871 (N.D. Cal. 2018); "a faulty speedometer easily . . . lead[ing] to traveling at unsafe speeds and moving-violation penalties," *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1096 (N.D. Cal. 2007); or "moisture on the wiring caus[ing] overheating[] and . . . lead[ing] to a fire," *Apodaca*, 2013 WL 6477821. Plaintiffs allege nothing analogously

30

dangerous here and therefore do not plausibly allege that Apple had a duty to disclose the Filter Defect due to the existence of an unreasonable safety hazard.

Accordingly, the Court holds that Plaintiffs do not adequately allege that the Filter Defect either impairs the central function of Plaintiffs' computers or implicates consumer safety and that as a result, Apple did not have a duty to disclose the alleged Filter Defect under the facts alleged here. *See Hodsdon*, 891 F.3d at 864. The Court therefore GRANTS Apple's motion to dismiss Plaintiffs' California fraudulent concealment claim and UCL fraudulent prong claim to the extent that these claims are based on Apple's alleged omission of the Filter Defect. Because the Court dismisses Plaintiffs' UCL fraudulent prong claim, the Court also GRANTS Apple's motion to dismiss Plaintiffs' UCL unfair prong claim. The Court also GRANTS Plaintiffs leave to amend these claims because doing so would not be futile, cause undue delay, or unduly prejudice Apple, and Plaintiffs have not acted in bad faith. *Leadsinger*, 512 F.3d at 532.

### 2. Remaining State Law Causes of Action

The Court now turns to Plaintiffs' omission theory of liability as to the remaining state law causes of action: (1) the Arizona CFA; (2) Florida's fraudulent concealment law; (3) the Illinois CFA; (4) the New Hampshire CPA; (5) the New Mexico UTPA; (6) the North Carolina UDPA; and (7) the Oregon UTPA.

Apple argues that all these claims must be dismissed. First, Apple contends that the Arizona CFA and New Mexico UTPA claims are untimely. Second, Apple argues that Plaintiffs have not alleged reliance on its user-guide disclosures and therefore cannot prevail on any of their state law claims premised on partial omissions. Third, Apple argues that Plaintiffs' claims predicated on pure omissions cannot survive because Apple did not have a duty to disclose the alleged Filter Defect under the various state law causes of action pled here. Finally, Apple asserts that the economic loss doctrine prohibits recovery under the Florida fraudulent concealment claim. The Court agrees with Apple's first three arguments and thus need not reach Apple's argument

United States District Court
Northern District of California

regarding the Florida economic loss doctrine.[4]

### i.     The Arizona and New Mexico Claims are Untimely as Pled

Apple argues that Plaintiff Evans' New Mexico UTPA claim and Plaintiff Ahern's Arizona CFA claim fail on statute of limitations grounds.

### a.   The New Mexico UTPA Claim is Untimely as Pled

Plaintiffs allege that Evans bought his iMac in Albuquerque, New Mexico around March 2011 and noticed screen smudges in 2013.  ACAC ¶ 22.  New Mexico UTPA claims have a four-year statute of limitations.  N.M. Stat. Ann. § 37-1-4; *"O" Co., Inc. v. Osteotech, Inc.*, , 2002 WL 35649660, at *3 (D.N.M. Oct. 22, 2002) ("Unfair Trade Practices Act [claims] are also governed by a four year statute of limitations."); *Tiberi v. Cigna Corp*, 89 F.3d 1423, 1430 (10th Cir. 1996) (same).

Plaintiffs did not bring suit until November 28, 2018, approximately five years after Evans first noticed screen smudges in 2013.  ECF No. 1.  Plaintiffs correctly note that accrual only begins to run when plaintiffs discover, or should have discovered through reasonable diligence, that their injuries were caused by the defect.  *Elm Ridge Expl. Co., LLC v. Engle*, 721 F.3d 1199, 1211 (10th Cir. 2013) ("A plaintiff invoking the discovery rule must demonstrate that if she had diligently investigated the problem she would have been unable to discover the cause of her injury." (quotation marks omitted)).  But the ACAC does not explain when Evans discovered the Filter Defect as opposed to the screen smudges.  *See generally* ACAC ¶¶ 22-26.  Nor does the ACAC allege that Evans could not have discovered the Filter Defect through reasonable diligence. *See id*.  Plaintiffs' allegations of equitable tolling only appear in its response to the motion to

---

[4] Nonetheless, Plaintiffs are on notice that in any amended complaint, Plaintiffs must cure any infirmities in their Florida fraudulent concealment claim relating to the economic loss doctrine. Plaintiffs' arguments may "elide[] the distinction between fraudulent *inducement*—which is by definition independent of a contract claim—and fraudulent *concealment*, which may well overlap with the subject matter of the contract and any contract claim."  *In re: Gen. Motors LLC Ignition Switch Litig.,* 2016 WL 3920353, at *27 (S.D.N.Y. July 15, 2016) (holding Florida fraudulent concealment claims were barred by the economic loss doctrine).  If Plaintiffs fail to allege that their Florida claim is not barred by the economic loss doctrine, the Court may dismiss this claim with prejudice.

Case No. 18-CV-07196-LHK
ORDER GRANTING MOTION TO DISMISS IN PART WITH PREJUDICE AND IN PART WITH LEAVE TO AMEND

dismiss, and Plaintiffs have pled no facts supporting tolling in the ACAC. *City of Albuquerque v. Qwest Corp.*, 2007 WL 9734006, at *4 (D.N.M. May 11, 2007) (dismissing with leave to amend when claims were time-barred and "plaintiff's allegations of equitable tolling only appear[ed] in its response to the motion to dismiss" and plaintiff "pled no facts in its first amended complaint supporting . . . tolling"). The Court therefore GRANTS Apple's motion to dismiss the New Mexico UTPA claim on statute of limitations grounds. However, the Court also GRANTS Plaintiffs leave to amend because doing so would not be futile, cause undue delay, or unduly prejudice Apple, and Plaintiffs have not acted in bad faith. *Leadsinger*, 512 F.3d at 532; *see also Piazza v Brackett*, 2013 3166283 at *4 (E.D. Cal. June 20, 2013) (requiring plaintiff's amended complaint to state facts supporting allegations of tolling after defendants demonstrated, on a motion to dismiss, that the claim would be untimely unless the statute of limitations on the claim was tolled).

### b. The Arizona CFA Claim is Untimely as Pled

"Private actions under the ACFA are subject to a one-year statute of limitations." *Cheatham*, 161 F. Supp. 3d at 826 (citing Ariz. Rev. Stat. § 12-541(5)); *Cervantes v. Countrywide Home Loans, Inc.* 656 F.3d 1034, 1045 (9th Cir. 2011) ("The plaintiff's claims under . . . the Arizona Consumer Fraud Act are subject to one-year statutes of limitations."). "Under the CFA, the statute of limitations begins to run 'when the defrauded party discovers or with reasonable diligence could have discovered the fraud.'" *Bergdale v. Countrwide Bank FSB*, 2014 WL 2885473, at *4 (D. Ariz. June 25, 2014) (quoting *Alaface v. Nat'l Inv. Co.*, 181 Ariz. 586, 591, 892 P.2d 1375, 1380 (Ariz. Ct. App. 1994)); *Cervantes*, 656 F.3d at 1045 (same).

Plaintiffs allege that Ahern, a resident of Phoenix, Arizona, purchased her iMac on June 25, 2015 and "[a]bout nine months after her purchase," began noticing dark smudges on the bottom corners of her screen. ACAC ¶¶ 9-10. The ACAC does allege that Ahern learned of and "told one Apple representative" about the Filter Defect, *id.* ¶ 14, but fails to identify when Ahern discovered the alleged defect, *id.* at ¶ 12 ("When she discovered the smudges on her screen

. . . . she began to Google the issue, and discovered a host of people who had the same issue and were discussing it on various online forums, including Apple's own website."). Because Plaintiffs did not file suit until November 28, 2018, Ahern must have discovered the alleged Filter Defect within a year of that date in order for the claim to be timely. ECF No. 1. As of now, the ACAC simply pleads that Ahern discovered the Filter Defect—with Ahern going so far as to mention it in a conversation with an Apple representative. *See* ACAC ¶ 14. The ACAC does not, however, identify when Ahern discovered the defect. *See generally* ACAC ¶¶ 9-16.

The Court therefore GRANTS Apple's motion to dismiss the Arizona CFA claim on statute of limitations grounds. *See Easton v. U.S. Bank, N.A.*, 2010 WL 11453967, at *4 (D. Ariz. June 18, 2010) (dismissing claims with leave to amend because plaintiff did not plead equitable tolling facts in the complaint). However, the Court also GRANTS Plaintiffs leave to amend because doing so would not be futile, cause undue delay, or unduly prejudice Apple, and Plaintiffs have not acted in bad faith. *Leadsinger*, 512 F.3d at 532; *see also Piazza*, 2013 3166283, at *4 (requiring plaintiff's amended complaint to state facts supporting allegations of tolling after defendants demonstrated, on a motion to dismiss, that the claim would be untimely unless the statute of limitations on the claim was tolled).

Finally, the Court advises Plaintiffs that they are on notice that other state law claims may also be time-barred under their applicable statutes of limitations. *See, e.g., Pearson v. Philip Morris, Inc.*, 358 Or. 88, 116, 361 P.3d 3, 22 (Or. 2015) ("A private action [under the Oregon UTPA] must be brought within one year after discovery of the unlawful conduct."); *Egbukichi v. Wells Fargo Bank, NA*, 184 F. Supp. 3d 971, 975, 977 (D. Or. 2016) ("Plaintiffs' claim is barred by the [Oregon] UTPA's one-year statute of limitations," and "Plaintiffs did not, however, allege in their Complaint that the discovery rule applies."); *Lyden v. Nike Inc.*, 2014 WL 2563401, at *5 (D. Or. June 6, 2014) (same). When amending the complaint, Plaintiffs should plead facts alleging that their claims are timely. Failure to do so may result in dismissal of untimely claims with prejudice.

34

### ii. Plaintiffs' Non-California State Law Claims Based on Partial Omissions

Plaintiffs also raise Arizona CFA, Florida fraudulent concealment, Illinois CFA, New Hampshire CPA, New Mexico UTPA, North Carolina UDPA, and Oregon UTPA claims based on partial omissions. Like the California causes of action, Plaintiffs contend that (1) Apple "made incomplete representations about the Computers' performance and longevity" while withholding information about dust (ACAC ¶ 132); and (2) Apple's "limited disclosure of the Filter Defect" in its user-guide manual "works to disguise" the problem of screen smudging (*id.* ¶ 91).

### a. Statements Regarding Performance and Longevity

As to the first partial omission argument, the parties' arguments focus on California law even in regards to non-California state law causes of action. Opp. at 12-20. The Court previously held that Plaintiffs' claims based on Apple's statements regarding "performance and longevity" do not support liability for partial omissions under California law because those statements are puffery or because Plaintiffs do not adequately plead that those statements are false or misleading. *See supra*, Sections III.A.2-3, III.B.1.ii.a. Given that the parties briefing focuses on California law, the same conclusion follows here for Plaintiffs' Arizona CFA, Florida fraudulent concealment, Illinois CFA, New Hampshire CPA, New Mexico UTPA, North Carolina UDPA, and Oregon UTPA claims. The Court GRANTS Apple's motion to dismiss these state law claims to the extent they are premised on partial omissions related to statements of puffery or statements that Plaintiffs did not adequately plead as false. However, the Court finds that granting Plaintiffs leave to amend would not be futile, cause undue delay, or unduly prejudice Apple, and that Plaintiffs have not acted in bad faith. *Leadsinger*, 512 F.3d at 532. The Court therefore GRANTS Plaintiffs leave to amend these claims.

### b. Apple's User-Guide Disclosures

Plaintiffs' second partial omission argument again relies on its allegation that Apple's "limited disclosure of the Filter Defect" in its user-guide manual "works to disguise" the problem of screen smudging. ACAC ¶ 91. As with the two California claims, Apple contends that all of

Case No. 18-CV-07196-LHK
ORDER GRANTING MOTION TO DISMISS IN PART WITH PREJUDICE AND IN PART WITH LEAVE TO AMEND

Plaintiffs' non-California state law claims predicated on the user-guide disclosures fail because Plaintiffs do not allege reliance. Mot. at 8-9; Reply at 7 n.8. The Court agrees.

- **User-Guide Disclosures Under Arizona, Florida, North Carolina, and Oregon Law**

Plaintiffs concede that the Arizona CFA, Florida fraudulent concealment, North Carolina UDPA, and Oregon UTPA claims require that Plaintiffs plead reliance. *See* Opp. at 8 n.19. Plaintiffs acknowledge that they were not exposed to the user-guide disclosures until after they purchased their products. Opp. at 13-14 ("[T]his disclosure occurred after the point of sale, in the Computers' user manual" and "[s]uch a belated disclosure does nothing to inform them."). Thus, Plaintiffs do not and cannot allege that they relied on Apple's user-guide disclosures.

Accordingly, the Court GRANTS Apple's motion to dismiss Plaintiffs' Arizona CFA, Florida fraudulent concealment, North Carolina UDPA, and Oregon UTPA claims to the extent they are based on Apple's alleged partial omission related to its user-guide disclosures. The Court also GRANTS Plaintiffs leave to amend because doing so would not be futile, cause undue delay, or unduly prejudice Apple, and Plaintiffs have not acted in bad faith. *Leadsinger*, 512 F.3d at 532.

- **User-Guide Disclosures Under Illinois, New Hampshire, and New Mexico Law**

As to the Illinois CFA, New Hampshire CPA, and New Mexico UTPA causes of action, however, Plaintiffs argue that reliance or proximate causation is not required and that these claims must survive Apple's motion to dismiss. Because the Court already concluded that the New Mexico UTPA claim is untimely as pled, the Court need not analyze whether the New Mexico UTPA claim requires reliance.

For the Illinois CFA and New Hampshire CPA claims, Plaintiffs cite cases for the proposition that "plaintiffs need not prove reliance." Opp. at 8 n.20 (citing *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E. 2d 584 (Ill. 1996), and *Leonard v. Abbott Labs., Inc.*, 2012 WL 764199 (E.D.N.Y. Mar. 5, 2012)).

However, Illinois law does in fact require reliance when defendants allegedly commit

36

partial omissions through an affirmative representation. In *De Bouse v. Bayer*, the Illinois Supreme Court held that to "maintain an action under the [Illinois CFA], the plaintiff must actually be deceived by a statement or omission that is made by the defendant." 235 Ill. 2d 544, 554, 922 N.E. 2d 309, 316 (Ill. 2009). "If a consumer has neither seen nor heard any such statement, then she cannot have relied on the statement and, consequently, cannot prove proximate cause." *Id.* In interpreting Illinois law, a court in this district acknowledged that Illinois law is unique in this respect because actual reliance is required both for partial omissions and pure omissions. *Baranco v. Ford Motor Co.*, 294 F. Supp. 3d 950, 969 (N.D. Cal. 2018) ("[W]ith respect to Illinois state law[,] . . . a plaintiff must demonstrate he or she actually communicated with a defendant to demonstrate reliance in an omission case."). Thus, because Illinois law demands actual reliance, and Plaintiffs do not adequately plead reliance, the Court GRANTS Apple's motion to dismiss Plaintiffs' Illinois CFA claim to the extent it is based on Apple's alleged partial omission related to its user-guide disclosures. Nonetheless, the Court GRANTS Plaintiffs leave to amend this claim because doing so would not be futile, cause undue delay, or unduly prejudice Apple, and Plaintiffs have not acted in bad faith. *Leadsinger*, 512 F.3d at 532.

In terms of New Hampshire law, Plaintiffs are correct that under the New Hampshire CPA, a "plaintiff need not show that he or she actually relied on the deceptive acts or practices." *Mulligan v. Choice Mortgage Corp. USA*, 1998 WL 544431, at *11 (D.N.H. Aug. 11, 1998); *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 516 (6th Cir. 2015) (same). However, plaintiffs must still show that "their injuries . . . [were] a consequence of . . . allegedly unfair and deceptive practices." *Mulligan*, 1998 WL 544431, at *11; *Rikos*, 799 F.3d at 516 (under the New Hampshire CPA, a plaintiff must still "establish a causal link between the conduct at issue and his or her injury").

Plaintiffs do not demonstrate that their injuries were a consequence of Apple's user-guide dust disclosures. Plaintiffs do not allege that they even saw the user-guide disclosures prior to purchasing their products. *Leonard v. Abbott Labs., Inc.*, 2012 WL 764199, at *23 (E.D.N.Y.

37

Mar. 5, 2012) ("Moreover, by identifying the alleged misrepresentation as being located on the 'product packaging' and alleging that they 'relied' on this statement in purchasing and paying a premium price for the contaminated formula, the Plaintiffs have satisfied the requisite causal connection between the deceptive act and their injuries to sustain a claim under [the New Hampshire CPA]."). Indeed, Plaintiffs argue that they were not exposed to the user-guide disclosures until after they purchased their products. Opp. at 13-14 ("[T]his disclosure occurred after the point of sale, in the Computers' user manual" and "[s]uch a belated disclosure does nothing to inform them."). Moreover, the ACAC only makes general allegations that Plaintiffs "relied on Apple's representations" on its website, presentations, or advertisements that its screens were "particularly sharp and vivid" and "generally the best screen Apple has ever produced," which as discussed previously, are non-actionable puffery. *See, e.g.,* ACAC ¶¶ 9, 19, 24, 29, 34, 39, 44 51, 55, 59, 64, 75, and 80. Therefore, Plaintiffs fail to allege facts establishing a causal link between Apple's user-guide disclosures and their injuries.

Accordingly, the Court GRANTS Apple's motion to dismiss Plaintiffs' New Hampshire CPA claim to the extent it is based on Apple's alleged partial omission related to its user-guide disclosures. The Court also GRANTS Plaintiffs leave to amend because doing so would not be futile, cause undue delay, or unduly prejudice Apple, and Plaintiffs have not acted in bad faith. *Leadsinger*, 512 F.3d at 532.

### iii.   Plaintiffs' Non-California State Law Claims Based on Pure Omissions

Plaintiffs argue that Apple is liable for pure omissions under Plaintiffs' Arizona CFA, Florida fraudulent concealment, Illinois CFA, New Hampshire CPA, New Mexico UTPA, North Carolina UDPA, and Oregon UTPA claims because Apple "owed . . . a duty to disclose the truth about the Filter Defect" and is liable for omitting such information. ACAC ¶¶ 132, 167, 213, 282, 297, 332, 399, 482, 517, 571. First, Plaintiffs contend that Florida, Illinois, and New Mexico impose an inherent or absolute duty to disclose material information and that Apple is liable for failing to disclose the Filter Defect. *See* Opp. at 22. Second, Plaintiffs argue that Apple had a

38

duty to disclose because Apple "[p]ossessed exclusive knowledge regarding the Filter Defect." ACAC ¶¶ 132, 167, 213, 282, 297, 332, 399, 482, 517, 571. Third, Plaintiffs assert that Apple "intentionally concealed" the Filter Defect, which gave rise to a duty to disclose. *Id.* Fourth, Plaintiffs allege that Apple "[m]ade incomplete representations . . . while purposefully withholding material facts" such that Apple had a duty to disclose the Filter Defect. *Id.* Finally, Plaintiffs assert that they adequately plead separate "unfair" claims under the Illinois, New Hampshire, and North Carolina consumer protection statutes. Opp. at 21. The Court addresses Plaintiffs' arguments in turn.

### a. Inherent Duty to Disclose under Florida, Illinois and New Mexico Law

First, Plaintiffs contend that Florida fraudulent concealment law, the Illinois CFA, and the New Mexico UTPA require Apple to disclose all material information. In other words, Plaintiffs argue that these three states impose an "inherent duty to disclose." *See* Opp. at 22. Because the Court above dismissed both the Illinois CFA claim for failure to plead reliance and the New Mexico UTPA claim as time-barred, the Court need not address those claims here. Instead, the Court analyzes Florida fraudulent concealment law and holds that Florida does not impose an inherent duty to disclose.

Plaintiffs, relying on *Velasco v. Chrysler Grp. LLC*, 2014 WL 4187796, at *8 (C.D. Cal. Aug. 22, 2014), claim that Florida "imposes an inherent duty to disclose." Opp. at 22 n.47. In other words, Plaintiffs argue that under Florida fraudulent concealment law, Apple must disclose all material information regardless of whether Apple had a duty to disclose that information. "But *Velasco* concerns state consumer protection claims, not fraudulent concealment claims." *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 236 (S.D.N.Y. 2015). Rather, under Florida law, a fraudulent concealment claim requires, among other things, that "the defendant had a duty to disclose the material fact." *Id.* at 234 (citing *Hess v. Philip Morris USA, Inc.,* 175 So.3d 687, 691 (Fla. 2015); *Niedernhofer v. Wittels*, 2018 WL 3650137, at *5 n.8 (S.D.N.Y. July 31, 2018) (noting that under California, New York, and Florida law, "[a] claim for fraudulent concealment

39

must meet the same requirements as one for fraudulent misrepresentation, *plus an allegation that one party owed a duty to disclose*" (emphasis added)); *Broward Motorsports of Palm Beach, LLC v. Polaris Sales, Inc.*, 2018 WL 1072211, at *4 (S.D. Fla. Feb. 27, 2018) ("Plaintiff's fraudulent concealment claim also fails because Defendant did not owe a duty to disclose . . . .").

Therefore, the Court rejects Plaintiffs' argument that Florida fraudulent concealment law requires Apple to disclose all material information regardless of whether Apple had a duty to disclose that information. Rather, to survive a motion to dismiss, Plaintiffs' Florida fraudulent concealment claim must allege that Apple owed a duty to disclose.

### b. Duty to Disclose Based on Apple's Exclusive Knowledge of the Filter Defect

Second, Plaintiffs argue that Apple had a duty to disclose the Filter Defect because Apple had exclusive knowledge of the material information. Apple contends that only California, Florida, New Mexico, and North Carolina recognize a duty to disclose based on a seller's exclusive knowledge of material facts and that Plaintiffs do not plead that Apple had exclusive knowledge. Mot. at 13. Plaintiffs pled that Apple had a duty to disclose based on Apple's exclusive knowledge as to all of Plaintiffs' causes of action, but in the motion to dismiss briefing, Plaintiffs do not contest that only California, Florida, New Mexico, and North Carolina impose a duty to disclose based on exclusive knowledge. Opp. at 22. Additionally, the parties rely heavily on California law and appear to agree that California law is representative of Florida, New Mexico, and North Carolina law. Opp. at 22. Again, in future briefing, the parties must make clear that there are no material variations in state law. *Sloan*, 287 F. Supp. 3d at 864 n.9.

For the reasons below, the Court holds that Plaintiffs do not adequately allege that Apple had exclusive knowledge of the Filter Defect. Therefore, Apple did not have a duty to disclose any information related to the Filter Defect.

A defendant's exclusive knowledge gives rise to a duty to disclose when "according to the complaint, [defendant] knew of this defect while plaintiffs did not, and, given the nature of the defect, it was difficult to discover." *Collins*, 202 Cal. App. 4th at 256 (applying California law);

40

*XP Glob., Inc. v. AVM, L.P.*, 2016 WL 6679427, at *4 (S.D. Fla. Nov. 14, 2016) ("The classic illustration of fraud [under Florida law] is where one party having superior knowledge intentionally fails to disclose a material fact, which is not discoverable by ordinary observation." (quotation marks omitted)); *Salmeron v. Highlands Ford Sales, Inc.*, 271 F. Supp. 2d 1314, 1319 (D.N.M. 2003) ("There is a duty to disclose [under New Mexico law] . . . if a party has superior knowledge that is not within the reach of the other party or could not have been discovered by the exercise of reasonable diligence." (quotation marks omitted)); *Packrite, LLC v. Graphic Packaging Int'l, Inc.*, 2019 WL 2992340, at *6 (M.D.N.C. July 9, 2019) ("A relationship that would create a duty to disclose [under North Carolina law], as contemplated in the first element above, could arise [when] . . . one party has knowledge of a latent defect . . . about which the other party is both ignorant and unable to discover through reasonable diligence . . . ." (quotation marks omitted)). Rule 9's heightened pleading standard applies to Plaintiffs' allegations regarding Apple's duty to disclose, and "[g]eneralized allegations with respect to exclusive knowledge are insufficient to defeat a dismissal motion." *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1175 (E.D. Cal. 2013) (quotation marks and internal alterations omitted).

Here, Plaintiffs allege that numerous consumers complained about the alleged Filter Defect on Apple's website. ACAC ¶ 88. Plaintiffs also allege that "[s]tarting from the time before [they] purchased [their] computer[s]," Plaintiffs "followed news about Apple and Apple's products," including visiting Apple's own website. *Id.* ¶ 15, 20, 25, 30, 35, 40, 45, 48, 52, 56, 61, 65, 69, 76, and 81.

"[T]he presence of information online does not automatically defeat exclusive knowledge," "[b]ut where a plaintiff simply makes conclusory allegations that a defendant has superior knowledge, that is not enough to overcome a 12(b)(6) challenge." *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 960 (N.D. Cal. 2014). In cases finding that a defendant had a duty to disclose based on exclusive knowledge of material facts, plaintiffs have alleged, for example, that "only [defendant] had access to the aggregate data from its dealers, only [defendant] had access to

United States District Court
Northern District of California

pre-release testing data, and only [defendant] had access to the numerous complaints from its customers." *Falk*, 496 F. Supp. 2d at 1096. In other words, to sufficiently allege exclusive knowledge giving rise to a duty to disclose, plaintiffs must proffer specific allegations regarding the content of information, how defendants had access to this information, and how plaintiffs did not have access to or could not learn this information. *Id.*; *Herron*, 924 F. Supp. 2d at 1175; *see also Arroyo v. TP-Link USA Corp.*, 2015 WL 5698752, at *9 (N.D. Cal. Sept. 29, 2015) ("The plaintiff must allege facts showing the defendant had exclusive knowledge of omitted facts which the plaintiff could not have reasonably discovered."). On the other hand, dismissal is warranted when "Plaintiffs do not allege with particularity how [Apple] had exclusive knowledge of material facts not known to [Plaintiffs] when the complaint alleges that there were consumer complaints posted on [Apple's website]." *Ferranti v. Hewlett-Packard Co.*, 2014 WL 4647962, at *5 (N.D. Cal. Sept. 16, 2014).

Plaintiffs contend that they "did plead that Apple had superior knowledge of the Filter Defect," but Plaintiffs cites only general allegations in the ACAC that "Apple did not install any filters for the vents," that Apple "acknowledged the Filter Defect exists" in its user manuals, and that Apple "[p]ossessed exclusive knowledge regarding the Filter Defect." Opp. at 22 (citing ACAC ¶¶ 2, 92, 132). These general and conclusory allegations that Apple owed a duty of disclosure because it was in a superior position to know the facts regarding the alleged defect are not enough. Without "specific substantiating facts" indicating exclusive knowledge of the Filter Defect, Plaintiffs fail to allege that Apple had a duty to disclose any related information. *See Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 986 (N.D. Cal. 2009); *see id.* ("The heightened pleading requirements of Rule 9(b) were designed to avoid exactly this situation" where plaintiffs' claims "lack[] specific substantiating facts.").

Accordingly, the Court GRANTS Apple's motion to dismiss Plaintiffs' California fraudulent concealment, California UCL, Florida fraudulent concealment, New Mexico UTPA, and North Carolina UDPA claims to the extent that these claims are premised on allegations that

42

Apple owed a duty to disclose based on its exclusive knowledge of the Filter Defect. Additionally, because Plaintiffs do not even contend that Plaintiffs' Arizona CFA, Illinois CFA, New Hampshire CPA, and Oregon UTPA claims impose a duty to disclose based on exclusive knowledge, the Court also GRANTS Apple's motion to dismiss these claims to the extent that these claims are premised on allegations that Apple owed a duty to disclose based on its exclusive knowledge of the Filter Defect. Nonetheless, the Court GRANTS Plaintiffs leave to amend because doing so would not be futile, cause undue delay, or unduly prejudice Apple, and Plaintiffs have not acted in bad faith. *Leadsinger*, 512 F.3d at 532.

### c. Duty to Disclose Based on Intentional or Active Concealment

Third, Plaintiffs also contend that Apple had a duty to disclose the Filter Defect because Apple intentionally or actively concealed the Filter Defect. Apple argues that California, Arizona, Florida, Illinois, North Carolina, and Oregon recognize a duty to disclose based on intentional or active concealment and that Plaintiffs do not adequately plead intentional or active concealment. Mot. at 14-15; Reply at 10. Plaintiffs plead that Apple had a duty to disclose based on intentional or active concealment as to all of Plaintiffs' causes of action, but in the motion to dismiss briefing, Plaintiffs do not contest that only Arizona, Florida, Illinois, North Carolina, and Oregon impose a duty to disclose based on intentional or active concealment.[5] Opp. at 23. Plaintiffs nonetheless contend that they adequately alleged intentional or active concealment for Plaintiffs' Arizona CFA, Florida fraudulent concealment, Illinois CFA, North Carolina UDPA, and Oregon UTPA

---

[5] California also imposes a duty to disclose based on intentional or active concealment. *Herron*, 924 F. Supp. 2d at 1176 ("Plaintiff must allege specific affirmative acts on the part of the Defendants in hiding, concealing or covering up the matters complained of." (quotation marks and internal alterations omitted)). The Court previously dismissed Plaintiffs' California fraudulent concealment and UCL claims based on a pure omission theory because Plaintiffs did not adequately allege that the Filter Defect impaired the central function of Plaintiffs' computers or implicated consumer safety. *See supra*, Section III.B.1.iii.b. Thus, Apple did not have a duty to disclose the Filter Defect under California law. As a result, the Court need not reach the issue of whether Plaintiffs' adequately allege that Apple intentionally or actively concealed material facts sufficient to state a claim under Plaintiffs' California fraudulent concealment and UCL claims. The Court notes, however, that under California law, "[m]ere nondisclosure does not constitute active concealment," and "generalized allegations with respect to active concealment will not do." *Herron*, 924 F. Supp. 2d at 1176 (quotation marks and internal alterations omitted).

43

United States District Court
Northern District of California

claims. *Id.* However, Plaintiffs do not include any citations to the ACAC to support their argument that they adequately alleged acts of active or intentional concealment. *Id.* For the reasons stated below, the Court holds that Arizona, Florida, Illinois, North Carolina, and Oregon recognize a duty to disclose based on intentional or active concealment and that Plaintiffs do not adequately allege intentional or active concealment.

Under Arizona law, a "Consumer Fraud Act claim can be based on [an] omission when the law imposes a duty to disclose." *Loomis v. U.S. Bank Home Mortg.*, 912 F. Supp. 2d 848, 857 (D. Ariz. 2012); *Tavilla v. Cephalon, Inc.*, 870 F. Supp. 2d 759, 776 (D. Ariz. 2012) ("Generally stated, claims under the CFA, like common law fraud claims, can be based on affirmative misrepresentations, concealment, or omission of material facts. To the extent that 'omission' suggests that mere silence as to material facts may be actionable without a duty to disclose, the Arizona Court of Appeals has rejected this interpretation." (citation omitted)). "Failure to disclose only constitutes fraud where the defendant had a duty to disclose." *WineStyles, Inc. v. GoDaddy.com, LLC*, 2012 WL 8254047, at *3 (D. Ariz. Aug. 15, 2012). "Arizona follows the Restatement (Second) of Torts," and in order to allege a duty to disclose pursuant to active concealment, Arizona law "requir[es] concealment or other action intentionally preventing the other from acquiring information." *Gould v. M & I Marshall & Isley Bank*, 860 F. Supp. 2d 985, 989 (D. Ariz. 2012) (citing Restatement (Second) of Torts § 550). Therefore, Arizona law imposes a duty to disclose when a defendant actively conceals a material defect.

Florida law is similar in that it requires that a defendant actively conceal a material defect in order to incur a duty to disclose. Under Florida law, "there is no duty imposed on either party to act for the benefit or protection of the other party, or to disclose facts that the other party could, by its own diligence have discovered. Mere nondisclosure of material facts in an arm's length transaction is not actionable misrepresentation unless [some] ... artifice or trick [is employed] to prevent an independent investigation." *Scolieri v. John Hancock Life Ins. Co. (U.S.A.)*, 2017 WL 700215, at *3 (M.D. Fla. Feb. 22, 2017) (quotation marks and citations omitted).

44

United States District Court
Northern District of California

Illinois law also holds that "[m]ere silence does not amount to fraud" and that only when a party engages in "deceptive conduct or suppression of a material fact" is that "party which has concealed information . . . then under a duty to speak." *Miner v. Fashion Enterprises, Inc.*, 342 Ill. App. 3d 405, 421, 794 N.E.2d 902, 917 (2003) (quotation marks and citations omitted)); *see also Greene v. Mizuho Bank, Ltd.*, 206 F. Supp. 3d 1362, 1375 (N.D. Ill. 2016) ("Although silence may constitute a misrepresentation under Illinois law, the silence must be accompanied by deceptive conduct or active concealment." (quoting *Westchester Fire Ins. Co. v. Household Int'l, Inc.*, 167 Fed. App'x 895, 900 n.3 (3d Cir. 2006)).

Under North Carolina law, actual concealment is likewise necessary in order to make silence or nondisclosure actionable. "[Under North Carolina law], when a claim for actual fraud is based on concealment, or failure to disclose, the defendant must be under a duty to disclose. Such a duty [may] arise[] . . . when a party has taken affirmative steps to conceal material facts from the other. A party takes affirmative steps to conceal when he actively represents a state of affairs that is not true." *Sysco Charlotte, LLC v. Comer*, 2019 WL 1359635, at *7 (M.D.N.C. Mar. 26, 2019) (citing *Harton v. Harton*, 344 S.E.2d 117, 119 (N.C. Ct. App. 1986)).

Similarly, under Oregon law, omissions are actionable where "there is an affirmative act of concealment by the defendant." *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 1009 (N.D. Cal. 2018) (citing *Unigestion Holding, S.A. v. UPM Tech., Inc.*, 160 F. Supp. 3d 1214, 1223-24 (D. Or. 2016)); *Caldwell v. Pop's Homes, Inc.*, 634 P.2d 471, 477 (Or. Ct. App. 1981) ("[Under Oregon law], nondisclosure is actionable where there is a duty to speak, but . . . no such duty [is] require[d] where there has been active concealment." (quotation omitted)).

Although Arizona, Florida, Illinois, North Carolina, and Oregon recognize a duty to disclose when a defendant intentionally or actively conceals a material fact, Plaintiffs here do not allege any acts of intentional or active concealment. The ACAC points to mere nondisclosure of the Filter Defect but does not contain allegations that Apple actively concealed the Filter Defect or

45

attempted to prevent Plaintiffs from discovering the Filter Defect beyond mere conclusory allegations. ACAC ¶¶ 132, 167, 213, 282, 297, 482, and 517 (repeating, without specific allegations, that Apple "intentionally concealed [the Filter Defect] from Plaintiff and the Class"). Indeed, the ACAC notes that Apple's user guide contained information about dust-related issues and that consumers reported issues on Apple's website. ACAC ¶¶ 88, 91. On top of that, Plaintiffs' opposition to the motion to dismiss does not argue that Apple took affirmative steps to conceal and does not point to any allegations in the ACAC that Apple took affirmative steps to conceal. Opp. at 23.

Accordingly, the Court GRANTS Apple's motion to dismiss Plaintiffs' Arizona CFA, Florida fraudulent concealment, Illinois CFA, North Carolina UDPA, and Oregon UTPA claims to the extent that these claims are premised on allegations that Apple owed a duty to disclose based on active and intentional concealment. Additionally, because Plaintiffs do not even contend that Plaintiffs' California fraudulent concealment, California UCL, New Hampshire CPA, and New Mexico UTPA claims impose a duty to disclose based on active and intentional concealment, the Court also GRANTS Apple's motion to dismiss these claims to the extent that these claims are premised on allegations that Apple owed a duty to disclosed based on active and intentional concealment. Nonetheless, the Court GRANTS Plaintiffs leave to amend because doing so would not be futile, cause undue delay, or unduly prejudice Apple, and Plaintiffs have not acted in bad faith. *Leadsinger*, 512 F.3d at 532.

### d. Duty to Disclose Based on Apple's Incomplete Representations Creating a Duty to Disclose

Fourth, Plaintiffs claim that Apple had a duty to disclose the Filter Defect because Apple made incomplete representations while purposefully withholding material facts. Defendants concede that all of Plaintiffs' state law claims "recognize a duty to disclose when a party makes a partial representation that is misleading." Mot. at 15. The parties appear to agree that whether Apple had a duty to disclose based on making incomplete representations is the same inquiry as whether Apple is liable for making a partial omission. Opp. at 11, 15-18; Reply at 6-7; *see Garcia*

46

United States District Court
Northern District of California

*v. Gen. Motors LLC*, 2018 WL 6460196, at *18 (E.D. Cal. Dec. 10, 2018) (holding defendants had no duty to disclose an alleged defect under a partial misrepresentation theory because plaintiffs failed to allege that they relied on any partial misrepresentations). The Court proceeds on this basis and holds that Apple did not have a duty to disclose the Filter Defect because Plaintiffs do not adequately plead that Apple made incomplete representations while purposefully withholding material facts.

The Court previously held that Plaintiffs do not adequately plead that Apple made partial omissions because Plaintiffs did not rely on any actionable statements containing alleged partial omissions. *See supra*, Sections III.B.2.ii.a & b. First, the statements Plaintiffs identified in the ACAC are statements of puffery or not adequately pled as false. *See supra* Section III.B.2.ii.a. Second, for Plaintiffs' argument that the dust disclosures were incomplete representations or partial omissions, Plaintiffs fail to adequately plead reliance. *See supra*, Section III.B.2.ii.b. Therefore, Apple did not have a duty to disclose any information related to the Filter Defect because it did not make incomplete representations while purposefully withholding material facts.

The Court GRANTS Apple's motion to dismiss Plaintiffs' Arizona CFA, Florida fraudulent concealment, Illinois CFA, New Hampshire CPA, New Mexico UTPA, North Carolina UDPA, and Oregon UTPA claims premised on allegations that Apple made incomplete representations while purposefully withholding material facts and that Apple therefore had a duty to disclose. Nonetheless, the Court GRANTS Plaintiffs leave to amend because doing so would not be futile, cause undue delay, or unduly prejudice Apple, and Plaintiffs have not acted in bad faith. *Leadsinger*, 512 F.3d at 532.

### e. "Unfair" Claims under Illinois, New Hampshire, and North Carolina Law

Plaintiffs' only remaining claims are the Illinois CFA, New Hampshire CPA, and North Carolina UDPA claims. Plaintiffs argue that these causes of action "impose liability for conduct that is unfair" and "prohibit unconscionable or unfair conduct even if it does not involve deceit." Opp. at 21. The Court agrees that under Illinois, New Hampshire, and North Carolina law,

47

"unfair" conduct can give rise to liability. The Court holds, however, that Plaintiffs do not adequately plead such conduct.

Illinois, New Hampshire, and North Carolina consumer protection statutes permit liability for unfair conduct. *Rodriguez v. Chase Home Fin., LLC*, 2011 WL 5076346, at *2 (N.D. Ill. Oct. 25, 2011) ("The Supreme Court of Illinois has held that recovery under the ICFA 'may be had for unfair as well as deceptive conduct.'" (quoting *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002)); *Chroniak v. Golden Inv. Corp.*, 983 F.2d 1140, 1146 (1st Cir. 1993) ("[Under the New Hampshire CPA], [a] 'unfair' if (1) it is within at least the *penumbra* of some common-law, statutory, *or other established concept of unfairness,* (2) it is immoral, unethical, oppressive, or unscrupulous, or (3) it causes substantial injury to consumers. A practice may be 'deceptive' . . . if it could reasonably be found to have caused a person to act differently from the way he otherwise would have acted." (quotation marks and citations omitted)); *Wilson v. Dryvit Sys., Inc.*, 206 F. Supp. 2d 749, 756 (E.D.N.C. 2002), *aff'd*, 71 Fed. App'x 960 (4th Cir. 2003) ("[Under the North Carolina UDPA, a] practice is unfair when it offends established public policy and is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive.").

Nonetheless, even though the Illinois CFA, New Hampshire CPA, and North Carolina UDPA recognize causes of action for unfair conduct, Plaintiffs do not adequately plead such conduct. Rather, Plaintiffs only plead unfair conduct that is based on alleged misrepresentations and omissions—in other words, on deceit. ACAC ¶¶ 289-300, 324-35, 475-85. Courts applying Illinois, New Hampshire, and North Carolina law have not hesitated to dismiss unfair claims predicated on misrepresentations and omissions when plaintiffs have failed to adequately allege such misrepresentations or omissions. *In re VTech Data Breach Litig.*, 2018 WL 1863953, at *7 (N.D. Ill. Apr. 18, 2018) ("It is not that the alleged conduct is not unfair; it is that the alleged unfair conduct completely overlaps with the deceptive conduct. . . . Illinois law allows plaintiffs to predicate ICFA unfairness claims on violations of other statutes . . . but plaintiffs cannot rely on the same conduct to establish separate unfair and deceptive theories under the ICFA."); *Kalik v.*

*Abacus Exch., Inc.*, 2001 WL 1326581, at *9 (D.N.H. Oct. 19, 2001) (holding that when a party had not "ma[de] negligent or intentional misrepresentations (or omissions) of material fact, [that party] cannot be said to have engaged in actionable 'unfair' or 'deceptive' trade practices" based on that alleged fraudulent conduct); *Dryvit Sys., Inc.*, 206 F. Supp. 2d at 756 ("Having already determined that plaintiffs have failed to produce any evidence to show that Dryvit committed any acts of negligent misrepresentation or fraud, the court likewise concludes that no claim for unfair trade practices [under North Carolina's UDPA] exists on those grounds."). Plaintiffs only plead that Apple misrepresented or omitted material information and allege no other facts supporting unfair conduct claims. Therefore, Plaintiffs' unfair claims under the Illinois CFA, New Hampshire CPA, and North Carolina UDPA law must also fail.

The Court therefore GRANTS Apple's motion to dismiss Plaintiffs' Illinois CFA, New Hampshire CPA, and North Carolina UDPA unfair claims. The Court GRANTS Plaintiffs leave to amend because doing so would not be futile, cause undue delay, or unduly prejudice Apple, and Plaintiffs have not acted in bad faith. *Leadsinger*, 512 F.3d at 532.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS with prejudice Apple's motion to dismiss the Pennsylvania fraudulent concealment claim. The Court GRANTS with leave to amend Apple's motion to dismiss the California UCL, California fraudulent concealment, Arizona CFA, Florida fraudulent concealment, Illinois CFA, New Hampshire CPA, New Mexico UTPA, North Carolina UDPA, and Oregon UTPA claims. Plaintiffs shall file any amended complaint within 30 days of this Order. Failure to file an amended complaint within 30 days of this Order or failure to cure deficiencies identified herein or in Apple's motion to dismiss will result in dismissal of the deficient claims with prejudice. Plaintiffs may not add new causes of action or new parties without a stipulation or leave of the Court.

**IT IS SO ORDERED.**

Case No. 18-CV-07196-LHK
ORDER GRANTING MOTION TO DISMISS IN PART WITH PREJUDICE AND IN PART WITH LEAVE TO AMEND

Dated: October 11, 2019

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge

Case No. 18-CV-07196-LHK
ORDER GRANTING MOTION TO DISMISS IN PART WITH PREJUDICE AND IN PART WITH LEAVE TO
AMEND